**JOHN S. PANGELINAN**
P.O. Box 501721
Saipan, MP 96950

Telephone No. (670) 322-0322

Pro se

F I L E D
Clerk
District Court

JAN 2 8 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

**JOHN S. PANGELINAN**

     Plaintiff,

**v.**

**DAVID A. WISEMAN, ALEX R. MUNSON,
CRAIG N. MOORE, MARGARITA D.L.G.
WONENBERG, MELINDA N. BRUNSON,
JOSEPH AUTHER, DONALD HALL, WOLF
CALVERT, GRAND JURORS 11 Thru 23,
JURORS 1 Thru 12, ROY E. ALEXANDER
ROBERT T. TORRES, LILLIAN A. TENORIO
and RUFO T. MAFNAS**

     Defendants,

**ANGELITO TRINIDAD, RONNIE PALOMO,
HERMAN TEJADA, ESPERANZA DAVID,
ANTONIO ALOVERA and UNITED STATES
OF AMERICA,**

     Respondents.

Civil Action No. CV 08 - 0004

**COMPLAINT**

## INTRODUCTION

This is a *Bivens* action against federal officials and agents for commission of constitutional torts against Pangelinan, and against private individuals, as state actors who at all relevant times substantially utilized the federal district court and federal offices and officials and acting in collusion, combination and collaboration therewith, in the commission by federal defendants of constitutional torts against Pangelinan. It is also an action for declaratory judgments under 28 U.S.C. §§2201 & 2202, directly related to the *Bivens* case and controversy of retaliatory criminal prosecution and retaliatory denial of due process and of property against Pangelinan; for vacatur, nullification, and dismissal of *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073, *U.S.A. v. Pangelinan*, Criminal Action No. 02-00016, *U.S.A. v. Pangelinan*, Criminal Action No. 04-00015, and *U.S.A. v. Pangelinan*, Criminal Action No. 06-00012, District Court for the Northern Mariana Islands; and, for removal of anticipatory defense of absolute judicial immunity for district court's lack of (subject matter and *in* personam) jurisdiction in the just-cited cases. It is additionally an action for writs of *coram nobis* under 28 U.S.C. §1651, the All Writs Act, for vacatur, nullification and dismissal of the all criminal cases, in aid of this court's jurisdiction, and for all the other same reasons just cited. And, finally, it is also a *Bivens* action for causes of action arising from the vacatur, nullification and dismissal of the civil and criminal actions above-cited.

## PARTIES

1. John S. Pangelinan is the plaintiff in this case and is referred to herein as "Pangelinan". In addition, Pangelinan is a resident of the State of Washington.

2. David A. Wiseman is a federal judge-designate, Alex R. Munson is a federal chief judge, Craig N. Moore is a federal prosecutor, Margarita D.L.G. Wonenberg and Melinda N. Brunson are federal probation officers, Joseph Auther is an agent of the Federal Bureau of Investigations, and Donald Hall and Wolf Calvert are U.S. Marshals, are all referred hereinafter individually by his or her last name and at all relevant times acted in their federal capacities. Grand Jurors 1 thru 23 are the federal grand jurors who voted to indict Pangelinan in *U.S.A. v. Pangelinan*, Criminal Action No. 06-00012, and, Jurors 1 thru 12 are the federal jurors who convicted Pangelinan in the same criminal case. Wiseman, Munson, Moore, Wonenberg, Brunson, Auther, Hall, Calvert, Grand Jurors 1 thru 23, and Jurors 1 thru 12 are all collectively referred to hereinafter as "Federal Defendants". Roy E. Alexander, a businessman, was a federal court agent at all relevant times and is hereinafter referred to as "Alexander". Robert T. Torres and Lillian A. Tenorio are private attorneys who were state actors and who at all relevant times substantially employed and utilized the aid of, and at times aided, in collusion, combination and collaboration with, the Federal Defendants, one way or another, the federal district court, the U.S. marshals, and the federal prosecutor, are individually referred hereinafter as "Torres" and "Tenorio", respectively. Rufo T. Mafnas was at all relevant times a collaborator of state actors Torres and Tenorio, hereinafter referred to as "Mafnas". Federal Defendants, Alexander, Torres,

Tenorio and Mafnas are all collectively referred hereinafter simply as "Defendants". Defendants are all non-Washington State residents.

3.    Angelito Trinidad, Ronnie Palomo, Herman Tejada, Esperanza David and Antonio Alovera, are hereinafter referred to as "Trinidad, et al.", and the United States of America, is referred hereinafter as "Government". Trinidad, et al., and Government are respondents only, to respond to Pangelinan's claim that the judgment(s) rendered in their, or in its, favor wherein they were, or it was, plaintiff(s) are, or is, void *ab initio*. More particularly, to respond to the declaratory judgment and relief pleadings below and the pleadings for writs of *coram nobis* and for declaratory judgment and relief as they are relevant and applicable to their or its real interest in this case appear.

## JURISDICTION

This is a *Bivens* action brought against the defendants on the authority of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) . This Court has jurisdiction under 28 U.S.C. §1331, as it is a case arising under federal law. This Court also has diversity jurisdiction under 28 U.S.C. §1332 as Pangelinan and defendants are completely diverse and the amount in controversy per defendant is more than $75,000.00.

## FACTS

4

1.  In late 1997, or sometime in 1998, Trinidad, et al. sued Pangelinan in this Court under 18 U.S.C. §1964(c) for Racketeer Influenced Corrupt Organizations Act (RICO) violation (18 U.S.C. §1962(c)) and common law fraud, with the underlying RICO racketeering activity being mail and wire fraud. The civil lawsuit is styled *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073.

2.  On June 5, 2000, Trinidad, et al. won the case and Munson entered an Amended Judgment in their favor for damages in the amount of Two Hundred Five Thousand Seven Hundred Eighty-Seven Dollars and Thirty-Four Cents, for attorney's fees in the amount of Seventy Thousand Two Hundred Dollars ($70,200.00), and, Three Thousand Three Hundred Seventy-Five Dollars and Twenty Cents ($3,375.20) for costs, with interests running at 6.197 percent from the date of entry of the judgment, *nunc pro tunc*, to March 20, 2000, date of original judgment.

3.  On April 21, 2001, Pangelinan made a Rule 60(b)(4) motion pursuant to the Federal Rules of Civil Procedure (Fed.R.Civ.P) for vacatur or annulment of the judgment of the Court on the bases that it lack jurisdiction over the subject matter and jurisdiction over Pangelinan. Munson, still the sitting judge at the time, summarily rejected Pangelinan's motion without the benefit of a hearing or response from Trinidad, et al..

4.  Sometime in June of 2001, Trinidad, et al. executed upon several properties of Pangelinan and obtained a sale proceeds of not less than Two   Hundred   Ten Thousand Dollars. Pangelinan objected to the sale of the properties indicating

to the Court (Munson) that its judgment and all subsequent orders were void *ab initio*. Trinidad, et al. obtained a deficiency judgment thereafter against Pangelinan.

5.  Tenorio, who at this time was the attorney of Trinidad, et al., proceeded to obtain an order from Wiseman for the sale of Pangelinan's Papago property, and on March 08, 2006, Wiseman issued an order authorizing the sale of Pangelinan's interests in the Papago land and appointed Alexander to conduct the sale. Alexander set June 2, 2006, as the date of sale. Pangelinan through all this time vehemently objected to the sale stating that the judgment and all orders of the Court were void *ab initio*.

6.  Pangelinan, on the June 2, 2006 issue of local newspapers, published his letter to editor telling the whole world that the Court's (Munson's) judgment and (Wiseman's) orders in the civil case were all void, that the sale would be void and would-be purchaser would be buying himself nothing but a lawsuit, and that he would not surrender the Papago land to any would-be purchaser "come typhoon, tsunami, volcanic eruption or the devil himself." He told too that anyone coming to the land claiming it would feel his "wrath with a vengeance". Pangelinan also told that he was incarcerated for more than eighteen months and that he was drafting "a huge lawsuit" against those who injured or would injure him and in his property. Pangelinan (and his family) was living on the land at the time. Alexander was provided a copy of Pangelinan's letter to editor a day (June 1, 2006) prior to publication by Pangelinan himself, quietly and without any incident.

6

7. Alexander immediately consulted with Tenorio regarding the letter and the scheduled public sale of the Papago land, which was scheduled to be sold on June 2, 2006.   Alexander subsequently filed with the Court a negative statement, prepared (upon information and belief) by Tenorio, regarding Pangelinan's appearance at his office,  Pangelinan's letter to editor, and the sale— later rescheduled for July 28, 2006.

8. Wiseman, basing it on Alexander's filed statement, issued an order from the Court to Pangelinan to show cause why he should not be held in contempt of court.

9. Sometime thereafter, upon information and belief, Munson, through intermediaries, demanded that criminal charges be brought against Pangelinan for what he stated in the published letter.

10. About three weeks after the publication of the Pangelinan's letter to editor, if not earlier, Moore convened the grand jury, Auther testified before it, upon information and belief Alexander before it too, and Grand Jurors indicted Pangelinan for count 1 obstruction of court order solely on the basis on that published letter to editor under 18 U.S.C. §1509.

11. Wiseman, immediately after the issuance of the indictment, withdrew his show cause order to Pangelinan, stating that it was withdrawn "for good cause".

12. Munson issued a warrant of arrest against Pangelinan upon Grand Jurors' indictment and on June 26, 2006, Auther executed it and arrested Pangelinan

for prosecution.  Pangelinan was thereby jailed and remained there for eleven days before being released on bail.

13. Sometime around that time or very soon thereafter, Tenorio and Torres appeared before Wiseman for their motion to enjoin Pangelinan from any contact with Alexander and to abandon the Papago land upon sale and delivery of the deed to the purchaser.   The motion was prompted by Pangelinan's letter to editor and delivery of it to Alexander.   Alexander testified against Pangelinan in court at the hearing on that motion.  Pangelinan testified that he would not surrender the premises if his possession or right to it would be superior to that of the purchaser-to-be, mentioning also that the sale would be void as the underlying civil judgment was void for lack of jurisdiction.

14. Wiseman granted Tenorio and Torres their motion enjoining Pangelinan and his family from continued possession of the Papago land after the same and delivery of the sale deed to purchaser-to-be.

15. Contrary to 28 U.S.C. §§2001 & 2002, sale of Papago land was held at Alexander's office and Mafnas was the highest bidder on July 28, 2006. Pangelinan and Tenorio were present at the sale, and Tenoro made a bid for the Papago land for her clients, Trinidad, et al.. _See_, _Yazoo & M.V.R. v. City of Clarksdale_, 42 S.Ct. 27, 257 U.S. 10, 23, 66 L.Ed. 104, 110 (1921)(sale at place set by statute is absolutely mandatory and  if sale held at another place it is void).

8

16. Wiseman presided over the criminal trial of Pangelinan and Moore prosecuted it. Tenorio and two of Alexander's employees testified against Pangelinan. On September 27, 2006, Jurors convicted Pangelinan of Count 1 of obstruction of court order indicted by Grand Juror. Upon motions by Pangelinan's counsel for acquittal, Wiseman twice (one pre-conviction and one post-conviction) denied it stating that sufficient evidence existed to convict or support conviction of Pangelinan.

17. Immediately upon conviction Moore, telling Wiseman incorrectly that Pangelinan was facing imprisonment of at least 40 months, requested Wiseman to revoke Pangelinan's bail, and Wiseman granted that request and on October 4, 2006, imprisoned Pangelinan. Pangelinan was released from prison on January 8, 2008, Saipan date.

18. On October 4, 2006, on the day of bail revocation, Pangelinan filed with the Court, for his release, a petition for writ of habeas corpus under 28 U.S.C. §2241. Wiseman informed that he would treat it as a Section 2255 motion and for Pangelinan to file one in the form provided by the Court. Pangelinan did not file one and Wiseman denied his petition for writ of habeas corpus. Pangelinan appealed to the U.S. Court of Appeals for the Ninth Circuit the denied petition.

19. On December 22, 2006, Alexander executed a deed to the Papago land and delivered it to Mafnas. In January, 2007, Hall, carrying out Wiseman's orders obtained by Tenorio and Torres, ejected Pangelinan's family (Pangelinan was

already imprisoned at around this time) from the Papago land and delivered it to Alexander, who in turn delivered it to Mafnas.

20. On January 4, 2007, Wonenberg recommended that Pangelinan be imprisoned for not less than year, which actually is the maximum term punishable under 18 U.S.C. §1509. Wiseman sentenced Pangelinan as recommended, a fine of Seven Thousand Five Hundred Dollars, and to supervision of a term of one year, and committed him to the custody of the federal Bureau of Prisons (BOP).

21. Again, Pangelinan filed, in January of 2007, another petition for writ of habeas corpus under 28 U.S.C. §2241 for his release informing the Court that it was without subject matter jurisdiction to have held him in custody. Wiseman denied Pangelinan his petition and Pangelinan appealed to the appellate court. Sometime thereafter Wiseman denied Pangelinan certificates of appealability for both petitions. The U.S. Court of Appeals for the Ninth Circuit issued an order in May or June, 2007, stating that Pangelinan may file a Section 2255 motion thereafter, and it not be treated as second or successive motion.

22. Pangelinan appealed his conviction and on October 11, 2007, the U.S. Court of Appeals for the Ninth Circuit reversed Pangelinan's count 1 conviction of obstruction of court order in *U.S.A. v. Pangelinan*, Doc. #07-10032. The Court stated: "First, the evidence was insufficient to support Pangelinan's conviction under §1509 Count I. Pangelinan's June 1, 2006, letter contains no language which any rational trier of fact could reasonably find expressed or

10

implied a threat of physical or unlawful harm to any person or property. We therefore REVERSE Pangelinan's conviction as to Count I." Translation: Pangelinan committed absolutely no offense indictable or chargeable under 18 U.S.C. §1509 by publication of his letter to editor in the local newspapers.

## *BIVENS* CAUSES OF ACTON

### Retaliatory Criminal Prosecution

Federal Defendants, acting individually and in combination of or with each other, and Tenorio and Alexander, through his agents, collaborating with them in the process as state witnesses, without probable cause, indicted, arrested, prosecuted, convicted and imprisoned Pangelinan under 18 U.S.C. §1509 solely in retaliation for his public criticism, in his published June 1, 2006, letter to editor, of Munson's judgment and Wiseman's order of sale, and for exercising his First Amendment right of free speech in the most fundamental way. And, all this was tried in this Court not having jurisdiction under 28 U.S.C. §3231. The U.S. Supreme Court, in *Hartman v. Moore*, 164 L.Ed.2d 441 (2006)(PartII), specifically authorized a *Bivens* action in a case such as this case here. Federal Defendants, Tenorio and Alexander are liable, jointly and severally, for compensatory damages, for loss of liberty, property and other losses to be proven at trial, of not less than TEN MILLION DOLLARS ($10,000,000.00), and, that for the enormity of their wrongful action, for punitive damages of not less than FIFTY MILLION DOLLARS ($50,000,000.00).

**Retaliatory Denial of Due Process of Law**


Wiseman, and Munson, who paved the way for the order to issue, and Hall, together with, and at the urging, participation, collaboration, involvement and combination of, Tenorio, Torres, Alexander and Mafnas, through the office of federal judge, federal court, and the U.S. Marshal Service, by order therewith (albeit, a non-existent procedure in enforcement of judgment) illegally taken and delivered possession to Mafnas of Pangelinan's Papago land in retaliation to Pangelinan's letter to editor—over Pangelinan's objection and conduct of sale location contrary to federal statute, which rendered the sale and deed invalid. Pangelinan lost his property, not by the sale and execution and delivery of the deed— they were all void for they were done contrary to federal law and statute, but by the actual taking and delivery of possession, a non-existent procedure in public sale, in retaliation and show of force to the world that what Pangelinan said in his letter to editor meant nothing to Wiseman and that he would deliver the property by force regardless of whatever procedural impropriety arising in the process. Thus, Pangelinan was denied due process of law by Wiseman contrary to the Fifth Amendment to the U.S. Constitution and in the process deprived Pangelinan of his property. Wiseman, Munson,, Hall, Tenorio, Torres, Alexander and Mafnas are, jointly and severally, liable for the unlawful, retaliatory taking of Pangelinan's Papago land and ousting of Pangelinan and his family and for compensatory damages— for loss of property proper, income, and other losses to be proven at trial, in the amount of FOUR MILLION FIVE HUNDRED THOUSAND DOLLARS ($4,500,000.00), and, that

because their wrongful action was absolutely outrageous and extreme lawlessness—which includes the unlawful dispossession of Pangelinan's family of the Papago land, for punitive damages in the amount of THIRTY MILLION DOLLARS ($30,000,000.00).

## DECLARATORY JUDGMENT ACTION

Pangelinan pleads above and below sufficiently to estop Federal Defendants, and Wiseman in particular, the defense of absolute judicial immunity. Nevertheless, Pangelinan, in part anticipation of absolute judicial immunity defense to be asserted by the Federal Defendants in the above case and controversy against them, and for reasons below, brings also this declaratory judgment action. This action likewise is brought in order to prevent further "grave miscarriage of justice" and illegal activities relating to *Trinidad, et al. v. Pangelinan, et al.*.

### Facts

Pangelinan incorporates herein all of the facts above-stated as if herein-stated and provides herein further relevant facts.

23. On February 24, 1999, the clerk of this Court issued the summons in this Court's civil action *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073. Thereafter, Trinidad, et al. attempted to serve their case's summons and complaint by certified mail to Pangelinan in the State of Washington. Pangelinan was, and still is, a resident of Washington at the time.

13

Pangelinan's daughter Fae, not Pangelinan, received the certified mail on March 1, 1999, contrary to the Commonwealth of the Northern Mariana Islands (CNMI) long-arm statute.  Pangelinan never waived this issue in all the proceedings which followed thereafter.

24. At the time of service of the summons and complaint, the Northern Mariana Islands, the geographical jurisdiction of this Court, was a commonwealth (or territory), and still is, of the United States of America, with complete sovereignty residing exclusively in the United States of America.  The CNMI never was authorized by the Congress of the United States of America to enact the long-arm statute.  Pangelinan never waived the issued or the lack of *in personam* jurisdiction over Pangelinan in all subsequent proceedings which followed thereafter.

25. On June 5, 2000, Munson, in this Court's civil action *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073, issued his Amended Findings of Facts and Conclusions of Law.  In it, Munson found for Trinidad, et al. and Pangelinan liable to them for RICO violation, mail and wire fraud were the subsuming racketeering activity, and common law fraud.  The essence of the fraud found by Munson was that Trinidad, et al. were owed wages by their employer Papa's, Ltd., and were not able to get paid by the corporation its debts owed them because Pangelinan caused all the assets of the corporation transferred to him in payment of the debts owed him too by the corporation— albeit, Pangelinan underpaid, and thereby judgment-proofed Papa's, Ltd..  Thus, the Court was without subject matter jurisdiction in the Article III sense

14

of the U.S. Constitution for plaintiffs' (Trnidad, et al.) lack of standing in the case. *See*, *Adler v. Fenton*, 65 U.S. 407, 16 L.Ed. 696, 24 How. 407 (1860)(creditor not injured of property by fraud and has no right of action); *Hein v. Freedom from Religion*, 168 L.Ed.2d  424 (2007) ("case "and "controversy" requirements); *Daimler-Chrysler Corp. v. Cuno*, 164 L.Ed.2d 589 (2006)(same).

### Prayed Declaratory Judgment Relief

Pangelinan, having an actual and existent case and controversy as above shown—all arising out of the underlying civil case hereinafter immediately described and all the inequities, injustices and injuries that befallen Pangelinan, directly associated with the said underlying civil case, prays for declaratory judgment and relief of vacatur, nullification and dismissal of this Court's case *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073, against respondents Trinidad, et al. under 28 U.S.C. §§2201 & 2202. The Court in the said case was without personal jurisdiction over Pangelinan and was without subject matter jurisdiction in the Article III sense of the U.S. Constitution. The Court is additionally asked to exercise its equitable powers as this is a case "of 'injustices [happened and happening upon Pangelinan] which in certain instances are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 332 U.S. 238, 244, 64 S.Ct. 997, 1000, 88 L.Ed.2d 1250 (1940)." *U.S. v. Beggerly*, 524 U.S. 38, 47, 118 S.Ct. 1862, 1867, 141 L.Ed.2d 32 (1998)(brackets are mine).   None is more gross than imprisoning,

15

and depriving him of his home, Pangelinan in retaliation for exercising his free speech

right and for choosing to ignore and disobey an invalid court judgment and orders (which

he may freely do), all done in complete absence of evidence and authority to imprison

him and on non-existent procedure or process in depriving him of his home, and then to

deny him the relief for the wrongs committed against him all because of what might be a

rigid adherence to the doctrine of res judicata, and especially when Pangelinan had been

so diligent in pursuing the same remedy through his filings of three 18 U.S.C. §2255

motions but blunted by Wiseman's determined resolve to block or thwart the obtainment

of such remedy. Justice here is due Pangelinan.


## PETITION FOR WRITS OF *CORAM NOBIS*
## OR
## FOR DECLARATORY JUDGMENT


Pangelinan, again, in part anticipation of absolute judicial immunity

defense to be asserted by the Federal Defendants, or by anyone of them, in the above case

and controversy against them, and collateral legal consequences presumed to have arisen

therefrom, and for reasons below, brings also this petition for writs of *coram nobis* and

declaratory judgment action.  Pangelinan petitions against three criminal cases, and

against Government, for writs of *coram nobis* on a fact unknown to the Court at the time

the cases were tried, that would have caused their dismissal if the fact were known to the

Court— that is, the fact being the nullity or invalidity of *Trinidad, et al. v. Pangelinan, et

al.*, Civil Action No. 97-0073, of this Court, and for their vacatur, nullification and

dismissal for lack of subject matter jurisdiction in the Article III sense of the U.S.

Constitution  Pangelinan also asks for declaratory judgment and for the relief of vacatur, nullification and dismissal of the three said criminal cases for lack of subject matter jurisdiction in the Article III sense of the U.S. Constitution, under 28 U.S.C. §§2201 & 2202, and on the authority enunciated in mentioned-above *U.S. v. Beggerly*, 524 U.S. 38, 47, 118 S.Ct. 1862, 1867, 141 L.Ed.2d 32 (1998).

Pangelinan incorporates herein all of the facts above-stated as if herein-stated and provides herein further relevant facts.

## Facts

26. In August, 2002, Pangelinan was found guilty by this Court of a criminal contempt of court charge against him in *U.S.A. v. Pangelinan*, Criminal Action 02-00016, for disobedience of a preliminary injunction issued by this Court in *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073. This criminal case is styled in this Court as *U.S.A. v. Pangelinan*, Criminal Action No. 02-00016.

27. The Court sentenced Pangelinan to ninety days imprisonment and was given credit for time served.  Pangelinan fully served the ninety days prison term and was released on March 21, 2003.

28. Pangelinan appealed the conviction, and on February 20, 2004, the U.S. Court of Appeals for the Ninth Circuit in *U.S.A. v. Pangelinan*, Doc. No. 02-10535,

reversed the conviction holding that "Pangelinan cannot be held in criminal contempt of an expired injunction."

29. On May 28, 2004, Pangelinan was found guilty by this Court in criminal contempt of court of a temporary restraining order issued by this Court on April 9, 2004, in *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073. The criminal case is styled in this Court as *U.S.A. v. Pangelinan*, Criminal Action No. 04-00015.

30. Wiseman sentenced Pangelinan to six months jail term, which he served fully, and concurrently with a civil contempt of court imprisonment by Wiseman, in the *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073. Pangelinan was released from his civil contempt imprisonment on December 1, 2005, when Torres finally located the Papago land he designated to be sold in satisfaction of the deficiency judgment is the *Trinidad, et al.* civil action.

31. Pangelinan appealed his conviction, and the U.S. Court of Appeals for the Ninth Circuit in *U.S.A. v. Pangelinan*, Doc. 04-10326, affirmed on May 13, 2005.

32. On September 27, 2006, the jury of this Court found Pangelinan guilty on two counts of obstruction of court order in violation of 18 U.S.C. §1509. The obstructed court order is the order of sale of Pangelinan's Papago land above-mentioned that was in issued in *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073. The criminal case is styled *U.S.A. v. Pangelinan*, Criminal Action 06-00012.

33. Wiseman sentenced Pangelinan, for each count, to a prison term of one year, the maximum term punishable under the statute, to run concurrently—credit given for time served, a fine of Seven Thousand Five Hundred Dollars ($7,500.00) and to one year term of supervised release. Pangelinan's date of release under the original sentence was calculated by the federal Bureau of Prisons (BOP) to be on September 16, 2007, but was continually incarcerated under 18 U.S.C. §3624(e) for his refusal to agree, to a judgment and sentence he considered void, to a payment schedule related to the sentence of fine. Pangelinan was released on January 8, 2008, Saipan date, after agreeing to the payment schedule—albeit, under duress of continued imprisonment.

34. Pangelinan appealed his conviction and sentence, and the U.S. Court of Appeals for the Ninth Circuit on October 11, 2007, reversed count 1 and affirmed count 2, in *U.S.A. v. Pangelinan*, Doc. No. 06-10032.

35. Sometime in June, 2007, Pangelinan filed a 28 U.S.C. §2255 motion with this Court for his release and vacatur of judgment, as Ground One, claiming that this Court lacked subject matter jurisdiction in the Article III sense of the U.S. Constitution in the criminal case *U.S.A. v. Pangelinan*, Criminal Action No. 06-00012, as Government had no standing for the reason that the obstructed court order was void for the reasons stated herein— that is, that Trinidad, et al. in *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073, had no standing in the Article III sense of the U.S. Constitution and that the court there did not have *in personam* jurisdiction over Pangelinan. Pangelinan also combined with the Section 2255 motion a pleading and prayer for relief a

19

declaratory judgment and relief under 28 U.S.C. §§2201 & 2202 and petition for writs of *coram nobis*, on all the cases (the civil *Trinidad, et al.* case and the criminal cases). Pangelinan, too, requested in the motion Wiseman for access to his computer for preparation and filing supplemental memorandum in support of the Section 2255 motion and for Wiseman to recuse himself from the case. Wiseman sat on the motion for sometime (more than a month) then summarily dismissed it for this Court's lack of subject matter jurisdiction, citing a Ninth Circuit Court's precedent— albeit, without prejudice. Pangelinan filed a motion for reconsideration in August, 2007 stating that Wiseman should withdraw his denial order and hold the motion until such time that the appellate court made a decision (Pangelinan citing here too Ninth Circuit Court's precedents) because the Ninth Circuit Court scheduled the appeal to be heard on August 14, 2006, and that Pangelinan's release date was approaching fast and that he might not meet the "in custody" requirement of Section 2255 by the time the appellate court made a decision. But, Wiseman summarily rejected his reconsideration motion— again, Pangelinan's scheduled release date was September 16, 2007. The habeas motion is styled in this Court as *Pangelinan v. U.S.A.*, Civil Action No. 07-0025.

36. Pangelinan filed again an identical Section 2255 motion in August, 2007, and Wiseman, again, sat on it and then summarily dismissed it (Wiseman's dismissal order was signed on August 24 but was filed on September 6, 2007— just ten days before Pangelinan's scheduled release date) for the same

reasons he gave on the first motion— albeit, without prejudice. But, Wiseman additionally ordered that no similar motion from Pangelinan was to be accepted by the clerk of court until such time that the appellate court made a determination on Pangelinan's direct appeal of his criminal case in this Court in *U.S.A. v. Pangelinan*, Criminal Action No. 06-00012.     Pangelinan nevertheless filed a motion for reconsideration and Wiseman likewise rejected it (on October 1 but filed on October 11, 2007) for the same reasons he gave for the first rejection of Pangelinan's reconsideration motion. The habeas motion is styled in this Court as *Pangelinan v. U.S.A.*, Civil Action No. 07-0027.

37. Pangelinan attempted to file, again, another identical Section 2255 motion in late September, 2007, but it was returned to him by the clerk of court unfiled.

38. Pangelinan, again, filed another identical Section 2255 motion on October 25, 2007— after the Ninth Circuit Court made a decision on Pangelinan's direct appeal on the criminal case *U.S.A. v. Pangelinan*, Doc. No. 07-10032. For reasons unknown to Pangelinan, this motion was filed under *Pangelinan v. U.S.A.*, Civil Action No. 07-0027, which became a source of confusion. Four days later, Wiseman, on October 29, 2007, issued his Order Denying First 28 U.S.C. §2255 Motion as Moot mistakenly denying the already-denied first Section 2255 motion filed in Civil Action No. 07-0027. In it, Wiseman erroneously (Pangelinan suspects deliberately) stated that because Pangelinan served fully his one-year sentence of imprisonment— notwithstanding nevertheless that Pangelinan was "still imprisoned" and directly related to the

criminal case he was motioning this Court for his release, etc., that Pangelinan was no longer "in custody" and that the case was "moot".

39. Pangelinan filed a "Motion and Request for Disposition of Plaintiff's 28 U.S.C. §2255 Filed on October 25, 2007" on November 23, 2007, informing Wiseman of his errors under *Spencer v. Kemna*, 533 U.S 1, 118 S.Ct. 918, 140 L.Ed.2d 43, 49-50 (1998), and, this time, demanding his recusal because a cause of action against him arose from the Ninth Circuit Court's decision that would assuredly be brought against him, but to no avail. Wiseman was told too that Pangelinan was still incarcerated under 18 U.S.C.§3624(e) because Pangelinan refused to sign a form agreeing to a schedule of payment to satisfy the sentence of fine imposed by Wiseman which Pangelinan considered totally void.

40. On December 3, 2007, Wiseman issued his "Order Dismissing Second 28 U.S.C. Motion and Denying Certificate of Appealability". Wiseman treated the October 25, 2007, Section 2255 motion as the one denied on October 29, 2007, and ordered that the court would not accept further filings from Pangelinan and tht they will be treated as "second and successive" motions.

41. Pangelinan appealed all Wiseman's orders denying his Section 2255 motions and motions for reconsideration. Wiseman, additionally, denied certificates of appealability of Pangelinan's appeals. As of the writing of this complaint, the U.S. Court of Appeals for the Ninth Circuit has not acted on Pangelinan's appeals, to wit: *U.S.A v. Pangelinan*, Doc. No. 07-16802, *U.S.A. v. Pangelinan*, Doc. No. 07-17196, *U.S.A. v. Pangelinan*, Doc. No. 07-17395.

42. Pangelinan, "signing under duress" of continued imprisonment, signed the form agreeing to a payment schedule regarding Wiseman's sentence of fine and obtained his release on January 8, 2007, Saipan date.

### Prayer For Writs of *Coram Nobis*
### And
### For Declaratory Judgment

"When… a court of the United States undertakes, by its process… to punish a man… [respecting] an order which that court had no authority to make, the order itself, being without jurisdiction, is void, and the order punishing… is equally void." *Ex parte Fisk*, 113 U.S. 713, 718, 5 S.Ct. 724, 726 (1885). On this principle, and because the underlying orders in *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073, with which Pangelinan was held twice in criminal contempt of court and for obstruction of such void court order in violation of 18 U.S.C. §1509, all such convictions are absolutely void, *ab initio*. On the obstruction of Court order conviction in violation of 18 U.S.C. §1509, the statute does not even apply to "parties and privies" pursuant to *In Re: Amalgamated Meat Cutters & Butcher W. Etc.*, 402 F. Supp. 725 (1975), and therefore the conviction is doubly void, as Pangelinan was a party to the order, for lack of subject matter jurisdiction in the Article III sense of the U.S. Constitution. Pangelinan prays for writs of *coram nobis* and for declaratory judgment to issue against the Government, for the reason that this Court, in each of them, was without subject matter jurisdiction in the Article III sense of the U.S. Constitution, vacating, nullifying and dismissing the three above-mentioned criminal cases, to wit: *U.S.A. v. Pangelinan*, Criminal Action No. 02-

23

00016; *U.S.A. v. Pangelinan*, Criminal Action No. 04-00015; and, *U.S.A. v. Pangelinan*, Criminal Action No. 06-00012. The writs are prayed under 28 U.S.C. §1651, All Writs Act, in aid of this Court's jurisdiction over the case and controversy presented above, and, the declaratory judgment under 28 U.S.C. §§2201 & 2202, actual and existent case and controversy having been presented above.

## ADDITIONAL *BIVENS* CAUSES OF ACTION

Pangelinan, having obtained the annulment and nullification of the civil case and criminal cases above, brings additional causes of action against several of the defendants in this case. See, *Heck v. Humphrey*, 512 U.S. 477, 486-88, 114 S.Ct. 2372-73, 129 L.Ed.2d 383 (1994)(no *Bivens* action if implying invalidity of conviction); *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 1587-89, 137 L.Ed.2d 906 (1997)(no *Bivens* action if implying invalidity of conviction).

### Facts

Pangelinan incorporates herein all of the facts above-stated as if herein-stated and provides herein further relevant facts.

43. In June or July, 2001, Munson, in enforcing payment on the judgment of this Court in *Trinidad, et al. v. Pangelinan, et al*, Civil Action No. 97-0073, issued, for Trinidad, et al., a writ of attachment, a non-existent post-judgment

24

writ, attaching the rents that Pangelinan was receiving from the lease of his Garapan land (Lot No. 014 D 03).

44. Sometime in January, 2004, Munson, at a hearing denying Pangelinan's motion for accounting of rents taken by Torres, who at the time was representing Trinidad, et al., that were coming from the leasing of the Garapan land, informed Torres, out of the blue, that there was a deficiency amount outstanding in *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0093 of this Court. Pangelinan, again, informed Munson that he was without jurisdiction to proceed with the deficiency judgment, and that the matter was "closed" by the Court.    Munson acknowledged Pangelinan's "deep conviction" that the judgment was void.

45. Sometime in or prior to March, 2004, Pangelinan, claiming that his Garapan land was unlawfully taken from him by public sale in July, 2001, in *Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0093 of this Court, notified the occupants to vacate the premises.

46. Sometime in or prior to March, 2004, Torres, upon learning of Pangelinan's notice to the Garapan land occupants to vacate the premises and telling Wiseman (Munson recused himself from the case because Pangelinan brought a *Bivens* action against him for a prior unlawful deprivation of his liberty— case still pending) that Pangelinan was emboldened by the U.S. Court of Appeals for the Ninth Circuit's decision, which came down on February 24, 2004, in *U.S.A. v. Pangelinan*, Doc. No. 02-10535, that "Pangelinan cannot be held in criminal contempt of an expired injunction," proceeded to obtain a

temporary restraining order enjoining again (the expired preliminary injunction was the first one) Pangelinan from entering the Garapan land or from having any contact with any occupant of the Garapan land, claiming that the tenants (actually Pangelinan's tenant's originally) had a right to "quiet enjoyment" of the premises under the lease contract the tenants originally entered with Pangelinan. Torres was already acting as *de facto* landlord by a supposed acquired interest in the Garapan land by the public sale of said land that was done also contrary to federal law and statute, rendering the deed void (and the deed void too for other reasons). Wiseman, over objection from Pangelinan and without trying the title, and in retaliation against Pangelinan for successfully having the U.S. Court of Appeals for the Ninth Circuit voided the preliminary injunction in *U.S.A. v. Pangelinan*, Doc. 02-10535, on April 9, 2004, granted Torres his motion for a temporary restraining order— a non-existent, post-judgment already-enforced-judgment writ.    The temporary restraining order was eventually converted into a permanent injunction by Wiseman— a likewise non-existent writ. Thus, Torres and Wiseman set the ground or paved the way for further confrontation with Pangelinan.

47. Pangelinan, almost immediately after it was issued it, defied Wiseman's temporary restraining order by appearing at the site or the land and chained the front door and attempted to oust the occupants. Torres had Pangelinan arrested and removed from the Garapan land by local police authorities.

48. Sometime in or prior to January, 2004, Torres, upon being told by Munson that there was a deficiency judgment in *Trinidad, et al. v. Pangelinan*, Civil

Action No. 97-0073, had Pangelinan subpoenaed by the Court to appear for a deposition to discover assets of Pangelinan which may be sold in satisfaction of the deficiency judgment. Pangelinan appeared at the scheduled deposition but refused to be sworn.

49. Torres applied to Wiseman for an order ordering Pangelinan to appear at a scheduled deposition and be sworn. Wiseman granted Torres's motion and set March 27, 2004, as the date of deposition. Pangelinan, as on previous and subsequent occasions, informed Wiseman that the Court was without jurisdiction over him and over the subject matter.

50. Pangelinan again appeared but still refused to be sworn, and on April 29, 2004, upon application by Torres to Wiseman, Wiseman found Pangelinan in civil contempt and ordered once again Pangelinan to purge himself by attending a scheduled deposition (scheduled for May 7, 2004) and be sworn. Pangelinan never appeared at the scheduled deposition. Pangelinan was imprisoned thereafter for civil contempt of court for more than eighteen and a half months until his release on December 1, 2005, after Torres conditioned to Wiseman that Pangelinan's residence— the Papago land, be offered up for sale.

51. On April 27, 2004, Wiseman initiated a criminal contempt of court proceeding by order to show cause for Pangelinan's out of court contemptible actions and demanded of the prosecutor to prosecute the case. Pangelinan filed cause why he should be held in contempt but did not appear at the hearing. Wiseman issued warrant of arrest and had Pangelinan arrested. On May 25, 2004,

Pangelinan moved for dismissal of the criminal case for Court's lack of subject matter jurisdiction in the Article III sense of the U.S. Constitution—Wiseman did not entertain the motion. This criminal case is styled as *U.S.A. v. Pangelinan*, Criminal Action No. 04-00015 in this Court.

52. Bench trial by Wiseman ensued on May 26, 2004, and two days later Wiseman found Pangelinan guilty and sentenced Pangelinan to six months prison term, with credit for time served. Also, Wiseman "sentenced" Pangelinan unspecified prison term for Pangelinan's civil contempt to run concurrently with Pangelinan's criminal contempt sentence. Pangelinan served fully his six months prison term and remained incarcerated for the civil contempt until his release on December 1, 2005.

53. U.S. Marshal Calvert, primary overseer of Pangelinan's incarceration mostly during this time, and sometime during the time Pangelinan was imprisoned and in a forceful act to force Pangelinan to comply with prison policies, mazed on the face and, together with other corrections officers, jumped Pangelinan. Pangelinan undertook an eye operation to correct his vision, directly, and in part, caused by Calvert's mazing of Pangelinan.

- PANGELINAN HERE PLEADS FURTHER FACTS LEADING TO ANOTHER CAUSE OF ACTION AGAINST OTHER FEDERAL AGENTS.

54. On January 17, 2008, Brunson petitioned the Court for the arrest of Pangelinan for his failure to report to her after his release from the custody of the BOP and arrival on Saipan, for the revocation of Pangelinan's supervised

release and for imprisonment of Pangelinan of between four to ten months.

Brunson was enforcing the supervised release aspect of the   amended

judgment of the Court entered on October 19, 2007, in *U.S.A. v. Pangelinan*,

Criminal Action No. 06-00012.   Wiseman, apparently acceding to Brunson's

claim of Pangelinan's release from BOP's "custody", signed a warrant of

arrest.   Hall and Calvert executed the warrant and arrested Pangelinan on

January 18, 2008.   Munson did not revoke Pangelinan's supervised release,

but Pangelinan was nevertheless imprisoned for four days and was released on

January 22, 2008.

### Retaliatory Denial of Due Process of Law
### Of Liberty and Of Property

Pangelinan was imprisoned in retaliation for his informing Munson and

Wiseman that the Court had no jurisdiction over him and over the subject matter,

for Pangelinan's free choosing to ignore Munson's money judgment and

Wiseman's implementing orders,  and for disobedience of retaliatory void orders

and non-existent processes, all procured by Torres and nevertheless put in place

by Munson and Wiseman.    Pangelinan was imprisoned by their sheer

determination and show of force upon Pangelinan in their obsessive attempt to

drive Pangelinan into submission and capitulation to Munson's void money

judgment— this continued into imprisoning Pangelinan again for publication of

his letter to editor as complained above.  Likewise, Torres became the *de facto*

landlord and owner of the Garapan land without Wiseman trying the title by his

obtaining improperly the temporary restraining order and permanent injunction against Pangelinan.   Wiseman, Munson and Calvert, and Torres through the use of the office of federal judges and this Court, are jointly and severally, liable for compensatory damages, for Pangelinan's loss of liberty, properties and other losses (and for bodily injury) to be proven at trial, in an amount not less than TEN MILLION DOLLARS ($10,000,000.00) and, that because of the enormity of their actions and extreme lawlessness, for punitive damages in the amount of not less than FIFTY MILLION DOLLARS ($50,000,000.00).

## Continued Retaliatory Imprisonment

Wiseman, Brunson, Hall and Calvert, for their continued retaliatory imprisonment of Pangelinan, are, jointly and severally, liable for compensatory damages in the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) and, that because their continuing imprisonment of Pangelinan is, in and of itself, simply wickedly outrageous, for punitive damages in the amount of ONE MILLION DOLLARS ($1,000,000.00)..

## PRAYER FOR RELIEF

Pangelinan prays for compensatory and punitive damages as indicated above against the persons indicated too in the above, for declaratory judgment and relief under 28 U.S.C. §§2201 & 2202 vacating, nullifying and dismissing

*Trinidad, et al. v. Pangelinan, et al.*, Civil Action No. 97-0073, for writs of *coram nobis* and for declaratory judgment and relief under 28 U.S.C. §§2201 & 2202, vacating, nullifying and dismissing this Court's three criminal cases, to wit: *U.S.A. v. Pangelinan*, Criminal Action No. 02-00016, *U.S.A. v. Pangelinan*, Criminal Action No. 04-00015, and, *U.S.A. v. Pangelinan*, Criminal Action No. 06-00012, and for attorney's fees, costs and other relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pangelinan demands jury trial on his claims for damages. *See, Felner v. Columbia Picture Tel.*, 523 U.S. 348, 118 S.Ct. 1219, 140 L.Ed.2d 438 (1998).

Dated this 23rd day of January, 2008.

_____
John S. Pangelinan
Plaintiff, *pro se*

P. O. Box 1721
Saipan, MP  96950

Tel. No. (670) 322-0322