F I L E D
Clerk
District Court

FEB 1 5 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  **Robert Tenorio Torres**
   **Attorney at Law**
   P.O. Box 503758
2  Saipan, MP 96950
   Tel: (670) 234-7859

3  Attorney for Roy E. Alexander and Rufo T. Mafnas

4

5  ## IN THE UNITED STATES DISTRICT COURT
   ## FOR THE NORTHERN MARIANA ISLANDS

6

7  **JOHN S. PANGELINAN,**                        **Case No. CV 08-0004**

8                        Plaintiff,              **MEMORANDUM IN**
                                                 **SUPPORT OF MOTION TO**
9  vs.                                           **DISMISS BY ROY**
                                                 **ALEXANDER AND RUFO T.**
10 **DAVID A. WISEMAN, et al.,**                 **MAFNAS PURSUANT TO**
                                                 **RULE 12(b)(6)**
11                       Defendants.

12 **ANGELITO TRINIDAD, RONNIE**
   **PALOMO, HERMAN TEJADA,**
13 **ESPERANZA DAVID, ANTONIO**
   **ALOVERA , and UNITED**
14 **STATES OF AMERICA,**                        Date: APR 1 7 2008
                                                 Time: 9:00 a.m.
15                       Respondents.            Judge:

16

17

18                  ## INTRODUCTION

19       The Complaint in the above matter must be dismissed.  John S.

20 Pangelinan comes before the court again, this time seeking to recover more

21 than $50 million dollars from Roy E. Alexander and Rufo T. Mafnas in

22 connection with the execution of a court order directing the sale of

23

24

*(left margin, vertical)* Robert Tenorio Torres / Attorney at Law / P.O. Box 503758 - Saipan MP 96950 / (670) 234-7859

1 Pangelinan's Papago Property.[1]/ In the latest chapter of his petulant and

2 quixotic saga, Pangelinan points to his indictment, arrest, prosecution,

3 conviction and imprisonment for a June 1, 2006 letter to the editor (the "June 1

4 Letter") that he sent to both local papers and delivered to Alexander, the

5 publication of which he claims was absolutely protected by the First

6 Amendment. (*See* Compl. at 11.)

7

8     This Complaint names Rufo T. Mafnas, the purchaser of the Papago

9 Property, as a defendant simply because he was the successful bidder at the

10 court-approved and ordered execution sale. Alexander joins the defendants,

11 according to Pangelinan, chiefly because he engineered the sale of the

12 property.  In addition to judges and court personnel, the Complaint also targets

13 attorneys Robert T. Torres and Lillian A. Tenorio for their roles in enforcing

14 and obtaining satisfaction of the Underlying Judgment.  Last but not least,

15 Pangelinan names former employees Angelito Trinidad, Ronnie Palermo,

16 Herman Tejada, Esperanza David, and Antonio Alovera simply because they

17 prevailed in their claims to collect unpaid wages in Civil Action 97-0073.

18     In all this Pangelinan ignores one fundamental fact: the genesis of the

19 original case; his conviction; and the sale of his property was occasioned by

20 none other than himself in failing to pay wages due to his employees.

21

22 _____

23     [1] *See Trinidad v. Pangelinan*, No. CV-97-00073-ARM (March 20, 2000) (the "Underlying Judgment").

24                              Page 2 of  25

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

## **The Claims Against Alexander**

Plaintiff implicates Roy E. Alexander in this dispute as a "federal court agent" who conducted the judicial sale of certain property located in Papago (the "Papago Property") pursuant to court order, so as to satisfy the Underlying Judgment. (*See* Compl. ¶ 5.)  In addition to presiding over what Pangelinan characterizes as a void sale, Plaintiff contends that Alexander filed a negative statement about Pangelinan when he showed up at Alexander's office to deliver his June 1 missive. (*See* Compl. ¶ 7.)  As a result of the Letter, Alexander testified against Pangelinan at a hearing for a temporary restraining order and at his criminal trial for obstruction. (*See* Compl. ¶ 13.)  Finally, Pangelinan claims that Alexander improperly conducted the sale of the Papago Property at a place not authorized by statute, for executing a deed to the Papago land, and for delivering the deed to Mafnas, the purchaser. (*See* Compl. ¶ 19.)

On these facts alone, Plaintiff asserts that Alexander, as a state witness, collaborated with the Federal Defendants to indict, arrest, prosecute, convict and imprison him in retaliation for the June 1 Letter and for exercising his right of free speech. (*See* Compl. at 11.)  Pangelinan then argues that Alexander is somehow liable for retaliatory denial of due process in connection with the allegedly unlawful and retaliatory taking of the Papago land.  According to Pangelinan, because the judicial sale was held at a place not designated by the

1 applicable federal statute and because the Underlying Judgment was void, the

2 taking and delivery of his property were likewise void and violated his right to

3 due process of law. (*See* Compl. at 12.)

### The Claims Against Rufo Mafnas

5 Pangelinan names Rufo Mafnas in this Complaint as a collaborator of

6 state actors Torres and Tenorio. (*See* Compl. at 3.) Pangelinan does not name

7 Mafnas as an actor in the claim for Retaliatory Criminal Prosecution. Nor does

8 Pangelinan bother to name Mafnas in his claim for Retaliatory Denial of Due

9 Process. According to Pangelinan, Mafnas must be culpable for something

10 since he purchased the Papago Property.

11

12 For the reasons set forth below, however, neither Mr. Alexander nor Mr.

13 Mafnas are liable to Pangelinan for anything, since as a matter of law,

14 Pangelinan fails to state a claim against them. Because Alexander is further

15 protected from suit by immunity, all claims against him fail.

16 ### FACTS

17 1. On June 5, 2000, the district court issued Amended Findings of

18 Fact and Conclusions of Law finding Pangelinan liable to the Trinidad

19 Plaintiffs for RICO violations, mail and wire fraud, and common law fraud.

20 (Compl. ¶ 25.)

21

22 2. To satisfy the judgment, certain properties belonging to John and

23 Merced Pangelinan were auctioned and sold to the Trinidad Plaintiffs, as

24

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  judgment creditors.  (Compl. ¶ 4.)

2      3.      John Pangelinan filed several appeals to contest the Underlying

3  Judgment.[2]  The Ninth Circuit Court of Appeals affirmed the district court's

4  rulings and affirmed the sale of these properties on March 19, 2002.  *See*

5  *Trinidad v. Pangelinan*, 32 Fed.Appx. 357, 2002 WL 461731 ((9th Cir.

6  2002).[3]

7      4.      On April 21, 2001, Pangelinan filed a Rule 60(b)(4) motion to

8  vacate or annul the Underlying Judgment, arguing that the district court lacked

9  jurisdiction over him as well as the subject matter.  (*See* Compl. ¶ 3.)  On

10  January 15, 2003, the Ninth Circuit issued its memorandum decision in No.

11  02-16013, affirming the district court's judgment denying the Rule 60(b)(4)

12

13  motion to void the judgment.  *See Trinidad v. Pangelinan*, 54 Fed.Appx. 470,

14  2003 WL 124471 (9th Cir.), *cert. denied*, 538 U.S. 1064, 123 S.Ct. 2232, 155

15

16      [2]  In consolidated Appeal Nos. 00-15697 and 00-15705, John and Merced
17  Pangelinan appealed the judgment.  In the companion Appeal No. 00-16630, the
    Pangelinans appealed the district court's order issuing writs of attachment and execution
18  and levy on their bank account to satisfy the judgment.  In companion appeal No. 01-
    16622, the Pangelinans appealed the sale of their real property to satisfy the Underlying
19  Judgment and the entry of a preliminary injunction preventing them from interfering with
    the lessee of one of the properties subject to the writ of attachment.  Each of the district
20  court's rulings were upheld.  32 Fed. Appx. 357, 2002 WL 461731 (9th Cir. Mar. 15,
    2002).  Mr. Pangelinan, however, never missed any additional opportunity to raise his
21  objection to jurisdiction.  *See* Objection to Plaintiffs' Motion to Compel Attendance at a
    Deposition and for Sanctions and Pangelinans' Motion to Dismiss for Court's Lack of
22  Article III Subject Matter Jurisdiction (Mar. 10, 2004) (No. 396-1).

    [3]  Appeal No. 00-15697 was a consolidated appeal that included Appeal Nos. 00-
23  15706, 00-16630, and 01-16622.  See 32 Fed. Appx. 357, 2002 WL 461731 (9th Cir.
    March 15, 2002).

24                              Page 5 of  25

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  L.Ed.2d 1119 (2003).[4]

2    5.    Pangelinan's objections to the Judgment and his defiance of this

3  court's rulings brought him civil and criminal sanctions.  In July of 2000, the

4  Trinidad Plaintiffs obtained the first of several restraining orders to restrain

5  John and Merced Pangelinan from interfering with the execution of the

6  Underlying Judgment.  *See, e.g.*, Record of Proceedings at 22, (No. 305-1)

7  ("Record"); Order Granting Preliminary Injunction (No. 315-1).

8    6.    When Pangelinan refused to satisfy the judgment voluntarily, Mr.

9  Torres, on behalf of the Trinidad Plaintiffs, levied execution enabling them to

10  purchase four parcels of the Pangelinans' land (the "Garapan Property") for

11  $201,000.  Because the proceeds of the sale of the Garapan Property were

12  insufficient to satisfy the judgment, a deficiency remained that continued to

13  accrue interest from July 1, 2001.

14

15    7.    In an effort to collect the deficiency, the Trinidad Plaintiffs

16  attempted to depose Pangelinan to determine whether there were any additional

17  assets available to satisfy the balance.  Not only did Pangelinan refuse to

18  cooperate and fail to appear when noticed, but when he did show up at

19  deposition, he refused to disclose information about his financial status and

20  take the oath required by Rule 30(b)(4).  For this, the district court ultimately

21

22  _____

23    [4] Even though the Court of Appeals closed the file, Pangelinan attempted to
appeal this ruling on May 3, 2002.  *See* Record (No. 344-1).

24                    Page 6 of 25

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  found Pangelinan in contempt. *See* Order Finding Defendant John S.

2  Pangelinan in Contempt of Court (April 30, 2004) (No. 430).

3        8.      The Trinidad Plaintiffs, through the efforts of attorney Torres,

4  "finally" obtained a title report revealing that Pangelinan owned all right, title

5  and interest in certain property in Papago (Lot E.A. 222 or the "Papago

6  Property"). (Compl. ¶ 30.) Thus, when the Trinidad Plaintiffs applied for a

7  writ of execution to levy on E.A. 222, the court issued a writ in January of

8  2006, authorizing the property to be sold at judicial sale. *See* Amended Order

9  Granting Writ of Execution (Mar. 8, 2006) (No. 502).

10        9.      Pangelinan opposed the writ and proposed to substitute two other

11  parcels of property.[5] After carefully considering and rejecting each of

12  Pangelinan's arguments, the court authorized and directed Roy E. Alexander to

13  levy execution upon Lot. No. E.A. 222 in order to satisfy the balance of the

14  Underlying Judgment. *See* Order Authorizing Roy Alexander to Levy

15  Execution (Feb. 23, 2006)(No. 492); Order Granting Writ of Execution (Jan.

16  27, 2006) (No. 485); Amended Order Granting Writ of Execution (Mar. 22,

17  2006) (No. 502).

18

19  _____

20        [5] Pangelinan contended that because the CNMI had no statute designating anyone
    to issue a writ of execution, it was incumbent upon the Trinidad Plaintiffs, as judgment
21  creditors, to obtain a praecipe from the clerk of the court. *See* Objection to Plaintiffs'
    Motion for Writ of Execution and Sale of Real Property (January 17, 2006) (Nos. 477-
22  478). The Pangelinans further contended that they were using the Papago Property as
    their residence, and thus it was exempt from execution; that the Underlying Judgment –
23  even if valid – had already been satisfied. At no time did Pangelinan object to the place
    of sale.

24                          Page 7 of  25

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1    10.    The Order Authorizing Roy Alexander to Levy Execution

2    directed Mr. Alexander to effect the sale "at such place, and on such date and

3    at such time" as he fixed by Notice of Sale. *Id.* at 2.

4    11.    Pursuant to court order, Alexander notified Pangelinan on March

5    21, 2006 that he could either pay the remaining balance of the Underlying

6    Judgment with accrued interest and outstanding fees, costs, and expenses, or he

7    could use sufficient property to satisfy the debt. *See* Demand Pursuant to

8    7 CMC § 4204(a); Notice of Levy on Lot No. E.A. 222 (May 15, 2006) (No.

9    506).

10

11    12.    When Pangelinan failed to respond to Alexander, Alexander

12    scheduled a judicial sale of Lot E.A. 222 for June 2, 2006, at Alexander's

13    office and arranged for publication of the notices of the sale. *Id.*

14    13.    Although he repeatedly objected to the writ of execution as

15    improper on grounds that the court lacked personal and subject matter

16    jurisdiction to issue the Underlying Judgment, Pangelinan never objected to the

17    place of the sale. *See* Amended Order Granting Writ of Execution at 4-7 (Mar.

18    8, 2006) (No. 502).

19    14.    One day prior to the scheduled date of sale, Pangelinan delivered

20    a letter addressed to an editor (the "June 1 Letter") to Alexander's office.

21    (Compl. ¶ 6.) The next day, the letter to the editor was published in the

22    Marianas Variety. (*Id.*) Among other things, the letter announced to "the

23

24    Page 8 of 25

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1    whole world that the Court's (Munson's) judgment and (Wiseman's) orders

2    were all void, that the sale would be void and [that the] would-be purchaser

3    would be buying himself nothing but a lawsuit." *Id.* The June 6 Letter went

4    on to proclaim that "he would not surrender the Papago land to any would be

5    purchaser 'to anyone come typhoon, tsaunami, volcanic eruption or the devil

6    himself.'" *Id.* Pangelinan further stated that "anyone coming to the land

7    claiming it would feel his 'wrath with a vengeance." (*Id.*); see also Alexander

8    Decl. Regarding Report on Notice of Sale (June 13, 2006) (No. 508).

9

10       15.    As a result of the Letter, the auction was cancelled and

11   rescheduled for a later date. See Report on Notice of Sale for June 2, 2006

12   (June 13, 2006) (No. 507).

13       16.    Plaintiffs received a second letter intended for an editor to a

14   Saipan newspaper on June 19, 2006. In addition to reiterating that he would

15   not yield his property to any purchaser and that he "would breathe his wrath

16   down on the purchaser with a vengeance," Pangelinan also stated that "[t]he

17   whole world is informed here that I am ready to brawl with any trespasser or

18   usurper who would come in on [this] land." This letter was also published in

19   the MARIANAS VARIETY. *See* Order Holding John S. Pangelinan in Civil

20   Contempt of Court (Oct. 23, 2006) (No. 582).

21

22       17.    As a result of the publication of the Letter, a grand jury

23   subsequently indicted Pangelinan on two counts of obstruction of a court order

24

*Left margin:*
Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

in violation of 18 U.S.C. § 1509, arising out of his use of threats to interfere with a court order. (*See* Compl. ¶ 10 mentioning only the one count)); *see also United States v. Pangelinan*, 2007 WL 2962354 (9th Cir. 2007) (reversing jury conviction on Count 1, but affirming conviction on Count 2).

18.    The Ninth Circuit ruled that Pangelinan's June 19, 2006, letter contained language which a rational trier of fact could find expressed a threat of physical harm to person or property. *Id.*

19.    On June 29, 2006, the court issued a temporary restraining order to prevent Pangelinan from again interfering with the rescheduled judicial sale. *See* Order Granting Motion for Temporary Restraining Order (June 30, 2006) (No. 538).  In material part, the order required Pangelinan to "refrain immediately from impeding or interfering with the levy on and judicial sale of Lot No E.A. 222, the acquisition of the property, subsequent occupancy, transfer, quiet enjoyment, or other use."  At the hearing, Pangelinan testified that he would not surrender the premises and also mentioned that "the sale would be void as the underlying civil judgment was void for lack of jurisdiction." (Compl. ¶ 13.)

20.    The court converted the temporary restraining order into a permanent injunction on August 2, 2006. *See* Order Granting Motion for Permanent Injunction (Aug. 2, 2006) (No. 553).

21.    Pursuant to court order, Mr. Alexander issued a revised Notice of

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1   Sale and appeared at the office of Alexander Realty in San Jose, Saipan on July

2   28, 2006 to offer the Papago Property to the highest bidder. *See* Motion to Lift

3   Stay Order and to Confirm Sale of Lot No. E.A. 222 (Nov. 13, 2006) (No.

4   587).

5      22.   Pursuant to the second notice of sale, on July 28, Alexander

6   offered to sell at public auction all rights, title and interest in Lot EA 222. Two

7
    bids were made for the property. As the highest bidder, Mafnas's bid was
8
    accepted.
9
       23.   The sale was held at Alexander's office. Pangelinan never
10
    objected to the place of sale, but instead reiterated his standard line that the sale
11
    would be void because the Underlying Judgment was void, and the judgment
12
    was void because – the district court lacked in personam jurisdiction over
13
    Pangelinan and the subject matter. (Compl. ¶ 35.)
14

15      24.   On August 14, 2006, the court stayed the sale when information

16  came to light indicating that Pangelinan had, at the last minute, recorded deeds

17  for the property naming his sons as the transferees. *See* Order holding

18  Pangelinan in Civil Contempt for failing to appear; for recording a

19
    confirmation deed and quitclaim deed in violation of the restraining order (No.
20
    582).
21
       25.   By separate order, the court declared the deeds from Pangelinan
22
    to his sons null and void. Order Declaring that Document Nos. 06-1832 and
23

24                           Page 11 of 25

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1   06-1833, at the Commonwealth Recorder's Office, are Null and Void (Nov.

2   13, 2006) (No. 586).

3       26.    The court confirmed the sale of Lot no. E.A. 222 on December

4   16, 2002 and ordered the Pangelinans to leave the premises and property

5   peacefully without provoking a breach of the peace or interfering with the use

6   and quiet enjoyment of the property.

7       27.    After securing the property, federal marshals tendered the

8   property to Roy Alexander who, in turn, surrendered the premises to Rufo

9   Mafnas. *See* Order Granting Motion to Confirm Sale of Lot No. E.A. 222 (Dec.

10  18, 2006) (No. 602).

11      28.    On January 28, 2008, Pangelinan forwarded a letter to Rufo

12  Mafnas in which he stated that he had credited $430.30 overpayment from the

13  sale of the Papago Land to amounts he believed would be awarded to him in

14  this lawsuit.

15

16  ## LEGAL STANDARD GOVERNING THIS MOTION

17      Under Federal Rule of Civil Procedure 12(b)(6), a district court must

18  dismiss a complaint if it fails to state a claim upon which relief can be granted.

19  The question presented by a motion to dismiss is not whether the plaintiff will

20  prevail in the action, but whether the plaintiff is entitled to offer evidence in

21  support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct.

22  1683, 1686, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v.*

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1 *Scherer*, 468 U.S. 183, 104 S.Ct. 3012 (1984).

2      In answering this question, the court considers whether there are

3 sufficiently detailed factual allegations in the complaint "to raise a right to

4 relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, --- U.S.

5 ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Dismissal, however,

6 is also warranted in the absence of a cognizable legal theory. *Balistreri v.*

7 *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990).

8

9      In making this determination, the court may take judicial notice of

10 judicial proceedings as well as documents of public record filed therein.[6] Mr.

11 Alexander and Mr. Mafnas seek judicial notice of certain pleadings and rulings

12 only for matters of public record, the motion before the court remains a motion

13 to dismiss and is not converted to a motion for summary judgment. *See*

14 *Gordon v. Impulse Mktg. Group, Inc.*, 375 F.Supp.2d 1040, 1044 (E.D.

15 Wash.2005).

16

17      Finally, even though pro se pleadings are held to a less stringent

18 standard than those drafted by lawyers, courts in this Circuit have ruled that

19 even pro se litigants are bound by the Federal Rules of Civil Procedure. *See,*

20 _____

21      [6] "On a motion to dismiss, [the court] may take judicial notice of matters ...
outside the pleadings." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th

22 Cir.1986). The court may, accordingly, consider matters of public record, including
pleadings, orders, and other papers filed with the court. *See Mack v. South Bay Beer*

23 *Distributors,* 798 F.2d 1279, 1282 (9th Cir.1986) (abrogated on other grounds by *Astoria*
*Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).

24      Page 13 of 25

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

*e.g., King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir 1987); *Warren v. Guelker*, 29

F.3d 1386, 1390 (9th Cir. 1994) ("We recognize that pro se complaints are

read liberally, but they still may be frivolous if filed in the face of previous

dismissals involving the exact same parties under the same legal theories.").

## A. PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATORY CRIMINAL PROSECUTION

Pangelinan claims that he was indicted, arrested, prosecuted, convicted

and imprisoned on account of Alexander's collaboration with the Federal

Defendants when Pangelinan publicly criticized the Underlying Judgment and

the Order of Sale in his June 1 Letter and for exercising his First Amendment

right of free speech.  Nothing could be further from the truth.

Official reprisal for protected speech "offends the Constitution [because]

it threatens to inhibit exercise of the protected right." *Crawford-El v. Britton*,

523 U.S. 574, 589, n. 10, 118 S.Ct. 1584, 1592, 140 L.Ed.2d 759 (1998).

Thus, the First Amendment prohibits government officials from subjecting an

individual to retaliatory actions, including criminal prosecutions, for speaking

out. *Id.* at 592, 118 S.Ct. 1584; *see also Perry v. Sindermann*, 408 U.S. 593,

597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) (the government may not

punish a person or deprive him of a benefit on the basis of his "constitutionally

protected speech").

To allege a Bivens action for retaliatory prosecution for the exercise of

Page 14 of 25

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  free speech rights, therefore, every plaintiff must demonstrate that he was

2  prosecuted for engaging in constitutionally protected conduct. *E.g., Gates v.*

3  *City of Dallas*, 729 F.2d 343, 346 (5th Cir. 1984). Sadly for Mr. Pangelinan,

4  however, true threats of intimidation or physical violence fall outside the ambit

5  of constitutional protection. *See Watts v. United States*, 394 U.S. 705, 707, 89

6  S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969).[7] The Ninth Circuit has established

7  an objective test for determining whether a threat is unprotected by the First

8  Amendment. *See Lovell v. Poway Unified School Dist.,* 90 F.3d 367, 371 (9th

9  Cir.1996)[8] Under *Lovell*, a statement is unprotected if "a reasonable person

10  would foresee that the statement would be interpreted by those to whom the

11  maker communicates the statement as a serious expression of intent to harm or

12  assault." 90 F.3d 367, 371-372 (9th Cir.1996).

13  

14  In making this determination, *Lovett* dicates that "[a]lleged threats

15  should be considered in light of their entire factual context, including the

16  surrounding events and the reaction of the listeners." 90 F.3d at 372 (citing

17  *United States v. Gilbert*, 884 F.2d 454, 457 (9th Cir.1989)). Therefore, if a

18  reasonable person would agree that the threats in the June 1 Letter portended a

19  serious intent to harm or assault, then Pangelinan's protestations that they were

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

---

[7]  394 U.S. at 707, 89 S.Ct. 1399.

[8]  *Watts* held that the statement, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.," was political hyperbole and not a "true threat" given its context.

1  protected as "free speech" are meaningless.

2      In the instant case, the language of the June Letter was not ambiguous;

3  Mr. Alexander and everyone connected with the sale took Pangelinan's letter

4  very seriously; and the Trinidad Plaintiffs turned the matter over to the

5  authorities for further investigation.  Based on the undisputed facts giving rise

6  to this case and the ruling of the Ninth Circuit that "Pangelinan's June 19,

7  2006, letter contain[ed] language which a rational trier of fact could find

8  expressed a threat of physical harm to person or property,"[9] Pangelinan's June

9  1 Letter does not even approach a protected activity.  The Letter, moreover, is

10  hardly the only example of Pangelinan's harassment.  Even a cursory review of

11  the record in Civil Action No. 97-0073 reflects the tumultuous history traveled

12  by the Trinidad Plaintiffs to collect the Underlying Judgment, a history

13  exacerbated by Pangelinan's ongoing roadblocks to interfere with the transfer

14  of property and threats of violence.  The record is replete with orders for

15

16

17

18

19

20

21

22

23      [9]  *United States v. Pangelinan*, 2007 WL 2962354 (9th Cir. 2007).

24                          Page 16 of  25

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  sanctions,[10] to show cause,[11] contempt citations,[12] and restraining orders[13] to

2  stop John Pangelinan from interfering with the Trinidad Plaintiffs' right to

3  collect payment.   Given Pangelinan's history of obstruction and threats he has

4  acted upon, the intimidating tactics in the June 1 Letter stand as far from

5  protected activity as one can get.  *See Wisconsin v. Mitchell*, 508 U.S. 476,

6  484, 113 S. Ct. 2194, 2199, 124 L.Ed.2d 436 (1993) (noting the line between

7  expressions of belief that are protected by the First Amendment and threats of

8  force, which are not).   Because the threats were not protected by the First

9  Amendment, the claim for retaliatory criminal prosecution fails.  *See Keenan*

10  *v. Tejeda*, 290 F.3d 252, 258 (5th Cir.2002) (noting that to establish a First

11  Amendment retaliation claim, ordinary citizens not employed by government

12

13  _____

14  [10]  *E.g.*, Submission of Attorney's Fees and Costs as to Rule 11 Sanctions (No.
    386); Order Granting Plaintiffs' Motion for Sanctions (No. 387); Motion to Compel

15  Attendance at Deposition and for Sanctions (No. 392); Order Granting Motion to Compel
    and for Sanctions (No. 411).

16  [11]  *E.g.*, Motion for Issuance of an Order to Show Cause and for Contempt (No.
    303); Supplemental Filing Re Motion for Order to Show Cause for Contempt (No. 308);

17  Motion for Issuance of Order to Show Cause re: Contempt against Marianas Seaside
    Development Corp. (No. 371).

18  [12]*E.g.,* Order finding John S. Pangelinan in Contempt of Court (No. 428-1).

19
    [13]  *E.g.*, Ex Parte Motion for Temporary Retraining Order (No. 294-1); Motion for

20  Temporary Restraining Order and For Preliminary and Permanent Injunction and
    Supporting Affidavit (Nos. 295-1 and 296-1); Temporary Restraining Order (No. 305-1);

21  Amended Temporary Restraining Order (No. 307); Order Granting Preliminary Injunction
    (No. 315-4); Notice of Motion and Motion for Temporary Restraining order and

22  Permanent Injunction with Memorandum and Declaration (Nos. 403-1, 404-1, 405-1);
    Motion for Ex Parte Temporary Restraining Order and Permanent Injunction (No. 415-1);

23  Temporary Restraining Order (No. 419-1); Order Granting Motion for Permanent
    Injunction (No. 423-1).

24  Page 17 of  25

must show: (1) that they were engaged in constitutionally protected activity, (2) that defendants' actions caused them to suffer an injury which would chill a person of ordinary firmness from continuing to engage in that activity, and (3) that the defendants' adverse actions were substantially motivated by plaintiffs' exercise of constitutionally protected conduct.).

## B. THE CLAIM FOR RETALIATORY DENIAL OF DUE PROCESS ALSO FAILS

### 1. <u>The Execution Sale was Valid</u>

Pangelinan also challenges the validity of the judicial sale because it did not take place at the federal courthouse. (*See* Compl. at 8, citing *Yazoo & M.V.R. v. City of Clarksdale*, 257 U.S. 10, 23, 42 S. Ct. 27, 31, 66 L.Ed. 104 (1921)). He further claims that the taking and delivery of possession of his property, "a non-existent procedure in public sale," likewise renders the sale void. (Compl. at 13.) Finally, Pangelinan claims that the sale is void since it was initiated to satisfy the allegedly void Underlying Judgment. Neither of these arguments have merit.

### 2. <u>The Sale Did Not Take Place at the Wrong Location</u>

Pursuant to the Order Granting Writ of Execution, the district court ordered and authorized Roy Alexander to levy execution upon Lot E.A. 222 to satisfy the balance on the judgment, pursuant to CNMI law. *See* Order Authorizing Roy Alexander to Levy Execution (Feb. 23, 2006) (No. 492); 7

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1    CMC § 4204(b) and (c).  Consistent with CNMI law, the Order Authorizing

2    Execution provided that the sale of the Papago Property be made to the highest

3    bidder, following adequate publication of the sale, "at such place, and on such

4    date and at such time as may be fixed by Mr. Alexander in a Notice of Sale."

5    Order Authorizing Roy Alexander to Levy Execution (No. 491).  The Order

6    authorizing Mr. Alexander to sell the property was issued in accordance with

7    CNMI law to execute on a valid judgment;[14] there is no dispute, moreover, that

8    the sale was  public, that it took place after notice and publication, there was

9    competitive bidding, and the property was sold to the highest bidder.

10   Accordingly, the sale was not void.

11

12        Although Plaintiff contends that 28 U.S.C. 2001, required the sale to

13   take place at the federal courthouse,[15] 28 U.S.C. § 2001 only applies to federal

14   judicial sales – and not execution sales on court judgments which must follow

15   the practice and procedure of the Commonwealth.  *See Weir v. United States,*

16

17   _____

18   [14]  Pangelinan's objections to the Underlying Judgment, on grounds of subject
     matter and personal jurisdiction, are barred by res judicata and are plainly frivolous since
     the district court and the Ninth Circuit have rejected Pangelinan's objections to

19   jurisdiction numerous times.  *See Trinidad v. Pangelinan,* 54 F. Appx 470 (9th Cir. 2003)
     (affirming district court's ruling and denying further filings in closed appeal); *Trinidad v.*

20   *Pangelinan,* 32 F.Appx 357, 359 (affirming district court's exercise of jurisdiction over
     the case and parties); Order Granting Motion to Compel and Motion for Sanctions at 1-2

21   (No. 411) (April 1, 2004) (denying objections to jurisdiction); Order Holding John S.
     Pangelinan in Civil Contempt of Court at 7, (Oct. 23, 2006) (No. 582).

22
     [15]  Complaint at 8, citing *Yazoo & M.V.R.*, 257 U.S. at 23, 42 S.Ct. 27, 66 L.Ed.
23   104.  Plaintiff claims that "sale at place set by statute is absolutely mandatory and if sale
     held at another place it is void."

24                            Page 19 of 25

339 F.2d 82, 85-86 (8th Cir. 1964) (Rule 69(a) of the Federal Rules of Civil

Procedure, and not 28 U.S.C. §2001, governs sales to execute on a judgment;

Rule 69(a) provides that the "process to enforce a judgment for the payment of

money shall be a writ of execution, unless the court directs otherwise" and "the

procedure on execution * * * shall be in accordance with the practice and

procedure of the state in which the district court is held, existing at the time the

remedy is sought").[16]  Because 7 CMC § 4203 does not require an auction of

property pursuant to a writ of execution to be performed at the courthouse,[17]

Pangelinan's challenge to the sale on this basis is misplaced.  Even if section

2001 did apply to the sale at issue, however, holding the auction at Mr.

Alexander's office would not void the sale, given the facts of this case.

On its face section 2001 plainly authorizes the court to order a sale upon

such terms and conditions as it deems appropriate.  *See United States v. Branch

Coal Corp.,* 390 F.2d 7, 10 (3d Cir. 1968), *cert. denied,* 88 S. Ct. 2034, 391

---

[16] *Accord O'Brien v. Kelly,* 597 F.Supp. 17, 19 (D. Alaska 1984) (The sale was conducted following state statutory guidelines; levy was required before the property could be sold; and the sale was to satisfy a money judgment unrelated to the property in issue.  The fact that plaintiffs sought judicial confirmation as allowed by Alaska law "did not turn what would otherwise be an execution sale into a judicial sale.")

[17] *Yazoo & M.V.R.,* moreover, is distinguishable in other material respects.  First, Yazoo plainly held that the statute on which Pangelinan relies only applies to judicial sales, and not to sales of execution.  At issue in *Yazoo* were certain stock certificates that were to be sold pursuant to the state law of Mississippi.  Unlike the law of the Commonwealth, Mississippi state law at this time required the sale to be made at the county courthouse.  257 U.S. at 17.  Therefore, the sale was defective for its failure to comply with state law – and not for any defect that could not be cured under 28 U.S.C. § 2001.

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1   U.S. 966, 20 L.Ed.2d 878. Thus, the court's direction to Mr. Alexander – to

2   hold the sale at his office – would not void the sale nor prevent its

3   confirmation. *See Godchaux v. Morris*, 121 F. 482, 485 (5th Cir. 1903) ("The

4   act does not declare that a failure to comply with these directions shall render

5   the sale null, nor is any penalty denounced for their violation.").

6       In fact, in *Lansburgh v. McCormick*, 224 F. 874, 876-77 (4th Cir. 1915),

7   the Fourth Circuit Court of Appeals addressed whether a sale held at a place

8   other than those specified in the statute was jurisdictional. In declining to so

9   rule, the Fourth Circuit held that the defect would not defeat the court's

10  jurisdiction; the defect did not render the sale void; and the defendant, who had

11  failed to object to the location of the sale in a timely manner, was estopped

12  from later challenging it. *Id.*

13

14      Likewise in *Nevada Nickel Syndicate v. National Nickel Co.*, 103 F. 391,

15  399 (C.C. D. Nev. 1900), the Circuit Court refused to void a sale that had been

16  challenged for its failure to conform strictly to the notice requirements of

17  applicable federal and state statutes. The court held that since the notice

18  provisions had been enacted for the benefit of the debtor, his failure to object

19  in a timely manner to the irregularities did not render the sale void, but only

20  voidable, and that the defect had, in any event, been cured by confirmation

21  after due notice to the defendant. *Id.* The court also acknowledged that "[t]he

22  order of confirmation gives the judicial sanction of the court, and when made it

23

24                          Page 21 of 25

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  relates back to the time of sale, and cures all defects and irregularities, except

2  those founded in want of jurisdiction or in fraud." *Id.* at 396. For these

3  reasons, the court concluded that it had the power to confirm a sale, even when

4  the terms of a decree may not have been strictly followed. *Id.*

5      Thus, even though the sale of the Papago Property took place at some

6  location other than the federal courthouse, Mr. Alexander strictly followed the

7  court's directive in this case. For his part, Pangelinan not only failed to object

8  to the location of the sale, but he shows no prejudice from the sale's location.

9  *See United States v. Grable*, 25 F.3d 298, 303 (6th Cir. 1994). Because

10  Pangelinan received notice of the sale and had every opportunity to challenge

11  the location of the sale before this collateral action, he should be estopped from

12  objecting to the location of the sale for his failure to raise the purported defect

13  before now. *Id.*

14  ### 3. The Sale is Not Subject to Collateral Attack

15      More importantly, Pangelinan's effort to void the sale on the basis that it

16  was not held at the federal courthouse has no merit, because a sale confirmed

17  by the district court, even if erroneous, is not subject to a collateral attack. *See*

18  *Grable*, 25 F.3d at 303, *Read v. Elliott*, 94 F.2d 55, 59 (4th Cir.1938);

19  *Lansburgh,* 224 F. at 876.

20  ### B. PLAINTIFF FAILS TO STATE A CLAIM AGAINST ALEXANDER OR MAFNAS FOR RETALIATORY DENIAL OF DUE PROCESS

1

2      To the best that Alexander and Mafnas can understand this claim,

3   Pangelinan contends that the taking of his land via writ of execution and the

4   delivery of the deed to Mr. Mafnas were void because they contravened federal

5   law and unspecified federal statutes. Just because John Pangelinan "says so"

6   does not make it so. The Papago Property was executed against to satisfy the

7   Underlying Judgment in accordance with the procedures permitted by Fed. R.

8   Civ. P. 69 and CNMI law. Pangelinan had multiple opportunities to participate

9   in the process, just as he was afforded ample opportunity to satisfy the

10  Underlying Judgment through other means. Since the Papago Property was

11  not taken in retaliation for the exercise of his First Amendment rights but to

12  satisfy the Underlying Judgment, there can be no claim against Messrs.

13  Alexander and Mafnas for retaliatory denial of due process of law.

14      Although Pangelinan takes pains to point out that Alexander testified

15  against him before the court and before the grand jury, that he filed a "negative

16  statement", and delivered a deed to the Papago land to Mafnas, he makes no

17  allegation that Alexander offered perjured testimony to obtain an indictment

18  without probable cause or that he did anything but carry out the court's order

19  as directed. *See* Report on Notice of Sale for June 2, 2006 (June 13, 2006)

20  (No. 507); Compl. ¶¶ 7, 10, 13, 19.[18] Since Pangelinan has likewise failed to

21

22

23      [18] For these reasons, Alexander is also entitled either to absolute, quasi- judicial
    immunity. Absolute judicial immunity protects an officer of the court who lawfully

24                          Page 23 of 25

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  plead any participation by Mafnas beyond that of a good faith purchaser,

2  moreover, he has failed to make even the most cursory showing of how

3  Mafnas violated his rights or denied him due process. Accordingly, all claims

4  against these defendants should be dismissed.

5
                                **CONCLUSION**
6

7  Dismissal of the Complaint is proper. Based on allegations rising to the

8  level of the delusional or wholly incredible, Pangelinan contends Alexander

9  and Mafnas should be punished for interfering with his First Amendment rights

10 and for engaging in conduct that denied him due process. There are no First

11 Amendment rights that these Defendants violated. No facts have been pled to

12 establish interference. This case is simply about another man who will not

13 understand the rule of law but can only comply by the force of law. However,

14 if John Pangelinan wishes to seek the harbor of the law, he must first yield to

15 the rule of law– but he cannot have it both ways. For the foregoing reasons,

16 therefore, all claims against Roy E. Alexander and Rufo T. Mafnas should be

17 dismissed with prejudice.

18

19

20 Respectfully submitted this 14th day of February, 2008.

21 executes a valid court order. *See Coverdell v. Department of Soc. and Health Servs.*, 834

22 F.2d 758, 764-65 (9th Cir.1987); *see also Singh v. Magee*, 1 Fed.Appx. 713, 714 (9th Cir.2001). Furthermore, "[a]n absolute immunity [defense] defeats a suit at the outset, so

23 long as the official's actions were within the scope of the immunity." *See Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976).

24

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24

/s/

ROBERT TENORIO TORRES, ESQ.
Attorney for Roy E. Alexander and Rufo T. Mafnas