**F I L E D**
Clerk
District Court

FEB 1 5 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  **Robert Tenorio Torres**
   **Attorney at Law**
   P.O. Box 503758
2  Saipan, MP 96950
   Tel: (670) 234-7859
3
   Attorney for Lillian A. Tenorio and Robert T. Torres,  pro se
4

5  ## IN THE UNITED STATES DISTRICT COURT
   ## FOR THE NORTHERN MARIANA ISLANDS
6

7  **JOHN S. PANGELINAN,**                    **Case No. CV 08-0004**

8                    Plaintiff,              **MEMORANDUM IN**
                                             **SUPPORT OF MOTION TO**
9  vs.                                       **DISMISS BY LILLIAN A.**
                                             **TENORIO AND ROBERT T.**
10 **DAVID A. WISEMAN, et al.,**             **TORRES PURSUANT TO**
                                             **RULE 12(b)(6) AND**
11                   Defendants.             **MOTION FOR SANCTIONS**

12 **ANGELITO TRINIDAD, RONNIE**
   **PALERMO, HERMAN TEJADA,**
13 **ESPERANZA DAVID, ANTONIO**
   **ALOVERA , and UNITED**
14 **STATES OF AMERICA,**
                                             Date: _____APR 1 7 2008_____
15                   Respondents.            Time: ___9:00 a.m.___
                                             Judge: _____
16

17

18                    **INTRODUCTION**

19     The Complaint in the above-entitled matter must be dismissed as to

20 defendants Robert T. Torres and Lillian A. Tenorio for failure to state a claim

21 upon which relief can be granted.  Robert T. Torres and Lillian A. Tenorio are

22 attorneys engaged in the private practice of law in the Commonwealth.  At all

23 times material to this action, Mr. Torres and Ms. Tenorio were engaged to

*(left margin)* Robert Tenorio Torres  Attorney at Law  P.O. Box 503758 - Saipan MP 96950  (670) 234-7859

1    assist Pangelinan's former employees, Angelito Trinidad, Ronnie Palermo,

2    Herman Tejada, Esperanza David, and Antonio Alovera (the "Trinidad

3    Plaintiffs") with the collection of a judgment obtained against Pangelinan and

4    his wife by prior counsel in Civil Action 97-0073 (the "Underlying

5    Judgment"). In this Bivens-styled action, Plaintiff John S. Pangelinan

6    nevertheless asserts that Attorneys Torres and Tenorio are "state actors", who

7    conspired with judges Munson and Wiseman to violate his First Amendment

8    rights and deprive him of his liberty and property without due process of law.[1]

9

10    How Torres and Tenorio allegedly accomplished these wrongs as

11    federal agents is not readily apparent. Pangelinan claims Tenorio violated his

12    rights when she obtained an order permitting execution on Pangelinan's

13    Papago property to satisfy the Underlying Judgment; when she consulted with

14    auctioneer Roy Alexander about the threats in Pangelinan's infamous June 1

15    Letter, threatening reprisals for anyone connected with the sale of the Papago

16    Property and published in the local newspapers; and when she tendered a bid

17    on behalf of the Trinidad Plaintiffs at the execution sale.[2] Through these

18    actions, Pangelinan claims that Tenorio collaborated with the Federal

19    Defendants to indict, arrest, prosecute, convict, and imprison Pangelinan in

20    retaliation for publishing the June 1 Letter and for his "exercising his First

21    _____

22    [1](Compl. at 3.)

23    [2](Compl. ¶¶ 5, 7, and 15.)

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1    Amendment right of free speech."[3]

2        Pangelinan attacks Torres for obtaining an injunction[4] to put an end to

3    Pangelinan's self-help efforts to recapture certain property in Garapan that

4    had been sold to satisfy the Underlying Judgment.[5]  According to Pangelinan,

5    Torres is also guilty of seeking assets to satisfy the deficiency judgment in

6    Civil Action 97-0073, and of applying to the court for an order of contempt

7    when Pangelinan refused to appear for deposition and when he refused to be

8    sworn, once he eventually showed up.[6]  For these acts, Pangelinan charges

9    Torres with retaliatory denial of due process of law, of liberty, and of

10    property.[7]

11        Both Torres and Tenorio, Pangelinan also complains, are guilty of

12    appearing before Judge Wiseman to enjoin him from interfering with the

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

---

15    [3](Compl. at 11.)

16    [4]  In the event that anyone is uncertain about which of the many writs restraining
      Pangelinan is at issue here, it is the temporary restraining order, that was later converted
17    into a permanent injunction, as a "non-existent, post-judgment already-enforced judgment
      writ." (Compl. ¶ 46.) Pangelinan admits that "almost immediately after it was issued, he
18    defied Wiseman's temporary restraining order by appearing at the site or the land and
      chained the front door and attempted to oust the occupants." *Id.* ¶ 47.

19        [5](*See* Compl. ¶¶ 44-46.)  According to Pangelinan, Torres' efforts to end
      Pangelinan's terrorizing of MSDC's lessees made him a "*de facto* landlord by a supposed
20    acquired interest in the Garapan land by the public sale of said land" that was "done
      contrary to federal law and statute, "rendering the deed void too for other reasons."
21    (Compl. ¶ 46.)

22        [6](Compl. ¶¶ 47-50.)

23        [7](Compl. at 29-30.)

1   judicially-ordered execution sale; for obtaining an order to eject him from the

2   Papago Property after its sale; "for the unlawful, retaliatory taking of

3   Pangelinan's Papago land"; and for ousting him and his family from the

4   Property.[8]

5       Notwithstanding his bald allegation charging the opposite, the

6   Complaint offers no facts to establish Attorneys Torres and Tenorio qualify as

7   state actors responsible for the perpetration of Pangelinan's alleged

8   constitutional injuries. *See Dennis v. Sparks*, 449 U.S. 24, 28, 101 S. Ct. 183,

9   66 L.Ed.2d 185 (1980) *Pangelinan v. Munson*, 54 F.Appx. 472, 2003 WL

10  124474 (9th Cir. 2003). "[M]erely resorting to the courts and being on the

11  winning side of a lawsuit does not make a party a co-conspirator or a joint

12  actor with the judge." *Dennis*, 449 U.S. at 28, 101 S. Ct. at 186. To prove a

13  conspiracy between Pangelinan and any of the Federal Defendants, moreover,

14  Plaintiff must also assert concrete facts evidencing some sort of agreement or

15  meeting of the minds to violate Pangelinan's constitutional rights. *See Lugar*

16  *v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939, 102 S. Ct. 2744, 2754, 73

17  L.Ed.2d 482  (1982); *Woodrum v. Woodward County, Okl.*, 866 F.2d 1121,

18  1126 (9th Cir. 1989). Because the claims against Torres and Tenorio likewise

19  fail entirely in this respect, they should be dismissed for this reason.

20      This is not the first time that John Pangelinan has blamed opposing

23  [8](Compl. ¶¶ 12-14, 19.)

Page 4 of  22

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

counsel for his troubles. *See Pangelinan,* 54 F.Appx. 472, 2003 WL 124474 (dismissing constitutional claims against Trinidad Plaintiffs' former attorney, Charles Rotbart, since Rotbart was not a state actor and closing appeal). This is also not the first time that Pangelinan has, in reprisal, filed a meritless claim. *See Trinidad v. Pangelinan*, 54 Fed.Appx. 470, 2003 WL 124471 (9th Cir. 2003), *cert. denied*, 538 U.S. 1064, 123 S. Ct. 2232, 155 L.Ed.2d 1119 (2003).[9] As set forth in the Factual Statement below, Attorneys Torres and Tenorio have done nothing but apply to this court for orders protecting their clients. Because Pangelinan's sole purpose in joining Mr. Torres and Ms. Tenorio in this action is to harass them and cause a wholly unnecessary expenditure of judicial resources as well as their time, an award of costs and fees is called for in this case.

## FACTS

1.    On June 5, 2000, the district court issued Amended Findings of Fact and Conclusions of Law finding Pangelinan liable to the Trinidad Plaintiffs for RICO violations, mail and wire fraud, and common law fraud. (Compl. ¶ 25.)

2.    To satisfy the judgment, certain properties in Garapan, belonging to John and Merced Pangelinan, were auctioned and sold to the Trinidad

---

[9]  Even though the Court of Appeals closed the file, Pangelinan attempted to appeal this ruling on May 3, 2002. *See* Record of Proceedings of *Trinidad v. Pangelinan*, CV. 97-00073 (No. 344-1).

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  Plaintiffs, as judgment creditors.  (Compl. ¶ 4.)

2      3.    John Pangelinan filed several appeals to contest the Underlying

3  Judgment.[10] The Ninth Circuit Court of Appeals affirmed the district court's

4  rulings and affirmed the sale of these properties on March 19, 2002.  *See*

5  *Trinidad v. Pangelinan*, 32 Fed.Appx. 357, 2002 WL 461731 (9th Cir.

6  2002).[11]

7

8      4.    Notwithstanding the rulings of the court, John Pangelinan and his

9  wife chose to ignore the judicial sale of the Garapan property, refused to leave

10  it, and continued to threaten the lessee – in person, through the mails, and by

11  facsimile – with "self help" eviction notices in order to induce the lessee not

12  to pay rents.  To put an end to this harassment, Mr. Torres obtained an order

13  restraining and enjoining John and Merced Pangelinan from taking or doing

14  any act whatsoever that would affect the right of the Trinidad Plaintiffs to

15  _____

16      [10]  In consolidated Appeal Nos. 00-15697 and 00-15705, John and Merced
    Pangelinan appealed the judgment.  In companion Appeal No. 00-16630, the Pangelinans
17  appealed the district court's order issuing writs of attachment and execution and levy on
    their bank account to satisfy the judgment.  In companion Appeal No. 01-16622, the
18  Pangelinans appealed the sale of their real property to satisfy the Underlying Judgment
    and the entry of a preliminary injunction preventing them from interfering with the lessee
19  of one of the properties subject to the writ of attachment.  Each of the district court's
    rulings were upheld.  32 Fed. Appx. 357, 2002 WL 461731 (9th Cir. Mar. 15, 2002).  Mr.
20  Pangelinan, however, never missed any additional opportunity to raise his objection to
    jurisdiction.  See Objection to Plaintiffs' Motion to Compel Attendance at a Deposition
21  and for Sanctions and Pangelinans' Motion to Dismiss for Court's Lack of Article III
    Subject Matter Jurisdiction (Mar. 10, 2004) (No. 396-1).

22      [11]  Appeal No. 00-15697 was a consolidated appeal that included Appeal Nos. 00-
    15706, 00-16630, and 01-16622.  See 32 Fed. Appx. 357, 2002 WL 461731 (9th Cir.
23  March 15, 2002).

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  receive rents or other income due them.[12]

2      5.      On April 21, 2001, Pangelinan filed a Rule 60(b)(4) motion to

3  vacate or annul the Underlying Judgment, arguing that the district court

4  lacked jurisdiction over him as well as the subject matter. (*See* Compl. ¶ 3.)

5
   On January 15, 2003, the Ninth Circuit issued its memorandum decision in
6
   Appeal No. 02-16013, affirming the district court's judgment denying the Rule
7
8  60(b)(4) motion to void the judgment. *See Trinidad*, 54 Fed.Appx. 470, 2003

9  WL 124471.[13]

10     6.      When Pangelinan refused to satisfy the balance of the

11 Underlying Judgment voluntarily, the Trinidad Plaintiffs levied execution on

12 four parcels of the Pangelinans' land (the "Garapan Property") for $201,000.

13 Because the proceeds of the sale of the Garapan Property were insufficient to

14 satisfy the judgment, a deficiency remained that continued to accrue interest

15 from July 1, 2001.

16
17     7.      Pangelinan's continuing objections to the Judgment and his

18 defiance of this court's rulings brought him civil and criminal sanctions.  In

19 July of 2000, former counsel Rotbart applied to the court for the first of

20

21      [12] *See* Order Granting Preliminary Injunction; Order Denying Motion to Release
   Funds; and Order Awarding Attorney Fees and Costs (No. 315-1).
22
      [13] Even though the Court of Appeals closed the file, Pangelinan attempted to
23 appeal this ruling on May 3, 2000. *See* Record (May 3, 2000) (No. 344-1).

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  several restraining orders to restrain John and Merced Pangelinan from

2  interfering with the execution of the Underlying Judgment.[14/]

3      8.    In an effort to collect the deficiency, Mr. Torres, on behalf of

4  the Trinidad Plaintiffs, attempted to depose Pangelinan to determine whether

5  there were any additional assets available to satisfy the balance.  Not only did

6  Pangelinan refuse to cooperate and fail to appear when noticed, but when he

7  did show up at deposition, he refused to disclose information about his

8  financial status and take the oath required by Rule 30(b)(4).  For this, the

9

10  district court ultimately found Pangelinan in contempt.[15/]

11      9.    The Trinidad Plaintiffs, through the efforts of attorney Torres,

12  "finally" obtained a title report revealing that Pangelinan owned all right, title

13  and interest in certain property in Papago (Lot E.A. 222 or the "Papago

14  Property").  (Compl. ¶ 30.)  Thus, when the Trinidad Plaintiffs applied for a

15  writ of execution to levy on E.A. 222,[16/] the court issued a writ in January of

16  2006, authorizing the property to be sold at judicial sale[17/].  *See also*

17  Amended Order Granting Writ of Execution (Mar. 9, 2006) (No. 502).

18

19      [14]*See, e.g.*, Record of Proceedings at 22 (No. 305-1); Order Granting Preliminary Injunction (No. 315-1).

20

21      [15]*See* Order Finding Defendant John S. Pangelinan in Contempt of Court (April 30, 2004) (No. 430).

22      [16]*See* Notice of Motion for Writ of Execution (Dec. 30, 2005) (No. 464).

23      [17]Order Granting Writ of Execution (Jan. 27, 2006) (No. 485).

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

10.    Pangelinan opposed the writ and proposed to substitute two other parcels of property.[18] After carefully considering and rejecting each of Pangelinan's arguments – including his challenges to the court's jurisdiction, the court authorized and directed Roy E. Alexander to levy execution upon Lot. No. E.A. 222 in order to satisfy the balance of the Underlying Judgment. *See* Order Authorizing Roy Alexander to Levy Execution (Feb. 23, 2006) (No. 492); Order Granting Writ of Execution (Jan. 27, 2006) (No. 485); Amended Order Granting Writ of Execution (Mar. 9, 2006) (No. 502).

11.    Alexander scheduled a judicial sale of Lot E.A. 222 for June 2, 2006 at Alexander's office and arranged for publication of the notices of the sale. *Id.*

12.    One day prior to the scheduled date of sale, Pangelinan delivered a letter addressed to an editor (the "June 1 Letter") to Alexander's office. (Compl. ¶ 6.) The next day, the letter to the editor was published in the MARIANAS VARIETY. (*Id.*) Among other things, the letter announced to "the whole world that the Court's (Munson's) judgment and (Wiseman's)

---

[18] Pangelinan contended that because the CNMI had no statute designating anyone to issue a writ of execution, it was incumbent upon the Trinidad Plaintiffs, as judgment creditors, to obtain a praecipe from the clerk of the court. *See* Objection to Plaintiffs' Motion for Writ of Execution and Sale of Real Property (Jan. 17, 2006) (No. 477). The Pangelinans further contended that they were using the Papago Property as their residence, and thus it was exempt from execution; that the Underlying Judgment – even if valid – had already been satisfied.

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  orders were all void, that the sale would be void and [that the] would-be

2  purchaser would be buying himself nothing but a lawsuit." (*Id.*). The June 6

3  Letter went on to proclaim that "he would not surrender the Papago land to

4  any would be purchaser 'to anyone come typhoon, tsaunami, volcanic

5  eruption or the devil himself.'" (*Id.*). Pangelinan further stated that "anyone

6  coming to the land claiming it would feel his 'wrath with a vengeance."

7  (Compl. ¶ 6.); *see also* R. Alexander Decl. Regarding Report on Notice of

8
   Sale (June 13, 2006) (No. 508).

9

10     13.    As a result of the Letter, the auction was cancelled and

11  rescheduled for a later date. *See* Report on Notice of Sale for June 2, 2006

12  (June 13, 2006) (No. 507).

13     14.    The Trinidad Plaintiffs received a second letter intended for an

14  editor to a Saipan newspaper on June 19, 2006. In addition to reiterating that

15  he would not yield his property to any purchaser and that he "would breathe

16  his wrath down on the purchaser with a vengeance," Pangelinan also stated

17  that "[t]he whole world is informed here that I am ready to brawl with any

18
   trespasser or usurper who would come in on [this] land." This letter was also

19  published in the MARIANAS VARIETY. *See* Order Holding John S. Pangelinan

20  in Civil Contempt of Court (Oct. 23, 2006) (No. 582).

21

22     15.    As a result of the publication of the Letter, a grand jury

23

Page 10 of  22

subsequently indicted Pangelinan on two counts of obstruction of a court order in violation of 18 U.S.C. § 1509, arising out of his use of threats to interfere with a court order.  (*See* Compl. ¶ 10 mentioning only the one count); *see also United States v. Pangelinan*, 2007 WL 2962354 (9th Cir. 2007) (reversing jury conviction on Count 1, but affirming conviction on Count 2).

16.    The Ninth Circuit ruled that Pangelinan's June 19, 2006, letter contained language which a rational trier of fact could find expressed a threat of physical harm to person or property. *Id*.

17.    At Tenorio's request, on June 29, 2006, the court issued a temporary restraining order to prevent Pangelinan from again interfering with the rescheduled judicial sale.  *See* Order Granting Motion for Temporary Restraining Order (June 30, 2006) (No. 538).  In material part, the order required Pangelinan to "refrain immediately from impeding or interfering with the levy on and judicial sale of Lot No E.A. 222, the acquisition of the property, subsequent occupancy, transfer, quiet enjoyment, or other use."[19] At the hearing, Pangelinan testified that he would not surrender the premises and also mentioned that "the sale would be void as the underlying civil judgment was void for lack of jurisdiction."  (Compl. ¶ 13.)

---

[19]  Pangelinan characterizes the temporary restraining order as a "non-existent, post-judgment already-enforced-judgment writ." ( *See* Compl. ¶ 46.)

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

18.    The court converted the temporary restraining order into a permanent injunction on August 2, 2006.[20]

19.    Pursuant to court order, Mr. Alexander issued a revised Notice of Sale and appeared at the office of Alexander Realty in San Jose, Saipan on July 28, 2006, to offer the Papago Property to the highest bidder.[21]

20.    Pursuant to the second notice of sale, on July 28, Alexander offered to sell at public auction all rights, title and interest in Lot EA 222. Two bids were made for the property. As the highest bidder, Defendant Rufo Mafnas's bid was accepted.

21.    On August 14, 2006, the court stayed the sale when information came to light indicating that Pangelinan had, at the last minute, recorded deeds for the property naming his sons as the transferees. *See* Order holding Pangelinan in Civil Contempt for failing to appear; for recording a confirmation deed and quitclaim deed in violation of the restraining order.[22]

22.    By separate order, the court declared the deeds from Pangelinan

---

[20]Order Granting Motion for Permanent Injunction (Aug. 2, 2006) (No. 553.)

[21]Exhibit to Motion to Lift Stay and to Confirm Sale of Lot No. E.A. 222 (Nov. 13, 2006) (No. 587).

[22]Order Holding John S. Pangelinan in Civil Contempt of Court (Oct. 23, 2006) (No. 582).

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 · Saipan MP 96950
(670) 234-7859

1  to his sons null and void.[23]

2    23.    The court confirmed the sale of Lot E.A. 222 on December 16,

3  2006, and ordered the Pangelinans to leave the premises and property

4  peacefully without provoking a breach of the peace or interfering with the use

5  and quiet enjoyment of the property.

6    24.    After securing the property, federal marshals tendered the

7  property to Roy Alexander who, in turn, surrendered the premises to Rufo

8  Mafnas.[24]

9

10                **LEGAL STANDARD GOVERNING THIS MOTION**

11    Under Federal Rule of Civil Procedure 12(b)(6), a district court must

12  dismiss a complaint if it fails to state a claim upon which relief can be

13  granted. *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S. Ct. 1955,

14  1959, 167 L.Ed.2d 929 (2007). The question presented by a motion to dismiss

15  is not whether the plaintiff will prevail in the action, but whether the plaintiff

16  is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*,

17  416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *overruled on*

18  *other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012 (1984). In

19

20  ———————————

21    [23]Order Declaring that Document Nos. 06-182 and 06-1833, in the
   Commonwealth Recorder's Office, are Null and Void (Nov. 7, 2006) (No. 586).

22    [24]Order Granting Motion to Confirm Sale (Dec. 18, 2006) (No. 602).

23

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  making its determination, the Court need not credit "bald assertions,

2  unsupportable conclusions, periphrastic circumlocutions, and the like" when

3  evaluating the Complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st

4  Cir. 1996).

5       Where there is a conspiracy claim for violation of constitutional rights,

6  the Ninth Circuit requires a plaintiff to state specific facts to support the

7  existence of the claimed conspiracy. *See Olsen v. Idaho State Bd. of*

8  *Medicine*, 363 F.3d 916, 929-30 (9th Cir. 2004). Accordingly, a Bivens

9  conspiracy claim must not only plead facts establishing the defendants as state

10  or federal actors: it must also plead with certain specificity. *Id.* Where a

11  complaint lacks any facts specific to a conspiracy and particularly an

12  agreement to violate a plaintiff's civil rights, the claim will be dismissed for

13

14  failure to state a claim.[25/] *Id.*

15  ────────────────

16  [25]Prior to *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002), the Ninth Circuit imposed a heightened pleading standard requiring evidence of an agreement to violate specific constitutional rights. *Branch v. Tunnell*, 937 F.2d 1382,

17  1386 (9th Cir. 1991) (en banc). In *Galbraith*, a three-judge panel of the Ninth Circuit examined Supreme Court precedent disapproving of heightened pleading standards in

18  civil rights cases brought under Title VII and found this precedent contrary to the decision in *Branch*. On this basis, it determined that *Branch* was no longer good law.

19  *Galbraith* then went on to eliminate the heightened pleading requirement for improper motive in constitutional tort cases. 307 F.3d at 1125-26.

20      Despite the holding in *Galbraith*, the Ninth Circuit appears to still apply a heightened pleading standard to conspiracy claims. *See Olsen*, 363 F.3d at 929.

21  Notwithstanding *Galbraith*, *Olsen* relied apparently upon *Branch* to support the application of the heightened standard, the very same case that the Ninth Circuit

22  acknowledged had been overruled in *Galbraith*. Given *Galbraith's* holding, there is reason to question whether a heightened pleading standard applies. At the very least,

23  *Galbraith* suggests the standard should be applied liberally to give defendants enough information about the alleged conspiracy to permit them to frame a response.

1    Finally, even though pro se pleadings are held to a less stringent

2  standard than those drafted by lawyers, courts in this Circuit have ruled that

3  even pro se litigants are bound by the Federal Rules of Civil Procedure. *See,*

4  *e.g., King v. Atiyeh*, 814 F.2d 565 (9th Cir 1987); *Warren v. Guelker*, 29 F.3d

5  1386, 1390 (9th Cir. 1994) ("We recognize that pro se complaints are read

6  liberally, but they still may be frivolous if filed in the face of previous

7  dismissals involving the exact same parties under the same legal theories.").

8  Even though the Federal Court is charged with liberally construing a

9  complaint filed by a pro se litigant to allow the development of a potentially

10  meritorious case, moreover, the requirement of liberal construction does not

11  mean that the Court can ignore a clear failure in the pleadings to allege facts

12

13  which set forth a Federal claim. *See Ajaj v. United States,* 479 F.Supp.2d 501,

14  535-36 (D. S.C. 2007).

15                            **ARGUMENT**

16  **A.  THE CONSTITUTIONAL CLAIMS AGAINST TENORIO AND**
    **TORRES FAIL BECAUSE THEY ARE NOT GOVERNMENT**
17                            **ACTORS**

18

19    The Supreme Court has conclusively ruled that there is no private right

20  of action under Bivens for damages against private entities acting under color

21  of federal law. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66,

22  122 S. Ct. 515, 519, 151 L.Ed.2d 456 (2001) (in action alleging constitutional

23

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

deprivation against private operator of halfway house, Supreme Court rejected the request to extend Bivens liability to new category of defendants); *Meuse v. Pane*, 322 F.Supp.2d 36, 38-39 (D. Mass.2004) (holding that plaintiff could not sustain a Bivens action against broadcast network because "a Bivens claim is simply not available against a private entity even if that entity is acting under the color of federal law"). Accordingly, for a Bivens claim to succeed, a plaintiff must allege: (1) that the defendant was acting under color of federal law; and (2) the defendant violated the plaintiff's constitutional rights. *See Hartman v. Moore*, 547 U.S. 250, 256, 126 S. Ct. 1695, 1701, 164 L.Ed.2d 441 (2006); *Morgan v. United States*, 323 F.3d 776, 780 (9th Cir. 2003). Once a Plaintiff establishes that a defendant has acted under federal law, "[t]here are two aspects to the second inquiry: 1) there must have been a deprivation of federally protected rights, privileges or immunities, and 2) the conduct complained of must have been causally connected to the deprivation." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989).

In this case, the court need not even reach the second criterion because Pangelinan fails to allege any facts establishing the first one: the Complaint against Tenorio and Torres fails to allege any factors that could conceivably qualify them as an arm of the government.

It is true, as Plaintiff asserts, that victims of constitutional violations *by*

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1    *federal employees or agents* may maintain so-called Bivens claims for

2    damages, despite the absence of any statute specifically conferring such a

3    right. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403

4    U.S. 388, 391, 91 S.Ct. 1999, 2002, 29 L.Ed.2d 619 (1971) (emphasis added).

5    It is equally true that the private status of a defendant does not automatically

6    defeat a Bivens claim, *provided that the defendant engaged in federal action.*

7    (emphasis added.)  Although United States Supreme Court jurisprudence

8    outlines several approaches or discrete tests for detecting the presence of

9    action under color of state law, none of these tests apply here, since

10   Pangelinan has alleged no facts giving rise to any of them. *See Groman v.*

11   *Township of Manalapan*, 47 F.3d 628, 639 (3d Cir. 1995) (listing the tests as

12   the exclusive government function approach, the joint participation or

13   symbiotic relationship approach, and the nexus approach).

14         The Complaint does not contain any allegations that either Torres or

15   Tenorio were engaged in federal law enforcement activity, were on the

16   government payroll, received federal funding for their work, or were even

17   authorized to perform a government task as government agents or actors.  Nor

18   does the Complaint provide a clue as to how Tenorio or Torres acted in

19   concert with any federal defendant so as to qualify as federal actors on these

20   grounds.  Because the thrust of Plaintiff's grievances against Torres and

21   Tenorio concern, only, actions taken on behalf of their clients during the

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

Page 17 of  22

1   course of a legal proceeding as private counsel, there is no evidence

2   establishing them as government actors who can be liable for federal

3   constitutional violations under Bivens. *See Mathis v. Pac. Gas & Elec. Co.*,

4   75 F.3d 498, 503 (9th Cir.1996) (finding that it was error not to dismiss a

5   Bivens claim absent proof that the defendant was an agent of the federal

6   government); *Lacedra v. Donald W. Wyatt Detention Facility*, 334 F.Supp.2d

7   114, 136-37 (D. R.I. 2004) (dismissal is warranted when plaintiffs did not

8   allege that the defendants were federal agents); *Stone v. Baum*, 409 F.Supp.2d

9   1164, 1176 (D. Ariz. 2005) (plaintiffs may not sue a lawyer in private practice

10  for violations of their civil rights because private practice attorneys are not

11  state actors).

12      Dismissal is therefore warranted as to all claims.

13

14  **B.  PLAINTIFF FAILS TO PLEAD A CONSPIRACY CLAIM AND**
    **THAT HE WAS ENGAGED IN PROTECTED CONDUCT**

15

16      Pangelinan contends that Torres and Tenorio "are private attorneys who

17  were state actors and who at all relevant times substantially employed and

18  utilized the aid of, and at times aided, in collusion, combination and

19  collaboration with the Federal Defendants, one way or another. . . ." Under

20  any standard of pleading, let alone the pleading standard required in the Ninth

21  Circuit in *Olsen*, this conspiracy claim fails.

22      First, Plaintiff does not explain anywhere in his complaint how Tenorio

23

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

or Torres were involved in the alleged federal court conspiracy.  The only stated explanation of these attorneys' "wrongful conduct" was their use of judicial process to enforce a valid judgment of this court.   Second, *Olsen* requires Pangelinan to state specific facts to support the existence of his conspiracy claim which must include discussion of an agreement among the alleged conspirators to violate his civil rights.[26]  Because Pangelinan chooses to overlook this requirement, the Complaint fails on these grounds.

Finally, to establish a First Amendment retaliation claim in an "ordinary citizen" case – that is, a case that does not involve an employment or contractual relationship between the plaintiff and the government--a plaintiff must show (1) that he engaged in constitutionally protected activity, (2) that the defendant's actions caused "an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) that the actions complained of were "substantially motivated" by the plaintiff's protected activity. *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Pangelinan utterly fails in this regard, since there is no constitutional right to threaten people with harm.  There is no constitutional right to avoid paying a

---

[26]*Cf. Harris v. Broderick*, 126 F.3d 1189, 1196 (9th Cir. 1989)(stating that at a bare minimum a plaintiff must "plead with particularity as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights").

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  judgment. There is no constitutional right to ignore court orders. Moreover,

2  because there *was* probable cause for indicting Pangelinan on obstruction of a

3  court order for publishing his threatening and intimidating Letter, no claim for

4  retaliatory prosecution can exist. *See Moore*, 547 U.S. at 260-61, 126 S. Ct.

5  1704. (emphasis added.)

### C.  TORRES AND TENORIO ARE ENTITLED TO SANCTIONS

In *Pangelinan*, 54 F.Appx 472, 2003 WL 124474, the Ninth Circuit

warned Pangelinan that because a private attorney representing the Trinidad

Plaintiffs in Civil Action 97-0073 was not a state actor, the attorney could not

10  be sued for constitutional violations. In bringing this lawsuit against Torres

11  and Tenorio, Pangelinan once again filed a lawsuit founded on arguments that

12  
13  have been previously litigated and rejected.

14  As a result of his choice to continue with his meritless challenges to the

15  Underlying Judgment, Torres and Tenorio have been forced to incur expenses

16  and other costs to respond. Under these circumstances and even against pro

17  se litigants, the Ninth Circuit has consistently ruled that an award of damages

18  is appropriate as a sanction for filing a frivolous action. *See* 120 Fed.Appx.

19  742, 2005 WL 332757 (9th Cir. Feb. 11, 2005). Rule 11 sanctions as well as

20  
21  sanctions under 28 U.S.C. § 1927 and 42 U.S.C. 1988, are therefore warranted

22  against Pangelinan in this case. See *Stone*, 409 F.Supp.2d at 1171.

23  //

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

**CONCLUSION**

While a complaint subject to a 12(b)(6) motion is to be construed liberally in a plaintiff's favor, *Twombly* makes clear that it need not accept inferences drawn by plaintiffs if those inferences have no support in the facts alleged in the complaint. Although a complaint "does not need detailed factual allegations," it plainly "requires more than labels and conclusions, and a formalistic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65. In fact, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.2007) (plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible"). Where, as here, there are no facts establishing Tenorio or Torres as federal actors, the court cannot credit a plaintiff's "bald assertions" or "legal conclusions" to the contrary. *Twombly*, 127 S. Ct. at 1964-65. Dismissal is, accordingly, warranted when a plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Without a shred of evidence establishing Tenorio and Torres as state actors, John Pangelinan has filed a complaint against them for vague and amorphous constitutional violations in utter disregard of applicable law. For

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

1  the foregoing reasons, therefore, all claims against Lillian A. Tenorio and

2  Robert T. Torres should be dismissed with prejudice.  To put an end to

3  Pangelinan's harassment and to compensate these attorneys for the bad faith

4  filing of what can only be characterized as a frivolous and groundless lawsuit,

5  the Court should impose sanctions in the form of costs and fees.

6  Respectfully submitted this 14th day of February, 2008.

7

8  _____ /s/ _____

9  ROBERT TENORIO TORRES, ESQ.
   Attorney for Lillian A. Tenorio and
10 Robert T. Torres, pro se

Robert Tenorio Torres
Attorney at Law
P.O. Box 503758 - Saipan MP 96950
(670) 234-7859

11

12

13

14

15

16

17

18

19

20

21

22

23