**JOHN S. PANGELINAN**
P.O. Box 501721
Saipan, MP  96950

Telephone No. (670) 322-0322

Pro se

**F I L E D**
Clerk
District Court

FEB 2 6 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **JOHN S. PANGELINAN** ) | **Civil Action No. 08-0004** |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| **v.** ) | |
| ) | |
| ) | |
| ) | |
| **DAVID A. WISEMAN, ALEX R. MUNSON,** ) | **OPPOSITION TO RULE 12** |
| **CRAIG N. MOORE, MARGARITA D.L.G.** ) | **(b)(6), Fed.R.Civ.P., MO-** |
| **WONENBERG, MELINDA N. BRUNSON,** ) | **TION TO DISMISS FILED** |
| **JOSEPH AUTHER, DONALD HALL, WOLF** ) | **BY LILLIAN A. TENORIO,** |
| **CALVERT, GRAND JURORS 1 Thru 23,** ) | **ROY E. ALEXANDER, RO-** |
| **JURORS 1 Thru 12, ROY E. ALEXANDER** ) | **BERT T. TORRES and RU-** |
| **ROBERT T. TORRES, LILLIAN A. TENORIO** ) | **FO T. MAFNAS** |
| **and RUFO T. MAFNAS** ) | |
| ) | |
| Defendants, ) | |
| ) | |
| ) | |
| **ANGELITO TRINIDAD, RONNIE PALOMO,** ) | |
| **HERMAN TEJADA, ESPERANZA DAVID,** ) | |
| **ANTONIO ALOVERA and UNITED STATES** ) | |
| **OF AMERICA,** ) | |
| ) | |
| Respondents. ) | |
| ) | |
| ) | |

**COMES NOW,** John S. Pangelinan, plaintiff *pro se* and hereinafter referred to as "Pangelinan", and opposes defendants Lillian A. Tenorio, Roy E. Alexander, Robert T. Torres and Rufo T. Mafnas, hereinafter collectively referred to as "State Actors" and individually referred by his or her last name, their Rule 12(b)(6) motion to dismiss them from this case, for reasons as follows:

## PANGELINAN SUFFICIENTLY STATES CLAIMS FOR RELIEF TO WITHSTANDING RULE 12(b)(6) MOTIONS

Pangelinan can only surmise that State Actors remotely have— that is, if they *indeed* have, any clue of what the *Bivens* action against them is all about, because, in reading their motions, they seem to be like cackling (*tumutugagak* in the vernacular) chickens running scared from the shock of the lawsuit and because they cannot absorb the terrifying gravity of the situation in which they find themselves. Pangelinan swears that it is a whole lot simpler to decipher shrieks of catastrophic predictions of the maiden of the *Delphi* oracle of old than to make sense of State Actors' cackles. This alone is reason why their motions should be dismissed or denied.

### A.
### Events Are Stated In the Complaint Showing State Action Directly Related To or In Connection With State Actors' Actions

Pangelinan sufficiently states in his Complaint *Bivens* claims for which relief can be granted (1) against Federal defendants and against state actors Tenorio and Alexander on the retaliatory criminal prosecution cause of action; (2) against federal defendants

Wiseman, Munson and Hall and against State Actors individually on the retaliatory denial of due process of law (of property); and, (3) against federal defendants Wiseman, Munson and Calvert and state actor Torres on retaliatory denial of due process of law of liberty and property— or "against private individuals, as state actors who at all relevant times substantially utilized the federal district court and federal offices and officials and acting in collusion, combination and collaboration therewith, in the commission by federal defendants of constitutional torts against Pangelinan." Introduction part of the Complaint. In other words, State Actors are not conspirators (as Tenorio and Torres claim Pangelinan alleges, nor is their law firm sued) but individually the four fingers of the federal hands that actually started, developed, did and completed the constitutional wrongs against Pangelinan.

In addition, "[t]he complaint in this case [i]s not defective for failure to allege that the private defendants were acting under color of [federal] law." Dennis v. Sparks, 449 U.S. 24, 28, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980)(just stating events showing private defendants as, and not even having to state the actual words, "state actors" or "acting under color of law" will suffice) (brackets are mine). "To act under color of law for purposes of civil rights statute [*Bivens* action] does not require that the defendant be an officer of the state. It is enough that he is a willful participant in joint action with the state or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting under color of law for purposes of the civil rights statute." *Id.* at 101 S.Ct. 183-184 (my brackets). 28 U.S.C. §1983 and *Bivens* action are given parallel application. See, Hartman v. Moore, 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441, 449-50, n.2 (2006). "State action", as it pertains to the Fifth Amendment, and "acting

under color of law" in a *Bivens* action are identical. See, Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Thus, Federal defendants' actions in this case being federal (state) action, and private (State Actors) defendants' actions in procuring or joining in, etc., the federal action are state action, and that makes them state actors.

## B.
### Pangelinan Shows Wrongs Are Constitutional Torts Actionable On Authority of *Bivens*

Pangelinan further shows that the torts are constitutional torts actionable on the authority of *Bivens*: Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Supreme Court has this to say about retaliations and chilling of First Amendment rights:

> Official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right," *Crawford-El v. Britton*, 523 U.S. 574, 588, n. 10, 118 S.Ct. 1584, 140 L. Ed. 2d 759 (1999), and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out, *id.*, at 592, 118 S.Ct. 1584, 140 L. Ed. 2d 759, *see also Perry v. Sinderman*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L. Ed. 2d 570 (1972)(noting that the government may not punish a person or deprive him of a benefit on the basis of his "constitutional protected speech"). Some official actions adverse to such a speaker might well be unexceptionable if taken on other grounds, but when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, we have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution. See *Crawford-El, supra*, at 593, 118 S.Ct. 1584, 140 L. Ed. 2d 759; *Mt. Healthy City Bd. Of Ed. V. Doyle*, 429 U.S. 274, 283-284, 97 S.Ct. 568, 50 L. Ed. 2d 471 (1977) (adverse action against government employee cannot be taken if it is in response to the employee's "exercise of constitutionally protected First

Amendment freedoms"). When the vengeful officer is federal, he is subject to an action for damages on the authority of *Bivens*. See 403 U.S., at 397, 91 S.Ct. 1999, 29 L. Ed. 2d 619.

Hartman v. Moore, 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441, 451 (2006). Thus, the above says it all for Pangelinan's retaliatory criminal prosecution cause of action. Pangelinan alleges that he was, "without probable cause, indicted, arrested, prosecuted, convicted and imprisoned [ ] under 18 U.S.C. §1509 solely in retaliation for his public criticism, in his published June 1, 2006, letter to editor, of Munson's judgment and Wiseman's order of sale, and for exercising his First Amendment right of free speech in the most fundamental way" and cites the Hartman case in particular as authority in his Complaint. *See*, Page 11 of the Complaint. Amazingly, as stated in the Complaint, the factual background that gave rise to the Hartman cause of action exactly parallels this case's retaliatory criminal prosecution claim—see, Ninth Circuit Court's decision in part C below. It is stated that Tenorio and Alexander are intrinsically part of the prosecution from the beginning to the end, alpha to omega.

On the retaliatory denial of due process of law (of property), Pangelinan in his Complaint alleges that it was directly because of his June 1 letter (Pangelinan stating in it that he will not yield the land to anyone "come typhoon, tsunami, volcanic eruption or the devil himself", etc.) that prompted (and this was just right before it was to be auctioned off to state actor Mafnas) the procurement by state actors Tenorio and Torres of the order (state actor and federal court agent-auctioneer Alexander testified at the hearing ) of this Court enjoining Pangelinan and his family to abandon his Papago land upon the execution and delivery of the deed to state actor Mafnas— a non-existent process in enforcement of judgment, thus Pangelinan's "retaliatory denial of due process of law"

claim. The correct procedure in a case like that, the forced-sale purchaser gets his deed, subject to all defects attendant to it, and proceeds to court in *another* case to obtain a "writ of ejectment"— the proper process with which to oust the wrongful occupant of the land, and possession of the land. In Pangelinan's case, Wiseman granted state actors Tenorio and Torres their request because this Court would not have had subject matter jurisdiction to grant the writ of ejectment because state actor Mafnas would have had to go to the CNMI superior court and not this Court— and he would have had to overcome objections and defects regarding his deed and to show his claim to the land as superior to that of Pangelinan in obtaining the writ of ejectment (Pangelinan testified, and this is stated in the Complaint, that he would not yield the Papago land if his claim to it was superior to that of the purchaser). ¶13, Complaint. It is *with Mafnas, and not plaintiffs there, in court* that is the due process right, too, that is denied Pangelinan.

The grant to state actors Tenorio and Torres their request by Wiseman was purely retaliatory against Pangelinan's letter to editor in order to show the whole world that he (Wiseman) would make good of the sale by delivery of Pangelinan's land sold at the sale regardless of procedural impropriety, for all would be for naught if the order was not granted. It can be inferred from the pleadings that Mafnas would not tender his purchase-money, which was tendered five months after the sale, until the restraining order was secured and the ousting order assured. Wiseman and state actors accomplished their objective by another order (albeit, again a non-existent writ) to the U.S. marshal (federal defendant Hall) to actually oust Pangelinan and his family, and the marshal actually succeeded in doing just that, who delivered possession to Alexander who in turn delivered it to Mafnas. Wiseman's orders, and the acts procuring and carrying them out

6

to completion, certainly had a chilling or inhibiting effect on Pangelinan's exercise of protected speech. This case is not about whether the sale is valid or not, or the deed to Mafnas is valid or not, or that its delivery to him is proper or not, or that the underlying judgment or Wiseman's orders are valid or not. It is about due process of law right being denied Pangelinan in the deprivation of his property in retaliation for his telling the whole world of not yielding his land to any purchaser "come typhoon, tsunami, volcanic eruption or the devil himself", etc.. All this are stated in the Complaint, and Tenorio, Alexander, Torres and Mafnas, acting in combination as four fingers of the federal hands, are intrinsically part of the whole picture of the constitutional wrong. The <u>Hartman</u> decision above is sufficient authority alone to bring this *Bivens* action against them.

If anything unequivocal about the right to due process of law in the Fifth Amendment to the U.S. Constitution is that no "person" shall "be deprived of life, liberty, or property, without due process of law." That is, in Pangelinan's case, proper processes had to be obtained and proper procedures had to be followed in the proper forum by the proper person before he could be deprived of his property. It is his constitutional right to insist these upon the Federal government and its officers. Pangelinan lists at least three Supreme Court decisions that imply a *Bivens* action when the wrong procedure or process is applied or implicated in the denial of due process right or property, *even when the underlying convictions were facially valid*: <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-88, 114 S.Ct. 2372, 129 L.Ed.2d 383 (1994)(*Bivens* action available for application of improper procedure); <u>Edwards v. Balisok</u>, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)(same); <u>Spencer v. Kemna</u>, 533 U.S 1, 118 S.Ct. 918, 140 L.Ed.2d 43, (1998)(same). <u>Bruns v. National Credit Union Admin.</u>, 122 F.3d 1251 (9th Cir. 1997)("In

Davis v. Passman, 442 U.S. 228, 242, 99 S.Ct. 2264, 2275, 60 L.Ed.2d 846 (1979), the Supreme Court held that federal officers could be sued for damages based on violations of the Fifth Amendment"), is more on point for a *Bivens* action. Thus, these cases in conjunction with Hartman above, and because Pangelinan was deprived of property too in the process, clearly more than establish that he was wronged in the constitutional proportion and has a *Bivens* action against the defendants, notwithstanding whether the underlying judgment is valid or not. This applies too to Pangelinan's third cause of action against state actor Torres in the Complaint, where "liberty and property" are involved and the underlying judgment is annulled. It is all the more a *Bivens* action if the Court was proceeding without subject matter jurisdiction, and the entire case being void, in Civil Action No. 97-0073.

## C.
### Pangelinan Here Summarizes Events Stated As Pertain State Actors In Relation to The Constitutional Torts Actionable On Authority of *Bivens*

"Treated as a Rule 12(b)(6) motion, the complaint should not [be] dismissed unless it appear[s] 'beyond doubt' that plaintiffs could prove no set of facts in support of their claim which would entitle them to relief. In reviewing the sufficiency of the complaint, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Emrich v. Touche Ross & Company, 846 F.2d 1190, 1198 (9th Cir. 1988)(internal citations omitted).

Pangelinan's retaliatory criminal prosecution claim factually culminates in: "Pangelinan appealed his conviction and on October 11, 2007, the U.S. Court of Appeals

8

for the Ninth Circuit reversed Pangelinan's count 1 conviction of obstruction of court order in _U.S.A. v. Pangelinan_, Doc. #07-10032. The Court stated: 'First, the evidence was insufficient to support Pangelinan's conviction under §1509 Count I. Pangelinan's June 1, 2006, letter contains no language which any rational trier of fact could reasonably find expressed or implied a threat of physical or unlawful harm to any person or property. We therefore REVERSE Pangelinan's conviction as to Count I.' Translation: Pangelinan committed absolutely no offense indictable or chargeable under 18 U.S.C. §1509 by publication of his letter to editor in the local newspapers." ¶22, Complaint. Its retaliatory genesis: "Pangelinan, on the June 2, 2006 issue of local newspapers, published his letter to editor telling the whole world that the Court's (Munson's) judgment and (Wiseman's) orders in the civil case were all void, that the sale would be void and would-be purchaser would be buying himself nothing but a lawsuit, and that he would not surrender the Papago land to any would-be purchaser 'come typhoon, tsunami, volcanic eruption or the devil himself.' He told too that anyone coming to the land claiming it would feel his 'wrath with a vengeance'. Pangelinan also told that he was incarcerated for more than eighteen months and that he was drafting 'a huge lawsuit' against those who injured or would injure him and in his property. Pangelinan (and his family) was living on the land at the time. Alexander was provided a copy of Pangelinan's letter to editor a day (June 1, 2006) prior to publication by Pangelinan himself, quietly and without any incident." ¶6, Complaint. It is stated that Tenorio obtained from Wiseman the March 8, 2006, authorizing the sale of the Papago Land, with Alexander appointed to conduct the sale. ¶5, Complaint. It is stated that Tenorio and Alexander discussed the letter and the sale, that Alexander filed with the Court a negative statement prepared by Tenorio regarding

9

these and Pangelinan's appearance at Alexander's office. ¶7, Complaint. It is stated that three weeks later, upon information and belief, Alexander testified before the Grand Jury on its investigation of the negative statement filed by him with Court and Pangelinan's appearance at his office, which resulted in the indictment of Pangelinan for "Count 1 obstruction of court [March 08, 2006] order solely on the basis on that published letter to editor under 18 U.S.C. §1509." ¶10, Complaint. It is stated that "Tenorio and two of Alexander's employees testified against Pangelinan" at Pangelinan's criminal trial. ¶16, Complaint. All this was done by Tenorio (prosecution's star witness) and Alexander in "collusion, combination and collaboration", etc., with federal defendants in the retaliatory criminal prosecution of Pangelinan. Introduction and Page 11, Complaint.

Pangelinan's retaliatory denial of due process of law (of property) claim factually culminates in: "On December 22, 2006, Alexander executed a deed to the Papago land and delivered it to Mafnas. In January, 2007, Hall, carrying out Wiseman's orders [a separate order issued to the U.S. Marshal to oust Pangelinan and his family] obtained by Tenorio and Torres, ejected Pangelinan's family (Pangelinan was already imprisoned at around this time) from the Papago land and delivered it to Alexander, who in turn delivered it to Mafnas." ¶19, Complaint. Its retaliatory genesis: Same as above for the criminal retaliatory prosecution. It is stated that Tenorio obtained Wiseman March 08, 2006, order authorizing the sale of Papago land and appointing Alexander to conduct the sale. ¶5, Complaint. It is stated that Tenorio and Torres came before Wiseman for their motion, prompted by Pangelinan's letter to editor, enjoining him from any contact with Alexander, who testified at that hearing, and to surrender the Papago land to the purchaser upon sale and delivery of deed to him, which was granted by Wiseman. ¶13 &

10

¶14, Complaint.  It is stated that soon after the injunction was obtained by Tenorio and Torres, Alexander conducted the sale at his office, that Tenorio was there, and that Mafnas was the successful bidder, all contrary to statute.  ¶15, Complaint.  All this was done "at the urging, participation, collaboration, involvement and combination of Tenorio, Torres, Alexander and Mafnas" with Wiseman and Munson and "through the office of federal judge, federal court, and the U.S. Marshal Service, by order [ ] illegally taken and delivered possession to Mafnas.  Page 12, Complaint.

## IF CLAIMS FOR RELIEF ARE NOT SUFFICIENTLY STATED PANGELINAN SHOULD BE GIVEN LEAVE TO AMEND COMPLAINT

For purposes only of stating a claim for which relief can be granted as it pertains to State Actors, *pro se* Pangelinan in the Complaint sufficiently states events, state action caused or procured by State Actors, the causes of action actionable on authority of *Bivens*, and the authorities that make them actionable as a *Bivens* action.  But if the Court finds an element or elements of a cause of action actionable on the authority of *Bivens* not stated in the Complaint, or if one of the alleged factual events stated by State Actors is needed to be stated in the Complaint, *pro se* Pangelinan begs this Court leave to amend his Complaint accordingly pursuant to Rule 15, Fed.R.Civ.P..   Or, otherwise allow *pro se* Pangelinan to proceed to discovery phase and to subsequently introduce them into evidence in support of his claims for the relief sought.   Nonetheless, however, Pangelinan's Complaint is sufficiently stated to pass muster a Rule 12(b)(6), Fed.R.Civ.P., motion to dismiss.

11

State Actors seem to be making a closing argument, rather than a Rule 12(b)(6) argument, and amazingly state factual events as if they already have been introduced into evidence, which in all respects work against them and support Pangelinan's claims for the relief he seeks. State Actors in their motions provide, against them and *for* Pangelinan, a rich ore to mine of factual events that *supplement* Pangelinan's claims of retaliatory criminal prosecution, retaliatory denial of due process of law (of property), and retaliatory denial of due process of law, of liberty and or property. In addition, State Actors argue in part the case *for* Pangelinan and bury themselves in the process, and on the remainder argument they make legal conclusions that have nothing to do with the *Bivens* action against them— in a part thereof, State Actors seem to be dismally arguing for the prosecution (who far better argued) this Court's criminal case <u>U.S.A. v. Pangelinan</u>, Criminal Action No. 06-00012, flying in the face of the U.S. Court of Appeals for the Ninth Circuit's contrary decision on October 11, 2007, in that Court's Docket No. 07-10032. <u>See</u>, ¶22 of the Complaint. Pangelinan wonders if he could use their alleged factual events, without the need for discovery, to determine liability on their part in a subsequent motion by him for partial summary judgment pursuant to Rule 56(a), Fed.R.Civ.P., against State Actors. In this respect, Pangelinan has nothing but thanks to convey to State Actors for them making the case for him and against themselves.

And, for what its worth, Pangelinan paid (albeit, overpaid— Pangelinan was incarcerated longer by four months than allowed by 18 U.S.C. §1509) dearly for his Count 2 conviction on his June 19, 2006, letter to editor, and he is still paying for it. But 18 U.S.C. §1509 does not *per se* criminalize Pangelinan's letter and it is still protected speech— now that the sale is over and the court order is fully executed, Pangelinan can

publish exactly the same letter today without any criminal recrimination. This is to say that State Actors were *not* given the green light, even if it was based on that letter alone, to proceed with impunity to obtain the retaliatory orders from Wiseman in regards to the Papago land— and in other words, State Actors had no right to "whip" Pangelinan just because Pangelinan got whipped by the Federal government. Wiseman's orders and Pangelinan's (and his family) ousting from the said land are *still* retaliatory, and this is especially so when combined with the June 1, 2006, letter to editor. And, Pangelinan's obtainment of the writ of *coram nobis* or the declaratory judgment relief of vacatur, nullification and dismissal of his Count 2 conviction will make it *absolutely* retaliatory.

### CONCLUSION

Based on the foregoing and above reasons, State Actors' Rule 12(b)(6), Fed.R.Civ.P., motion to dismiss them from the case should and must be denied.

Dated this 26th day of February, 2008.

John S. Pangelinan
Plaintiff, *pro se*

P.O. Box 501721
Saipan, MP 96950

Tel. No. (670) 322-0322

13