**JOHN S. PANGELINAN**
P.O. Box 501721
Saipan, MP 96950

Telephone No. (670) 322-0322

Pro se

F I L E D
Clerk
District Court

APR − 7 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **JOHN S. PANGELINAN** ) | **Civil Action No. 08-0004** |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| **v.** ) | |
| ) | |
| ) | |
| ) | |
| **DAVID A. WISEMAN, ALEX R. MUNSON,** ) | **OPPOSITION TO INDI-** |
| **CRAIG N. MOORE, MARGARITA D.L.G.** ) | **VIDUAL FEDERAL DE-** |
| **WONENBERG, MELINDA N. BRUNSON,** ) | **FENDANTS' RULE 12** |
| **JOSEPH AUTHER, DONALD HALL, WOLF** ) | **(b) MOTION TO DIS-** |
| **CALVERT, GRAND JURORS 1 Thru 23,** ) | **MISS WITHOUT** |
| **JURORS 1 Thru 12, ROY E. ALEXANDER** ) | **LEAVE TO AMEND** |
| **ROBERT T. TORRES, LILLIAN A. TENORIO** ) | |
| **and RUFO T. MAFNAS** ) | |
| ) | |
| Defendants, ) | |
| ) | |
| ) | |
| ) | |
| **ANGELITO TRINIDAD, RONNIE PALOMO,** ) | |
| **HERMAN TEJADA, ESPERANZA DAVID,** ) | |
| **ANTONIO ALOVERA and UNITED STATES** ) | |
| **OF AMERICA,** ) | Date:  May 7, 2008 |
| ) | Time:  9:00 a.m. |
| Respondents. ) | Judge: Tydingco-Gatewood |
| ) | |

**COMES NOW,** John S. Pangelinan, plaintiff and hereinafter referred to as "Pangelinan", and opposes the various Rule 12(b), Fed.R.Civ.P., motion to dismiss without leave to amend of defendants David A. Wiseman, Alex R. Munson, Craig N. Moore, Margarita, D.L.G. Wonenberg, Melinda N. Brunson, Joseph Auther, Donald Hall and Wolf Calvert, hereinafter collectively referred to as "Federal Defendants, as follows:

## PANGELINAN OBJECTS TO SITTING JUDGE'S APPOINTMENT TO PRESIDE OVER CASE IF SITTING JUDGE'S APPOINTMENT IS IMPROPER

Chief Judge Alex R. Munson, a defendant in this case, appointed U.S. District Court of Guam Judge Frances M. Tydingco-Gatewood, and cited 48 U.S.C. §1821(b)(2) as his authority to appoint, to preside over this here case "for all purposes". See, Order of February 20, 2008, Filed February 25, 2008. However, a cursory look at the statute shows no authority in the chief judge of the U.S. District Court for the Northern Mariana Islands to appoint a district judge of the U.S. District Court of Guam to sit as a judge in the U.S. District Court for the Northern Mariana Islands— this authority resides exclusively in the chief judge of the U.S. Court of Appeals for the Ninth Circuit under the said statute. If Judge Tydingco-Gatewood's appointment is improper to sit as this court's judge in this case under the said statute, then Pangelinan objects, and therefore her appointment is invalid, and all orders already issued by her are all invalid, as she acted on them without authority. See, Freytag v. Commissioner, 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764, 791 (1991)(Scalia, J., dissenting)("judge's express intention   to disregard a structural limitation upon his power cannot have any *legitimating* effect— i.e., cannot render that disregard *lawful*. Even if both litigants not only agree to, but themselves propose, such a course, the judge must tell them no"). Pangelinan, however,

2

concedes that if Judge Tydingco-Gatewood is a presidential-appointed district judge of the U.S. District Court of Guam and has been appointed as a temporary judge, as with superior court judges David A. Wiseman and Juan T. Lizama, of this court pursuant to the said statute by the chief judge of the U.S. Court of Appeal for the Ninth Circuit, then her appointment is in accord with the statute, for Judge Munson's appointment of her could be deemed as simply a ministerial or an administrative act on his part.

Pangelinan has doubts, however, on whether the chief judge of the U.S. Court of Appeals for the Ninth Circuit has authority to appoint *temporary* judges pursuant to 48 U.S.C.§1821(b)(2), as it appears to be unconstitutional under Article II, §2, Clause 2 of the U.S. Constitution in light of 28 U.S.C. §1821(b)(1)— the clause says that if appointment power is vested in the President then it must be vested "in the President alone". But does it apply to temporary assignments? If it does, that means then that, if Judge Tydingco-Gatewood's appointment was made under the said statute by the chief judge of the circuit court, the appointment is invalid. And, if Judge Munson has statutory authority to make such an appointment as he did, it is doubtful whether it is constitutional for the reasons just-mentioned— and, if he has no statutory authority then his appointment is unquestionably invalid. Moreover, District Judge Tydingco-Gatewood is co-equal, if co-equal, and is not inferior to Judge Munson— while he is a chief judge, he is only first among equals, and so Judge Munson was not making an "inferior Officer" appointment. Again, if this is the case, then Judge Munson's appointment of her to this court is invalid. Extra consideration must be given that both are Article I judges of different courts, and are not Article III judges— both judges' authority can *only* be derived from Congress, and not from the Constitution, and *only* from the organic acts of

3

their respective courts, or statutes relating to the acts. Pangelinan, to the extent of these doubts, objects to her appointment.

But then again, Pangelinan objects even if it is deemed ministerial or administrative, or even if somehow there is valid statutory authority for the chief judge of the U.S. District Court for the Northern Mariana Islands to make such an appointment, or even if Pangelinan is wrong on his doubts above, because Chief Judge Alex R. Munson is a defendant, facing potentially a huge liability, and his appointing decision is inescapably bias, and Judge Tydingco-Gatewood's appointment is suspect or bias, and contrary to the Due Process Clause of the Fifth Amendment to the U.S. Constitution, and that therefore all orders of Judge Tydingco-Gatewood are void. See, Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813, 89 L.Ed.2d 823, 106 S.Ct. 1580 (1986)("Court... reached a similar conclusion and recognized that under the Due Process Clause no judge can be a judge in his own case or be permitted to cases where he has an interest in the outcome"); United States v. Berke, 170 F.3 882 (9th Cir. 1999)("A final judgment is 'void' for purposes of rule governing relief from judgment only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted inconsistent with due process of law"); Watts v. Pinckney, 752 F.2d 406, 409 (9th Cir. 1985)("It is well settled that a judgment is void 'if the court that considered it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process of law")(underlines mine). Pangelinan does not impugn the integrity of Judge Tydingco-Gatewood, but her appointment by Chief Judge Munson is even more suspect or bias in this case as she was appointed on February 20, 2008, five days before Judge Juan T. Lizama recused himself from the case on February 25, 2008— same date

Judge Tydigco-Gatewood's appointment was filed. District court proceeded inconsistent with due process of law when Chief Judge Munson appointed Judge Tydingco-Gatewood, and the appointment being void, all Judge Tydingco-Gatewood's orders in this case are void too. See also, Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 100 L.Ed.2d 855, 108 S.Ct. 2194 (1988).

Since Judge Tydingco-Gatewood's order of March 25, 2008, which was filed on March 26, 2008, is void, Federal defendants' attorneys are not admitted to practice in this district. And, Federal defendants did not make an "appearance" in this court by their filings, through their attorneys, of their request for admission and of Rule 12(b) motion to dismiss, and they (request for admission and motion to dismiss) should be stricken from the record, and their attorneys, invalidly admitted to practice, should not be permitted to speak at the scheduled hearing. Federal defendants, therefore, failing to timely appear or file an answer or a responsive pleading before the March 28, 2008, dateline, are now technically all in default, and Pangelinan is entitled to an entry of default and default judgment against Federal defendants. This is especially applicable to Judge Munson for he should not be allowed to profit from his biased appointment but must be made to accept the consequences that comes with it (he knows the drill)— he defaulted and default judgment should be entered against him, especially.

If for some reason, Federal defendants' attorneys' filings are deemed as "appearance" in behalf of Federal defendants, Pangelinan objects to the filing of their request for admission to practice and to represent Federal defendants for they are U.S. Department of Justice lawyers from Washington, D.C., and are not authorized to represent individuals, even if the individuals are federal government employees and were

acting within the scope of their employment, except but for one two-part exception only. Said attorneys can make an appearance for Federal Defendants only (1) if the U.S. Attorney General, or whoever he ultimately delegated the authority to, pursuant to and under the authority of the Federal Employees Liability Reform and Tort Compensation Act, or 28 U.S.C. §2679(c)&(d)(1), certified Federal defendants as acting within the scope of their federal employment when they committed the acts giving rise to the claimed causes of action, and, only (2) if they substituted the United States of America for Federal defendants under the said Act, which in essence are representing the United States of America rather than Federal defendants. Other than this, said attorneys have no authority to speak or appear for Federal defendants. And, if this is the case, again, Federal defendants failed to timely appear and file their responsive pleadings and are now in default and Pangelinan is entitled to default judgment. It is important to note that Federal defendants here have not been certified by the U.S. Attorney General, or delegate, under 28 U.S.C. §2679(c)&(d)(1), which should be of their paramount concern. And, because Federal defendants are each appearing in his or her individual capacity answering claims for damages, even if validly represented by U.S. Department of Justice attorneys but them not substituted by United States of America— it not being an interested party in this case, have filed their responsive pleading way after the dateline they should have filed. They are not entitled to file their responsive pleading under Rule 12(a)(3)(B), Fed.R.Civ.P., when appearing as they appear here, appearing just like in any ordinary case against a private individual—and Justice attorneys' representation here is no different from that of a private attorney. See, part VI., page 19 of this Objection. Hence, Federal defendants have defaulted and Pangelinan is entitled to default judgment.

Judge Tydinco-Gatewood is respectfully requested to seriously consider and to dwell deeply on whether she is vested with authority, as things are now, to preside over this case in this court, for there are possible ramifications.  For if she is not vested with authority, although *this court* is vested with subject matter jurisdiction over this case, and her performing a judicial function or acts of judicial nature, she is nevertheless, with all due respect,  just a person who is not a judge in *this court*, a stranger if you will.  And, she has no immunity whatsoever, *if she has no authority to preside over this case in this court.*  This is the reason too, that if Federal defendants make any claim to immunity, that the claimed immunity is derivative from judges in this case who never had jurisdiction and that they are all thus not immune to this lawsuit— and, as pointed out elsewhere, any claimed immunity which is derivative *from this court* in another case, it not having jurisdiction too over the subject matter in that case, that they (Federal defendants) too, whom are claiming such immunity, are absolutely without absolute judicial immunity. Pangelinan realizes that a jurisdictional paralysis in this court appears to be taking hold, but as the Supreme Court has said: "Federal courts must determine that they have jurisdiction before proceeding to the merits." Lance v. Coffman, 167 L.Ed.2d 29 (2007).

Lastly, if Judge Tydingco-Gatewood is sitting as Judge of the U.S. District Court of Guam in this court in this case, and not as a temporary judge here, then Pangelinan objects again as venue of this case is not in the U.S. District Court of Guam but in the U.S. District Court for the Northern Mariana Islands and she must recuse herself from this case. And, for that matter and in order to remove any appearance of impropriety, and with all due respect, Pangelinan objects to any tele-conference, tele-hearing and tele-anything but her actual presence in the U.S. District Court for the Northern Mariana

Islands at every hearings, and her at every such hearings not sitting as Judge of the U.S. District Court of Guam but as a properly authorized judge of the U.S. District Court for the Northern Mariana Islands to sit in the case in this court, First Floor, Horiguchi Building, Garapan, Saipan, Commonwealth of the Northern Mariana Islands.

## PANGELINAN REPONDS TO FEDERAL DEFENDANTS' BASES FOR THEIR MOTION

### I.    No Claims Are Time-Barred.

Pangelinan files an independent action for his injuries permissible under Rule 60(b)(4), Fed.R.Civ.P., seeking in part declaratory judgment and relief of vacatur, nullification and dismissal of this court's cases Trinidad, et al. v. Pangelinan, et al., Civil Action No. 97-0073, and, of USA v. Pangelinan, Criminal Action No.s 02-00016, 04-00015 & 06-00012, under 28 U.S.C. §2201 & §2202, the Declaratory Judgment Act, and for writs of *coram nobis* under 28 U.S.C. §1651, the All Writs Act, for vacatur, nullification and dismissal of the criminal cases, in aid of this court's jurisdiction. Pangelinan having established that he has a "controversy" against defendants, not barred by any statute of limitations, seeks relief under the Declaratory Judgment Act because all of the just-mentioned cases are void and remediable, and the sought remedy is not time-barred. In re Center Wholesale, 759 F.2d 1440, 1447 (9th Cir. 1985)("[A] void judgment cannot acquire validity because of laches." ); Hertz Corp. v. Alamo Rent-A-Car, Inc., 16 F.3d 1126, 1130-31 (11th Cir. 1994)(same); O'Rourke Bros., Inc. v. Nesbitt Burns, Inc., 201 F.3d 948 (7th Cir. 2000); 18 Moore's Federal Practice, §131.30 [1][a] (Matthew Bender 3d ed.)("A judgment that is void (*i.e.*, a judicial nullity) is subject to collateral attack at any time and in any proceeding). Pangelinan seeks in part against respondents

the *remedy* of vacatur, nullification and dismissal of the afore-mentioned cases, as opposed to the case or controversy Pangelinan has against the defendants.

Furthermore, statute of limitations begins of run when the cause of action arises and not necessarily when the injuries were caused. This is especially the case for Pangelinan's third cause of action. Heck v. Humphrey, 512 U.S. 477, 486-89, 114 S.Ct. 2372, 129 L.Ed.2d 383 (1994)("[A] §1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated"): Martin v. Sias, 88 F.3d 774, 775 (9th Cir. 1996)("[T]he court has stated that '[a]ctions under §1983 and those under *Bivens* are indentical save for replacement of a state actor under §1983 by a federal actor under *Bivens*"). Pangelinan's claimed injuries are stated as the measure and extent of the damages inflicted upon him after having established that he has a cause of action against the wrong-doer defendants. In addition, said defendants are equitably estopped from asserting the statute of limitations for their continued retaliatory actions as stated in the Complaint—the doctrine of equitable estoppel applies with full force to them here. Furthermore, as all stated in the Compliant, Pangelinan has been very diligent in having the above-mentioned civil and criminal cases annulled by his four and other prior submissions of habeas Sec.2255 motions while he was in prison but were all blocked by Wiseman himself in order to deny Pangelinan the said annulment—the case, is now pending in the U.S. Court of Appeals for the Ninth Circuit, Doc. No. 07-17395, and therefore what bar period asserted is tolled by the equitable tolling doctrine for the period Pangelinan began his diligent efforts.

Federal defendants' claimed matters here that are time-barred, however, are not the sort that the statutes of limitations bar. The Northern Mariana Islands' statutes of

limitations, which Federal defendants assert as applicable here, require that an action must be commenced within the prescribed period only when the cause of action has arisen and from the date it arose. All causes of action here asserted by Pangelinan are all commenced within the period of two years from the date each cause of action arose.

**II.      Pangelinan's Causes of Action Are Valid.**

Federal defendants attack here only the retaliatory criminal prosecution, and not the retaliatory denial of due process of law (of property), cause of action. Dismissal of the action cannot be made here on this basis alone, even if Federal defendants are correct in their assertions. In addition, Pangelinan incorporates here as if herein stated all his objections to individual private defendants' motion to dismiss regarding their claims of Pangelinan's failure to state a claim, which refute their claims and show that Pangelinan properly stated his claims of retaliation and for relief.

But even if Pangelinan's claims of retaliation fails, Pangelinan's injuries of wrongful deprivation of liberty (arrest and imprisonment) and property (his Papago and Garapan lands) occurred, all are stated in the Complaint, and all are constitutional rights and proper subjects of a *Bivens* action claims; all caused by the wrongful acts of the defendants, and, all are remediable by award of damages. Bigio v. Coca-Cola Co., 235 F.3d 63 (2nd Cir. 2000) ("'[G]enerally a complaint that gives full notice of the circumstances giving rise to plaintiff's claim for relief need *not* also correctly plead the legal theory or theories ...supporting the claim.' (quoting *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 712 n.4 (2nd Cir. 1980)")(italics mine); Collins v. City of Harker Heights, Tex., 503 U.S. 115, 112 S.Ct. 1061-62, 117 L.Ed.2d 261 (1992)("First Amendment, equal protection and due process clauses of the Fourteenth Amendment and other

10

provisions of Federal Constitution afford protection to [citizens...], and §1983 provides cause of action for all citizens injured by *abridgement* of those protection")(italics mine)(see S.Ct. 1069, n.10, regarding *deliberate* conduct of government officials).

Nevertheless, Pangelinan sufficiently states his retaliatory claims in the Complaint and Federal defendants' observations or conclusions are wrong. Pangelinan provides a brief but not all-inclusive of claims of retaliatory criminal prosecution, as pertain to Federal defendants' stated Pangelinan's failure to state, showing that at least the claimed cause of action is sufficiently stated: Pangelinan states that Wiseman issued the order of sale of Papago land on March 8, 2006, and appointed Roy E. Alexander as auctioneer, and Alexander set June 2, 2006, as the sale date. ¶5, Complaint. Pangelinan further states that on June 2, 2006, issue of local newspapers he published his letter to editor criticizing Munson's judgment and Wiseman's orders, and among other things, told that anyone coming to his land making a claim will feel his "wrath with a vengeance", and that he provided Alexander a copy of the letter himself the day before "*quietly and without incident*" ¶6, Complaint. Pangelinan further states that about three weeks later after his letter to editor was published, "*if not earlier*", Moore convened the Grand jury to indict him, and he was indicted, "for count 1 obstruction of court order *solely* on the basis of that published letter to editor under 18 U.S.C. §1509. ¶10, Complaint. Pangelinan further states that Munson issued a warrant of arrest upon indictment and Auther arrested Pangelinan on Monday, June 26, 2006. ¶12, Complaint. Pangelinan further states that the U.S. Court of Appeals for the Ninth Circuit reverse his conviction under §1509 Count 1, stating that "Pangelinan's June 1, 2006, letter contains no language which any rational trier of fact could reasonably find expressed or implied a threat of physical or unlawful

11

harm to any person or property", and he further states that the court's statement translates into there was nothing in the letter showing Pangelinan committed an "offense indictable or chargeable under the said section of the law". ¶22, Complaint.  Pangelinan further states that he was indicted, arrested, convicted and imprisoned for *count one* of obstruction of court order in violation of 18 U.S.C. §1509 *solely* on the basis of his published letter. Page 11, Complaint.

Pangelinan, by the statements above, sufficiently states that there was no probable cause to *charge* him for Count 1 violation of 18 U.S.C. §1509, because the letter by which alone he was indicted for Count 1 contained "no language which any rational trier of fact [and any person] could reasonably find expressed or implied a threat of physical or unlawful harm to *any* person or property" with which to charge him.  Pangelinan was arrested by issuance and execution of the warrant of arrest which issued solely because of the indictment, and not because defendant Auther had been investigating Pangelinan and that he procured the warrant of arrest pursuant to the Fourth Amendment to the U.S. Constitution.  Defendant Moore convened the Grand Jury's investigation only after Pangelinan's June 1 letter was published, and as could be inferred from the statements above and from the record, the indictment issued (June 21, 2006) just two days after Pangelinan's second letter was published (June 19, 2006) giving rise to Count 2 of the indictment— Count 2 was just incidental to the Grand Jury's investigation and its inclusion in the indictment was just an afterthought, and is highly probable that Grand Jury voted to indict on the day the June 19 letter was published, taking into consideration the time the indicting papers and work needed to be done took.  Pangelinan was *simultaneously*, both for Counts 1 and 2 of the indictment, indicted, arrested, tried,

convicted and imprisoned, and Federal defendants cannot bootstrap Count 2 probable cause with Count 1 no-probable cause.  Pangelinan decouples the cause of action which arose from Pangelinan's retaliatory criminal prosecution of Count 1 from Count 2 which arose none— not just yet but until the said case is nullified, as prayed in the Complaint. Pangelinan properly states his non-probable cause claim and now it is up to the trier of fact to decide the issue based on the evidence Pangelinan will introduce. See, Hartman v. Moore, 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441, 449, 451 n.5 (2006).

But the state of substantive law existing at the time, too, established that there was no probable cause to investigate and charge Pangelinan for count 1 *and* count 2 violations of 18 U.S.C.§1509, even if the *evidence* was very, very strong against Pangelinan, or as in this case conclusively found by the jury for count 2, because the said statute does not apply to Pangelinan who was "party" to the obstructed court order.  *In Re: Amalgamated Meat Cutters & Butcher W. Etc.*, 402 F. Supp. 725 (1975)(18 U.S.C. §1509 is not applicable to "parties and privies").  This is substantive law, notwithstanding any vested authority or procedural right residing in the grand jury to investigate and indict. Pangelinan stated this too in the complaint: "all this was tried in this Court not having jurisdiction under 18 U.S.C. §3231", and "Pangelinan also combined with the Section 2255 motion a pleading and prayer for relief a declaratory judgment and relief under 28 U.S.C. §§2201 & 2202 and petition for writs of *coram nobis*, on all the cases (the civil *Trinidad, et al.* case and the criminal cases)", and "On the obstruction of Court order conviction in violation of 18 U.S.C. §1509, the statute does not even apply to 'parties and privies' pursuant to *In Re: Amalgamated Meat Cutters & Butcher W. Etc.*, 402 F. Supp. 725 (1975), and therefore the conviction is doubly void, as Pangelinan was a party to the

13

order, for lack of subject matter jurisdiction in the Article III sense of the U.S. Constitution". Page 11, ¶35, & Page 23, Complaint.

**III.    Subject Matter Jurisdiction Is Not Implicated.**

As noted above, the retaliatory criminal prosecution cause of action is *only* for the Count 1 conviction which the Ninth Circuit Court reversed, and this court should take judicial notice that on October 19, 2007, it entered, pursuant to the judgment of the appellate court, an amended judgment and sentence striking from it Count 1 conviction. Jurisdiction is vested in this court in this case, at least over the retaliatory denial of due process of law (of property) claim which has nothing to do with conviction.

Nevertheless, Pangelinan proceeds to respond here for his third cause of action, which arises when Criminal Case No. 04-00015 is nullified as prayed in the Complaint. Steel Company v. Citizens for a Better Environment, 118 S.Ct. 1003, 523 U.S. 83, 140 L.Ed.2d 210 (1998), says that subject matter jurisdiction of a federal court is not implicated when there is no cause of action. Federal defendants cite Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2372, 129 L.Ed.2d 383 (1994), as authority implicating this court's subject matter jurisdiction. However, that case says nothing of jurisdiction. Rather, it talks of no §1983 (*Bivens*) cause of action arising "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus"— it is interesting that the Supreme Court made no discussion about jurisdiction while it was denying that a cause of action arose. See, Heck at 114 S.Ct. 2373. "The better view, then is that a former prisoner, no longer 'in custody,' may bring a §1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be

impossible as a matter of law for him to satisfy." Spencer v. Kemna, 533 U.S. 1, 118 S.Ct. 978, 990, 140 L.Ed.2d 43 (1998) (Souter, J, concurring). Thus, an independent action by a released prisoner is not totally foreclosed by Heck and a cause of action arises for Pangelinan for damages upon annulment of Criminal Action No. 04-00015 not covered by Pangelinan's retaliatory criminal prosecution. Likewise, nullification of Criminal Action No. 06-00012 will make Pangelinan criminal retaliatory prosecution all the more actionable. And, as stated in the Complaint, there is, too, a pending habeas Sec. 2255 motion in the Ninth Circuit Court which a remand of that case would nullify the said criminal cases... this goes too to the civil action that Pangelinan prays in the Complaint to be annulled, which will more than satisfy Heck's requirement. Lastly, the criminal case may be invalidated by writ of *Coram Nobis* under 28 U.S.C. §1651, All Writ Act, as in this case here, making *all* the criminal cases actionable.

### IV. & V.A.    District Court Was Completely Without Subject Matter Jurisdiction.

District court was in clear absence of subject matter jurisdiction in Trinidad, et al. v. Pangelinan, et al., Civil Action No. 97-0073, and USA v. Pangelinan, Criminal Actions No.s 02-00016, 04-00015, & 06-00012, depriving Federal defendants of absolute judicial immunity. For the civil case, Pangelinan states in the Complaint that on June 5, 2000, issued his amended Findings of Fact and Conclusions of Law finding for the plaintiffs that Pangelinan was liable to them for his violation of the RICO statute, mail and wire fraud the underlying racketeering activity, and for common law fraud., stating that the essence of the fraud found by Munson was that the plaintiffs there were "owed wages by their employer Papa's, Ltd., and were not able to get paid by the corporation its debts owed them because Pangelinan caused all the assets of the corporation transferred to him

15

in payment of the debts owed him too by the corporation—albeit, Pangelinan under paid, and thereby judgment-proofed the Papa's, Ltd.." ¶25, Complaint. Pangelinan further states that the court was without personal jurisdiction over the Pangelinans in the civil case because the long arm statute of the Northern Mariana Islands is invalid, and other personal jurisdiction reasons. ¶23 & ¶24, Complaint. Pangelinan cites authorities on point showing the invalidity of case for lack of threshold Article III of the Constitution subject matter jurisdiction.

For the criminal cases, Pangelinan states that the first two criminal contempt cases emanated from the above-mentioned civil case for disobedience of orders issued therefrom. ¶26-¶31, Complaint. Pangelinan further states that his conviction for violation of 18 U.S.C. §1509 came about from another which emanated too from the same civil case and states what he has done to have it nullified. ¶32-¶41, Complaint. Pangelinan cites authorities of the cases invalidity— he even states his obstruction of court order conviction is doubly void, which all go to this court's lack of threshold subject matter jurisdiction in the Article III sense of the Constitution.

For all these reasons, Pangelinan cites and prays for declaratory judgment and relief under 28 U.S.C. §2201 & §2202 for the civil case, and, for declaratory judgment for the criminal cases under 28 U.S.C. §2201 and relief under 28 U.S.C. §1651, for writ of *coram nobis*, and for declaratory relief under 28 U.S.C. §2202, all for the vacatur, nullification and dismissal of the civil and criminal cases. Pangelinan claims are well stated and that, prior to the hearing of Federal defendants' motion too dismiss, he will move this court for declaratory judgment pursuant to Rule 56(a), Fed.R.Civ.P., for declaration that Federal defendants are without absolute judicial immunity and for the

16

cases invalidity and for relief of vacatur, nullification and dismissal of the said civil and criminal cases.  This issue should at least wait until Pangelinan's motion is heard.

Further, Pangelinan asserts here that Federal defendant Wiseman's appointment as a temporary judge to this court is invalid, because he is an appointee of Ninth Circuit Court's chief judge, whose appointment power under 48 U.S.C. §1821(b)(2) is in question and is contrary to Article II, §2, Clause 2 of the Constitution as noted above. Wiseman's appointment as temporary judge to this court being invalid, he sat and sits on the bench as simply an ordinary person not a judge of this court.  And, just like Pangelinan, he has no immunity and all his (Wiseman) decisions on the other cases related to this case are null and void.  And, for everything he did in thwarting attempts to have the cases annulled as complained, he is estopped from claiming judicial immunity.

Furthermore, even if this court had jurisdiction to proceed with the criminal case, Federal defendants Munson's alleged demand "that criminal charges be brought against Pangelinan for what he stated in the published letter" and Moore's and Auther's involvement and role in the *investigation* which let to, and the procurement of, the indictment and arrest of Pangelinan can hardly be said a judicial function or an act of judicial nature for absolute judicial immunity to attach to them, especially when there was no probable cause to even *begin* the investigation.   ¶9 & ¶10, Complaint. Investigating a crime is not initiating a prosecution, it is initiated only after an arrest is made for there is nothing to prosecute where no arrest has been made.  Likewise for Wiseman, by him issuing orders as stated in the complaint is implicated that he could have made the call instead of Munson, or both did.  ¶8 & ¶11, Complaint.  As for Federal defendant Brunson, she was not performing a judicial function or an act of a judicial

17

nature, but a discretionary act when she *petitioned* the court for Pangelinan's arrest, revocation of his supervised release, and his imprisonment. ¶54, Complaint.

None of the above acts or conduct comes under any of the authorities Federal defendants cite for absolute judicial immunity to shield them from liability. They cite Sanders v. City & County of San Francisco, 226 F. App'x 687 (9ᵗʰ Cir. 2007) (unpublished), but this is not citable pursuant FRAP 32.1(b) as Pangelinan is not provided a copy and he cannot avail himself a copy for he cannot access it in the electronic database, if it is in the database. Nevertheless, Pangelinan believes "that a prosecutor's decision to convene a grand jury, and indict [plaintiffs], is an activity subject to absolute immunity, even if done while lacking probable cause", if true, extends only to cases where an arrest was made *not* based on a grand jury's indictment, and is not applicable to this case because the arrest here was based on an indictment. Regardless, Munson's alleged demand that Pangelinan be charged and Auther's involvement in the investigation and procurement of the indictment are not covered by this authority. Federal defendants' citing of "Hartman, 547 U.S. at 250 (prosecutors have absolute immunity from retaliatory prosecution claims)" says nothing of the sort. Federal judicial officers, including judges, and prosecutors do not have blanket judicial immunity just because of their office, and when their acts or conduct are not of a "judicial" function or nature they have no such immunity. Mireles v. Waco, 502 U.S. 9, 11 (1991). This goes too to the non-judge, non-judicial officer, non-prosecutor Federal defendants.

**V.B.    Constitutional Rights Violated Are Clearly Established.**

First, claim of qualified immunity extends only, as Federal defendants assert, to "discretionary functions" of government officers and "conduct [which] does not violate

clearly established [ ] constitutional rights of which reasonable persons would have known." None of what Federal defendants say are discretionary functions performed that would entitle them to qualify immunity— they were all carrying out, albeit invalid, orders that they had to do as part of their job. Rather, the discretionary function of defendant Auther is whether he initiated criminal investigation after Pangelinan published his June 1 letter to editor and urged for an indictment, arrest and prosecution of Pangelinan. Again, Pangelinan states that 'upon information and belief, Munson, through intermediaries, demanded that criminal charges be brought against Pangelinan for what he stated in the published letter", implicating defendant Auther as the intermediary here, and that when the Grand Jury was convened by Moore, "Auther testified before it". ¶9 & ¶10, Complaint. Pangelinan must be allowed to proceed to discovery of this matter if it is indeed a fact. See, Hartman v. Moore, 164 L.Ed.2d 441, 451, n.5 (2006).

Regardless, however, whether it is a fact or not on the part of defendant Auther, whoever the discretion resided in when the criminal investigation began, would reasonably know, basing it solely on the published June 1 letter to editor as evidence to Count 1 of a criminal prosecution, that to criminally have Pangelinan indicted, arrested, prosecuted and imprisoned on that sole basis is without probable cause and, worse, completely insufficient for a conviction, and which could only have a resultant chilling effect of Pangelinan's freedom of speech right. Hartman v. Moore, 547 U.S. 250, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006), was handed down by the Supreme Court two months before Pangelinan was arrested on June 26, 2006, which up to the time simply restated what was since the adoption of the First Amendment a clearly established right. Again, and as said elsewhere above, Pangelinan, for purposes of no-probable cause, states

and translates the Ninth Circuit Court's decision as non-indictable and non-chargeable against Pangelinan for his June 1 letter as there was no probable cause. ¶22, Complaint.

## VI.    Process Service Is Sufficient.

This is a *Bievns* action against Federal defendants in their individual capacity for the remedy of damages to be imposed against them only, and not as officers or employees for a remedy of performing an official act or employment duty to which United States of America may be said is an interested party. The rules cited by Federal defendants do not apply to this case— nothing there says that in every case against a federal employee when sued, that the U.S. attorney general must be served, for it will not apply too to tort-related diverse action between a federal employee and a private party for damages. In addition to Pangelinan's objection to the representation of Federal defendants by the present representing attorneys above, the only reason that Federal defendants are being represented by the U.S. Justice Department is that they submitted the summons and complaint properly served them under 28 U.S.C. §2976(c) to the department for substitution by United States of America under §2976(b)(1), and the department elected to represent them. If Federal defendants had not done this they would not have asked that the U.S. Attorney General be served too. How was Pangelinan to know that they would be forwarding the summons and complaint to the department and that it would certify them under the statute?    Since no certification that Federal defendants were "acting within the scope of [their] office or employment at the time of the incident out of which the claim[s] arise", United States of America is not substituted for Federal defendants and, therefore, it is not an interested party to this case and is all the reason that Federal defendants are properly served. See, 28 U.S.C. §2679(b)(1).

20

**VII.    Pangelinan's Claims Are Properly Stated.**

Pangelinan stated above that he will be filing and serving a motion for declaratory judgment pursuant to Rule 56(a), Fed.R.Civ.P., which will show Federal defendants' lack of absolute judicial immunity and for declaratory relief.  Pangelinan properly pleads his claims for purposes of having to establish actual case and controversy: he was injured in his liberty and property by his arrest and imprisonment and taking of his lands, caused by all the defendants, and is remediable by award of damages as prayed in the complaint; and, is further entitled to declaratory judgment and relief to rid the root of all the injuries, inequities and injustices felled upon him by vacatur, nullification and dismissal of Trinidad, et al. v. Pangelinan, et al., Civil Action No. 97-0073, and same with the criminal cases, to rid collateral legal consequences and civil disabilities associated with USA v. Pangelinan, Criminal Action No.s 02-00016, 04-00015, & 06-00012, and as a result giving rise to Pangelinan's third cause of action.  The case must proceed forward.

## CONCLUSION

For the above reasons, Federal defendants' motion to dismiss without leave to amend fails totally and must and should be denied.

Dated this 7th day of April, 2008.

John S. Pangelinan
Plaintiff, *pro se*

21