F I L E D
Clerk
District Court

MAY - 8 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| JOHN S. PANGELINAN, | ) | Civil No. 08-0004 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | ORDER: |
| | ) | (1) GRANTING MOTION TO |
| DAVID A. WISEMAN, ALEX R. | ) | DISMISS WITHOUT LEAVE TO |
| MUNSON, CRAIG MOORE, | ) | AMEND FILED BY FEDERAL |
| MARGARITA D.L.G. WONEN- | ) | DEFENDANTS; |
| BERG, MELINDA N. BRUNSON, | ) | (2) GRANTING MOTION TO |
| JOSEPH AUTHER, DONALD | ) | DISMISS WITHOUT LEAVE TO |
| HALL, WOLF CALVERT, LILLIAN | ) | AMEND FILED BY UNITED |
| A. TENORIO, ROBERT T. | ) | STATES; and |
| TORRES, ROY ALEXANDER, | ) | (3) GRANTING MOTION TO DIS- |
| RUFO MAFNAS, ANGELITA | ) | MISS, FOR SANCTIONS, AND FOR |
| TRINIDAD, RONNIE PALERMO, | ) | PRE-FILING INJUNCTION, FILED |
| HERMAN TEJADA, ESPERANZA | ) | BY NON-FEDERAL DEFEND- |
| DAVID, ANTONIO ALOVERA, | ) | ANTS |
| and UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendants | ) | |
| ——————————————— | ) | |

AO 72
(Rev. 08/82)

THIS MATTER came before the Court on Wednesday, May 7, 2008, for

hearing of the following motions: (1) Federal Defendants' Motion to Dismiss,

Without Leave to Amend Complaint, filed by Alex R. Munson, Chief Judge for the

U.S. District Court for the Northern Mariana Islands; David A. Wiseman, Designated

Judge of the U.S. District Court for the Northern Mariana Islands; Craig Moore,

Assistant U.S. Attorney (AUSA) for the District of Guam and the Northern Mariana

Islands; Margarita D.L.G. Wonenberg and Melinda N. Brunson, Federal Probation

Officers; Joseph Auther, Special Agent ("SA") of the Federal Bureau of Investigation

("FBI"); Donald Hall and Wolf Calvert, Deputy U.S. Marshals ("DUSMs")

(hereinafter, the "Federal Defendants"); (2) United States of America's Motion to

Dismiss Without Leave to Amend Complaint ; and, (3)  Motion to Dismiss, for

Sanctions, and for a Pre-Filing Injunction, filed by Lillian A. Tenorio (attorney),

Robert T. Torres (attorney), Roy Alexander (auctioneer), Rufo T. Mafnas (buyer at

judgment sale), Angelito Trinidad, Ronnie Palermo, Herman Tejada, Esperanza

David, and Antonio Alovera (original Plaintiffs in Civil Action No. 97-0073)

(hereinafter "Non-Federal Defendants" and/or "Respondents").[1]

---

[1]  Other Motions heard today will be the subject of separate Orders.

AO 72
(Rev. 08/82)

Plaintiff John S. Pangelinan appeared *pro se*; Federal Defendants appeared by and through their attorney, C. Salvatore D'Alessio, Jr.,[2] Senior Trial Attorney, Civil Division, Constitutional Torts Branch, U.S. Department of Justice; the United States appeared by and through its attorney, Assistant U.S. Attorney Jessica F. Cruz; and Non-Federal Defendants appeared by and through their attorney, Robert T. Torres.

Federal Defendants move to Dismiss the Complaint without leave to amend, because the defects in the complaint cannot be cured by amendment because Plaintiff cannot, as a matter of law, state a claim against them.

The United States moves to Dismiss the Complaint Without Leave to Amend on several grounds, chief among them no waiver of sovereign immunity.

Non-Federal Defendants Robert T. Torres and Lillian A. Tenorio move to Dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6), and for sanctions; Roy Alexander and Rufo T. Mafnas move to Dismiss the Complaint with Prejudice, also pursuant to Fed.R.Civ.P. 12(b)(6).

Non-Federal "Respondents" (so characterized by Plaintiff in his Complaint) Trinidad, Palermo, Tejada, David, and Alovera move to Dismiss the Complaint on grounds of *res judicata*, for sanctions, and for entry of a Pre-Filing Injunction against

---

[2] Mr. D'Alessio was admitted to practice before this court in the earlier lawsuit filed against Judge Munson, and that admission remains in force and effect so long as he is employed by the U.S. Government. *See* Local Rule 83.5.

Plaintiff Pangelinan.[3]

FOR THE FOLLOWING REASONS, all requested relief prayed for is granted. In addition, a separate Order will issue, requiring Plaintiff to Show Cause why he should not be declared a vexatious litigant.

This civil damages action was filed by the Commonwealth's most active *pro se* litigant.[4]

Plaintiff's numerous *pro se* filings all stem from a judgment entered against him in *Angelito Trinidad, et al. v. John S. Pangelinan, et al.*, No. 97-0073 (D. N.M.I.), in which the Plaintiff and his wife were Defendants. Judge Munson presided in that case. Plaintiff was found liable under the civil RICO statute and judgment was entered

---

[3] At oral argument, Plaintiff repeatedly asserted that neither the United States nor the *Trinidad* Respondents had standing to argue at the hearing, since they were named only as "Respondents" and not as "Defendants." According to Plaintiff, they were named so as to be "invited" to participate in future discussions about the many wrongs allegedly done him over the years.

[4] Judicial notice may be taken of the records and files in all these matters: *Angelito Trinidad, et al. v. John S. Pangelinan, et al.*, No. 97-0073 (D. N.M.I.), and its numerous related appeals, 32 Fed.Appx. 357 (C.A.9 (N.M.I.)), Numbers 00-15697, 00-15705, 00-16630, 01-16622, and 54 Fed.Appx. 470 (C.A.9 (N.M.I.)), No. 02-16013; the first civil damages action filed against Chief Judge Munson, among others, by the plaintiff, *Pangelinan v. Munson, et al.*, D.C. No. CV-02-0025 (D. N.M.I.), and its related appeals, 54 Fed.Appx. 472 (C.A.9 (N.M.I.)), No. 02-16884; and the second damages action filed against Chief Judge Munson, among others, by the plaintiff, *Pangelinan v. Munson, et al.*, D.C. No. 1:04-CV-0010 (D. N.M.I.). PACER reveals a total of eighteen appeals related to matters having their genesis in the judgment in Civil No. 97-0073.

AO 72
(Rev. 08/82)

4

against him in the amount of $270,000.00.  Plaintiff appealed, but failed to post bond

to stay enforcement of the Judgment.  Judge Munson, in response to motions filed by

Plaintiffs, issued orders to enforce the judgment, including attaching Pangelinan's

property and selling 55-year interests (the longest allowable under Article XII of the

Commonwealth Constitution to persons of non-Northern Marianas descent).  Judge

Munson also found Pangelinan in contempt for his failure to comply with the Court's

orders. *See Trinidad v. Pangelinan*, No. CV-97-00073-ARM (March 20, 2000), *aff'd,* 32

Fed.Appx. 357, 2002 WL 461731 (9th Cir. 2002) (affirming district court ruling that:

(1) district court had personal jurisdiction over the defendants; (2) venue was proper;

(3) evidence warranted piercing of corporate veil; (4) district court had jurisdiction

over RICO claim;[5] (5) damages award was not abuse of discretion; and (6) execution

of judgment was proper in absence of formal stay.

In his first post-*Trinidad* civil lawsuit, *Pangelinan v. Munson, et al.*, Civil No. 02-

0025 (D.N.M.I.), Plaintiff alleged that Judge Munson violated his constitutional rights

during the course of the original trial and in enforcing the Judgment.  Plaintiff also

sued Judge Munson in tort.  All claims were dismissed on a variety of grounds,

---

[5] Plaintiff continued to assert at oral argument that this Court never had
subject matter jurisdiction over the initial civil matter, No. 97-0073, "in the Article
III sense."  When queried, he replied that there was no case or controversy and thus
the resultant judgment was and remains void.  This is clearly a frivolous argument,
which the U.S. Court of Appeals has rejected by its affirmance.

5

primarily judicial immunity. Dismissal of those claims was affirmed on appeal. *See*

*Pangelinan v. Munson, et al.,* 54 Fed.Appx. 472 (9th Cir.) (affirmed judgment and order

denying Pangelinan's Fed.R.Civ.P. 60(b)(4) motion to void the judgment in Civil

Action No. 97-00073 and further ruling that no additional filings by Pangelinan

would be accepted in the closed appeal), *cert. denied* 538 U.S. 1064, 123 S.Ct. 2232,

155 L.Ed.2d 1119 (2003).

Plaintiff's second post-*Trinidad* lawsuit was also directly related to the *Trinidad*

case, and arose from Plaintiff's prosecution on criminal contempt charges for

violating the Court's orders by frustrating the ability of the prevailing parties in the

RICO case to collect on their Judgment. Plaintiff once again sued Judge Munson and

the lawyer for the judgment-holders, but also added as defendants another judge, a

law clerk, and a federal prosecutor. That case, too, was dismissed primarily on the

ground that Defendants were entitled to absolute judicial or quasi-judicial immunity.

*See Pangelinan v. Munson, et al.,* Civ. No. 04-0010 (D. N.M.I. 2004). No appeal was

taken.

Here, Plaintiff seeks for the third time via civil lawsuit to collaterally attack (1)

judicial decisions in and flowing from the original 1997 *Trinidad* civil action, (2) acts

integral to the judicial process, and (3) to impose personal liability on federal officials

for their official actions. He also seeks extraordinary relief from the United States,

damages from non-federal Defendant attorneys who have represented the

AO 72
(Rev. 08/82)

"Respondents" (Plaintiffs in the 1997 lawsuit) to collect on their judgment, the man who conducted the most recent Court-ordered sale of Plaintiff's real property, and the man who bought the real property at the sale.

Dismissal is appropriate under Fed.R.Civ.P.12(b) where a Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Buckey v. County of Los Angeles,* 968 F.2d 791, 794 (9th Cir.), *cert. denied,* 506 U.S. 999 (1992). Review is based upon the contents of the complaint. *Moore v. City of Costa Mesa,* 886 F.2d 260, 262 (9th Cir. 1989). A court may properly look beyond the complaint to the record of the case or to matters of general public record. *Emrich v. Touche Ross & Company,* 846 F.2d 1190, 1198 (9th Cir. 1988); *see also MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986) (on a motion to dismiss, the court may take judicial notice of matters of public record outside the pleadings); and, Fed.R.Evid. 201 (court may take judicial notice of adjudicative fact). All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party. *Love v. United States,* 915 F.2d 1242, 1245 (9th Cir. 1989). However, the complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007).

Where the allegations in the Complaint do not state a claim upon which relief may be granted as a matter of law and cannot be cured by amendment, the lawsuit

AO 72
(Rev. 08/82)

should be dismissed under Rule 12(b).  The Ninth Circuit laid out the five factors to consider when granting a motion to dismiss without leave to amend in *Schmier v. United States Court of Appeals for the Ninth Circuit*, 279 F.3d 817 (9th Cir. 2002); namely: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the Plaintiff has previously amended his complaint." *Id.* at 824 (quoting *In re Consolidated Pioneer Mortgage*, 205 B.R. 422, 426 (9th Cir. BAP 1997).  The relevant factors here are the first and fourth: bad faith and futility of amendment.  Bad faith is largely self-explanatory, but certainly the filing of meritless motions, writs, and lawsuits, and the inclusion as defendants of anyone he can think of, qualify, *see infra*; futility means that "it was not factually possible for [Plaintiff] to amend the complaint so as to [state a cognizable claim]."  *Id. See also Chang v. Chen*, 80 F.3d 1293, 1295 (9th Cir. 1996); *Havas v. Thornton*, 609 F.2d 372, 376 (9th Cir. 1979).  Thus, the Court dismisses Plaintiff's claims without leave to amend as to all Federal Defendants because they are entitled to absolute immunity and, as to the remaining defendants and "respondents" because, for the reasons stated herein, it is not factually possible for him to amend his Complaint to state a cognizable claim against any of them.

AO 72
(Rev. 08/82)

8

<u>Individual Federal Defendants</u>

In the present action, Plaintiff asserts that certain federal officials violated his rights by prosecuting him. Once again the genesis of Plaintiff's claims is directly traceable to the civil RICO suit, *Trinidad, et al., v. Pangelinan, et al., supra*, and a related criminal prosecution. *See United States v. Pangelinan*, 250 Fed.Appx. 826 (9th Cir. 2007). The only difference is that now Plaintiff has changed his legal theory to allege that he was prosecuted criminally and that his real property was sold in retaliation for exercising his First Amendment rights because he sent two letters to a newspaper criticizing the Court.[6]  Because Plaintiff's Complaint fails to state a claim, it is dismissed without leave to amend, for the following reasons.

<u>Claims that Accrued Prior to January 28, 2006, are Time Barred.</u>

Plaintiff's Complaint alleges that "[i]n late 1997, or sometime in 1998," he was sued under RICO for mail and wire fraud. *See* Complaint, p. 5, ¶ 1. Throughout the

_____

[6]  Plaintiff was charged with two counts of using threats to interfere with a federal court order because in his letters (there were two; he mentions only one) he told prospective buyers of his attached property not to bid on the property on penalty of, *inter alia*, "feeling his wrath of vengeance."  Complaint ¶ 6. Pangelinan was convicted by a jury on both counts and sentenced to a prison term of one year and a $7,500.00 fine.  *See* Complaint ¶ 33.  He served his sentence and was released on January 8, 2008. *Id.* On appeal of his conviction, the Ninth Circuit affirmed in part and reversed in part, finding that while one of the two letters contained language which a rational trier of fact could find expressed a threat of physical harm to person or property, the other did not. *Pangelinan*, 250 Fed.Appx. 826 (9th Cir. 2007).  The Ninth Circuit left in place Plaintiff's sentence and the fine imposed against him. *Id.*

AO 72
(Rev. 08/82)

Complaint, Plaintiff alleges acts or events in support of his claims that occurred prior to January 28, 2006. *See id.*, at pp. 5, 13-18, 24-28. Plaintiff filed the present action on January 28, 2008. To the extent he relies on acts or events that occurred prior to January 28, 2006, his claims are time barred.

The statute of limitations applicable to Plaintiff's constitutional claims is the state's personal injury statute. *Wilson v. Garcia,* 471 U.S. 261 (1985); *Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991). In the Commonwealth, actions for injury to the person or to the rights of another must be commenced within two years. *See* 7 C.M.C. § 2503. Accordingly, Plaintiff's claims against Judge Munson in connection with *Trinidad, et al., v. Pangelinan, et al.*, (Complaint ¶¶ 2 - 4)*,* and against Judge Wiseman in connection with the 2004 contempt proceedings (Complaint ¶¶ 46, 49-52), are time barred. Plaintiff's claim that Deputy U.S. Marshal Calvert "mazed" (*sic*) him while he was incarcerated in 2005 is similarly time barred. These claims are Dismissed Without Leave to Amend.

The Judicial Defendants and Prosecutor Have Absolute Immunity.

Plaintiff alleges that the official actions of Judge Munson, Judge Wiseman, and AUSA Moore violated his constitutional rights. In support of this assertion, Plaintiff cites the Judges' issuance of an arrest warrant for him (¶ 12), issuance of a writ of attachment (¶ 43), revocation of his supervised release (¶ 54, issuance of orders for the sale of his property (¶ 5), issuance of orders to show cause (¶¶ 8, 11, 51), the

AO 72
(Rev. 08/82)

10

signing of a warrant for his arrest (¶ 54), presiding over Plaintiff's criminal trial (¶ 16), finding Plaintiff guilty (the jury actually found Plaintiff guilty) and sentencing him (¶ 52), revoking Plaintiff's bail (¶ 17), and denying Plaintiff's motions (¶¶ 16, 18, 21, 51). Plaintiff also sues Assistant U.S. Attorney Moore for convening a grand jury (¶ 10), and moving the Court to revoke his bail (¶ 17).  Plaintiff makes no claim that any of these actions were taken other than through the actors' respective offices as judges and prosecutor.

Few doctrines are more firmly established at common law than the immunity of judges from liability for damages for judicial acts. *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967).  In *Mireles v. Waco,* 502 U.S. 9, 11 (1991), the Supreme Court established two requirements for a finding of absolute immunity: (1) the challenged act must be judicial in nature, and (2) the act was not done in the clear absence of all jurisdiction. If the challenged act was taken under even the colorable authority of the court, the judge has absolute immunity.  *See Ashelman v. Pope,* 793 F.2d 1072 (9th Cir. 1986) (*en banc*); *see also Crooke v. Maynard*, 913 F.2d 699 (9th Cir. 1990).

As to *Mireles'* first prong, the Ninth Circuit considers four factors relevant to the determination of whether a particular act is a judicial act and, a such, shielded by absolute immunity:

(1) the precise act is a normal judicial function;

(2) the events occurred in the judges' chambers;

AO 72
(Rev. 08/82)

11

(3) the controversy centered around a case then pending before the judge; and

(4) the events at issue arose directly and immediately out of a confrontation

with the judge in his official capacity.

*Meek v. County of Riverside*, 183 F.3d 962, 967 (9th Cir.), *cert. denied Wojcik v. Meek*, 528

U.S. 1005, 120 S.Ct. 499 (1999) (Mem.).

Each of these elements is met here. All actions undertaken by Judge Munson

and Judge Wiseman were judicial acts. From issuing writs and ruling on motions, to

presiding over Plaintiff's trial and sentencing, each act was a normal judicial function.

All of the events arose directly and immediately from Plaintiff's interactions with the

two judges in their official capacities in connection with the civil and criminal cases

against Plaintiff, as acknowledged by his own Complaint.

As to the second *Mireles* prong, the actions of both Judge Munson and Judge

Wiseman were within the Court's jurisdiction. Plaintiff has repeatedly claimed that

the Court has lacked subject matter jurisdiction in the cases against him. This

argument has been consistently rejected by this Court, the Ninth Circuit, and the

United States Supreme Court. *See Pangelinan v. Munson, et al.,* 54 Fed.Appx. 472 n.3

(9th Cir.), *cert. denied*, 538 U.S. 1064, 123 S.Ct. 2232, 155 L.Ed.2d 1119 (2003).

Whether a judge acted in the clear absence of jurisdiction does not depend upon

whether the judge correctly decided the particular issue before the court. *See Mullis v.*

*United States Bankruptcy Court*, 828 F.2d 1385, 1389 (9th Cir. 1987). Rather, immunity

AO 72
(Rev. 08/82)

turns upon whether a judge acts within the broad scope of the court's subject matter jurisdiction when he takes the challenged judicial acts. *See also New Alaska Development Corp. v. Guetschow,* 869 F.2d 1298, 1302 (9th Cir. 1989).

Here, Plaintiff was arrested, tried, and convicted for violation of 18 U.S.C. § 1509, Obstruction of Court Orders. Both Judge Munson and Judge Wiseman are authorized to hear such cases. Furthermore, the decision in that case was reviewed by the Ninth Circuit, without any question by that Court as to the District Court's jurisdiction. *Pangelinan,* 250 Fed.Appx. 826 (9th Cir. 2007). All of the acts of the judges were judicial acts, protected by absolute immunity.

As to AUSA Moore, the Supreme Court has given absolute immunity to prosecutors for their conduct "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman,* 424 U.S. 409, 431 (1976); *Hartman,* 547 U.S. at 250 (prosecutors have absolute immunity from retaliatory prosecution claims). The actions Plaintiff attributes to AUSA Moore are entitled to the absolute immunity given prosecutors.

The doctrine of absolute immunity bars Plaintiff's claims against Judge Munson, Judge Wiseman, and AUSA Moore. The claims against them are Dismissed Without Leave to Amend.

AO 72
(Rev. 08/82)

13

All Remaining Federal Defendants Are Entitled to Immunity.

Plaintiff claims that FBI SA Auther testified before the grand jury (¶ 10) and executed the arrest warrant (¶ 12). He claims that DUSMs Hall and Calvert executed the Court's orders (¶ 19 and ¶ 54), that Probation Officer Wonenberg recommended a one -year term of imprisonment (¶ 20), and that Probation Officer Brunson petitioned the Court for Plaintiff's arrest (¶ 54).

Immunity extends to all persons whose functions are closely associated with the judicial process, including jurors and grand jurors.[7] *See e.g. Burns v. Reed*, 500 U.S. 478 (1991; *Stump*, 435 U.S. at 362. Probation officers serve a function integral to the judicial process, and as such, are entitled to quasi-judicial immunity. *Burkes v. Callion*, 433 F.2d 318, 319 (9th Cir. 1970), *see also Demoran v. Witt*, 781 F.2d 155 (9th Cir. 1985) (absolute immunity for probation officers). Quasi-judicial immunity has also been afforded to police and other court officers for purely ministerial acts. *See Coverdell v. Dep't of Social and Health Services*, 834 F.2d 758 (9th Cir. 1987) (absolute immunity for the execution of a facially valid court order.)

---

[7] Plaintiff apparently made no effort to serve the grand jurors and petit jurors. All would have absolute immunity. *See Richardson v. McKnight*, 521 U.S. 399, 117 S.Ct. 2100 (1997) (absolute immunity of grand jurors); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879 (9th Cir. 1990) ("Immunity has also been extended to...grand jurors."); and, *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894 (1978) (absolute immunity extends to petit jurors).

AO 72
(Rev. 08/82)

14

Here, all functions at issue are critical to the judicial process, *e.g.,* the execution of the Court's Orders, as well as providing recommendations to the Court in accordance with the statutory duties of these court officers. As such, Probation Officers Brunson and Wonenberg, DUSMs Hall and Calvert, and FBI SA Auther are all entitled to quasi-judicial immunity and all claims against these Defendants are Dismissed Without Leave to Amend.[8]

Claims Against the United States Are Dismissed.

Plaintiff seeks in this civil action to reverse his criminal convictions, invoking the Federal Declaratory Judgment Act ("FDJA"), 28 U.S.C. § 2201 and § 2202, *coram nobis,* and the All Writs Act, 28 U.S.C. § 1651(a). All claims are Dismissed Without Leave to Amend.

Federal Rule of Civil Procedure 60(e) states that writs of *coram nobis* have been abolished. Plaintiff has been told this previously. *See* Order Denying Writ of Habeas

---

[8] The claim could also be dismissed for insufficiency of service of process. Where the complaint seeks relief from a federal officer or employee, effective service of process also requires service on the United States. *See* Fed. R. Civ. P. 4(i)(2)(B). The United States is served by serving a copy of the summons and complaint upon the Attorney General of the United States. Fed. R. Civ. P. 4(i)(1). Plaintiff has failed to serve the United States Attorney General. Although it can be argued that the Court has thus not acquired personal jurisdiction over the individual federal Defendants, the Court chooses to exercise its discretion to decide the motions on their merits.

AO 72
(Rev. 08/82)

Corpus, *Pangelinan v. United States,* Civil Action No. 07-0004 (D.N.M.I. 2007).[9]

This court lacks jurisdiction over any claim against the United States for which sovereign immunity has not been waived. *Dunn & Black, P.S. v. United States,* 492 F.3d 1084, 1087-1088 (9th Cir. 2007). Plaintiff has not, and cannot, allege that the United States has waived its sovereign immunity and consented to be sued in this instance. This claims is Dismissed Without Leave to Amend.

Similarly, the Ninth Circuit has held that the FDJA is not a waiver of the United States' sovereign immunity. *See e.g. White v. Administrator of General Services Administration,* 343 F.2d 444 (9th Cir. 1965). Plaintiff has not alleged an independent basis to show that the United States has waived its immunity or otherwise consented to be sued, or how he can use this lawsuit to reverse his criminal conviction or the judgment in the original 1997 civil lawsuit. Plaintiff cannot allege an actual controversy between himself and the United States regarding his criminal conviction because it has been affirmed and he failed to seek a writ of *certiorari* to the United States Supreme Court. This claim for relief is Dismissed Without Leave to Amend.

---

[9] Although writs of *coram nobis* have not been abolished to collaterally attack criminal convictions, *United States v. Morgan,* 346 U.S. 502 (1954), a civil lawsuit is not the proper avenue. More importantly, Pangelinan has, and has used, other avenues for review of his convictions, including a writ of *habeas corpus* which is presently pending before the U.S. Court of Appeals for the Ninth Circuit.

AO 72
(Rev. 08/82)

16

Finally, this attempt by Plaintiff to reverse his criminal conviction is barred by *res judicata*.[10] A final judgment on the merits prevents a party from relitigating claims that were or could have been litigated in prior actions. *See Nevada v. United States,* 463 U.S. 110, 129-30, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509, (1983); *Western Systems Inc. v. Ulloa,* 958 F.2d 864, 868 (9th Cir. 1992), *cert. denied,* 113 S.Ct. 970, 122 L.Ed.2d 125 (1993). *Res judicata* also bars a party from relitigating issues of law or fact that were actually litigated and necessarily decided in the prior action, whether on the same claim or a different one. *See Duncan u. United States,* 713 F.2d 538, 541 (9th Cir. 1983). The purpose of the doctrine is to "relieve parties of the cost and vexation of multiple law suits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Marin v. HEW, Health Care Fin. Agency,* 769 F.2d 590, 594 (9th Cir. 1985). A claim barred by collateral estoppel or *res judicata* requires dismissal under Rule 12(b) (6) and Rule 8(c). *See e.g. Headwaters Inc. v. United States Forest Serv.,* 399 F.3d 1047, 1054-1055 (9th Cir. 2005) (as a general matter, a court may, *sua sponte*, dismiss a case on preclusion grounds "where the records of that court show that a previous action covering the same subject matter and parties had been dismissed"). Plaintiff's attempt to reverse his criminal conviction involves

---

[10] Although ordinarily affirmative defenses may not be raised in a motion to dismiss, *res judicata* may be asserted in a motion to dismiss when doing so does not raise any disputed issues of fact. *See Scott v. Kuhlmann,* 746 F.2d 1377, 1378 (9th Cir. 1984).

AO 72
(Rev. 08/82)

the same parties and issues and it seeks to collaterally set aside an unappealed final judgment of the Ninth Circuit. Accordingly, it is Dismissed Without Leave to Amend.

Plaintiffs invocation of the All Writs Act, 28 U.S.C. § 1651(a) is likewise rejected. To obtain relief under the Act, a party must show that he has no other adequate means to attain relief, and that his right to issuance of the writ is clear and undisputable. The court, in an exercise of its jurisdiction, must be satisfied that the writ is appropriate under the circumstances. *Cheney v. United States District Court*, 542 US. 367, 380-381, 124 S.Ct. 2576 (2004). Plaintiff could have further appealed his criminal conviction; he chose not to, although he has a writ of *habeas corpus* pending before the United States Court of Appeals for the Ninth Circuit. He cannot circumvent the appellate process by claiming that he now has no adequate means to obtain relief. He has failed to show that his right to a writ is clear and undisputable and this claim is Dismissed Without Leave to Amend.

Non-Federal Defendants

Defendant attorneys Tenorio and Torres' memorandum recites their lengthy efforts to collect on the Judgment rendered in the original 1997 lawsuit. For purposes of the present lawsuit, the following facts are relevant.

In an effort to satisfy the deficiency judgment still owed by Pangelinan, the *Trinidad* Plaintiffs obtained a title report showing that Pangelinan owned all right, title

AO 72
(Rev. 08/82)

and interest in certain property in Papago, Lot E.A. 222.  (Compl. ¶ 30.)  They sought

a writ to sell the property to satisfy the deficiency.

 After considering and rejecting each of Pangelinan's arguments opposing the

writ, including (again) his challenges to the Court's jurisdiction in 1997, the Court

authorized and directed Defendant Alexander to levy execution upon the Papago lot

to satisfy the balance of the Judgment.[11]  Alexander scheduled a judicial sale of the

Papago lot for June 2, 2006 at his office and published notices of the sale.  *Id.*

 On the day before the sale, Pangelinan hand-delivered to Alexander a letter

addressed to an editor (the "June 1 Letter").  (Compl. ¶ 6.)  The letter was published in

the Marianas Variety, a local newspaper, the next day.  *Id.*  Among other things, the

letter announced to "the whole world that the Court's (Munson's) judgment and

(Wiseman's) orders were all void, that the sale would be void and [that the] would-be

purchaser would be buying himself nothing but a lawsuit." *Id.*  The June 1 Letter also

proclaimed that "he would not surrender the Papago land to any would be purchaser

'to anyone come typhoon, tsunami, volcanic eruption or the devil himself,'" and that

anyone coming to the land claiming it would feel his "wrath with a vengeance."

(Compl. ¶ 6.).  As a result of the letter, the auction was cancelled. *See* Report on

---

[11]  *See* Order Authorizing Roy Alexander to Levy Execution (Feb. 23, 2006) (No. 492); Order Granting Writ of Execution (Jan. 27, 2006) (No. 485); Amended Order Granting Writ of Execution (Mar. 9, 2006) (No. 502).

AO 72
(Rev. 08/82)

Notice of Sale for June 2, 2006 (June 13, 2006) (No. 507).

The *Trinidad* Plaintiffs received a second letter intended for the editor of the Marianas Variety on June 19, 2006. In addition to reiterating that he would not yield his property to any purchaser and that he "would breathe his wrath down on the purchaser with a vengeance," Pangelinan also stated that "[t]he whole world is informed here that I am ready to brawl with any trespasser or usurper who would come in on [this] land." This letter was also published in the Marianas Variety. *See* Order Holding John S. Pangelinan in Civil Contempt of Court (Oct. 23, 2006) (No. 582).

Upon Tenorio's motion, on June 29, 2006, the Court issued a Temporary Restraining Order [TRO] to prevent Pangelinan from interfering with the rescheduled judicial sale.[12] At the hearing, Pangelinan testified that he would not surrender the premises and also reiterated his conviction that "the sale would be void as the underlying civil judgment [from the 1997 lawsuit] was void for lack of jurisdiction." (Compl. ¶ 13.) On August 2, 2006, the Court converted the TRO into a Permanent Injunction.

Pursuant to Court Order, Alexander issued a revised Notice of Sale and, on July 28, offered to sell at public auction all right, title and interest in the Papago lot.

---

[12] *See* Order Granting Motion for Temporary Restraining Order (June 30, 2006) (No. 538).

AO 72
(Rev. 08/82)

The higher of the two bids was submitted by Defendant Mafnas.  It was accepted.

On August 14, 2006, the Court stayed the sale when it learned that Pangelinan had, at the last minute, recorded deeds for the property naming his sons as the transferees.[13]  By separate Order dated November 7, 2006, the Court declared the deeds from Pangelinan to his sons null and void.[14]

The Court confirmed the sale of the Papago lot on December 16, 2006, and ordered the Pangelinans to leave the premises and property peacefully.  After securing the property, federal marshals tendered the property to Alexander who, in turn, surrendered it to Mafnas.

As shown below, Plaintiff fails to make out any viable claim against any of the non-Federal defendants.  No remotely credible claim is made that the attorneys did anything other than represent their clients, that the real estate agent did anything other than sell Plaintiff's real property in conformance with a valid court order, and that the buyer was anything other than a good-faith purchaser.

---

[13]  Footnote 7, *supra*.

[14]  Order Declaring that Document Nos. 06-182 and 06-1833, in the Commonwealth Recorder's Office, are Null and Void (Nov. 7, 2006) (No. 586).

AO 72
(Rev. 08/82)

Attorneys Torres and Tenorio.

Pangelinan contends that Torres and Tenorio "are private attorneys who were state actors and who at all relevant times substantially employed and utilized the aid of, and at times aided, in collusion, combination and collaboration with the Federal Defendants, one way or another....," to violate his First Amendment rights and to deprive him of his liberty and property without due process of law.  As such, they were "state actors" and are liable under *Bivens, supra.*

There is no private right of action under *Bivens* for damages against private persons or entities acting under color of federal law.  *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 122 S.Ct. 515, 519, 151 L.Ed.2d 456 (2001).  In any event, other than dark mutterings about actions happening "behind the scenes," Plaintiff does not explain how Tenorio or Torres were "state actors."  The only example of these attorneys' "wrongful conduct" was their use of judicial process to enforce a valid Judgment of this Court.  However, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."  *See Dennis v. Sparks*, 449 U.S. 24, 28, 101 S. Ct. 183,  66 L.Ed.2d 185 (1980).  Because Plaintiff's grievances against Torres and Tenorio concern, only, actions taken on behalf of their clients during the course of a legal proceeding as private counsel, there is no evidence establishing them as government actors who can be liable for federal constitutional violations under *Bivens. See Mathis v. Pac. Gas &*

AO 72
(Rev. 08/82)

*Elec. Co.*, 75 F.3d 498, 503 (9th Cir.1996) (finding that it was error not to dismiss a *Bivens* claim absent proof that the defendant was an agent of the federal government); *Stone v. Baum*, 409 F.Supp.2d 1164, 1176 (D. Ariz. 2005) (plaintiffs may not sue a lawyer in private practice for violations of their civil rights because private practice attorneys are not state actors).

To establish a First Amendment retaliation claim in an "ordinary citizen" case---that is, a case that does not involve an employment or contractual relationship between the plaintiff and the government---a plaintiff must show (1) that he engaged in constitutionally protected activity, (2) that the defendant's actions caused "an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) that the actions complained of were "substantially motivated" by the plaintiff's protected activity. *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Because there is no constitutional right to threaten people with harm, or to avoid paying a judgment, or to ignore court orders, the Complaint does not and cannot make out a claim and it is Dismissed Without Leave to Amend.

Defendant attorneys seek sanctions against Plaintiff. Pangelinan has previously sued other opposing counsel. *See Pangelinan v. Munson*, Civil No. 04-0010 (Feb. 25, 2005) (dismissing constitutional claims against *Trinidad* Plaintiffs' original attorney because he was simply a private attorney representing them in Civil Action

AO 72
(Rev. 08/82)

97-0073, and not a state actor). This is also not the first time that Pangelinan has, in reprisal, filed a meritless claim. *See Trinidad v. Pangelinan*, 54 Fed.Appx. 470 (9th Cir. 2003), *cert. denied*, 538 U.S. 1064, 123 S. Ct. 2232, 155 L.Ed.2d 1119 (2003).

Now, Pangelinan has yet again filed a frivolous, harassing lawsuit founded on arguments that have been previously litigated and rejected. Under these circumstances, and even against *pro se* litigants, the Ninth Circuit has consistently ruled that an award of damages is appropriate as a sanction for filing a frivolous action. *See Stone*, 409 F.Supp.2d at 1171 (Rule 11 sanctions justified because litigation involved same parties and transactions previously litigated, and plaintiffs had been repeatedly informed that repetitive suits were barred by *res judicata*, causing court to conclude lawsuit filed for improper purpose).

Sanctions are fully justified in this matter and are hereby awarded. Within two weeks of the date of this Order, Defendant attorneys shall submit a statement of the hours they worked on this matter, not only defending themselves, but also their clients, as well as a statement of their usual hourly rate. The court will determine the reasonableness of their hours and hourly rate and sanction Plaintiff that amount. There will be no filing from Plaintiff and no hearing.

AO 72
(Rev. 08/82)

24

Roy Alexander and Rufo T. Mafnas.

Plaintiff paints Alexander as a "federal court agent," who conducted the judicial sale of the Papago lot pursuant to Court Order. (*See* Compl. ¶ 5.) Plaintiff also contends that Alexander filed a negative statement about him after he hand-delivered the June 1 Letter to him. (*See* Compl. ¶ 7.) As a result of that letter and the June 19 Letter, Alexander testified at the hearing for a temporary restraining order and at Pangelinan's criminal trial for obstruction. (*See* Compl. ¶ 13.) Finally, Pangelinan argues that the judicial sale was not held at a place designated by federal statute and, still arguing that the Judgment from the 1997 lawsuit was void, and thus that the sale and delivery of his property were likewise void and violated his right to due process of law. (*See* Compl. ¶ 19.) On these facts, Plaintiff asserts that Alexander, as a state witness, conspired with the Federal Defendants to indict, arrest, prosecute, convict and imprison him in retaliation for exercising his right of free speech in the June 1 Letter. (*See* Compl. at ¶ 11.) Pangelinan then argues that Alexander is somehow liable for "Retaliatory Denial of Due Process" for the allegedly unlawful and retaliatory sale of the Papago land.

Pangelinan names Rufo Mafnas as a collaborator with "state actors" Torres and Tenorio. (*See* Compl. at 3.) Mafnas is not named in the claim for Retaliatory Criminal Prosecution or the claim for Retaliatory Denial of Due Process.

AO 72
(Rev. 08/82)

Retaliatory Criminal Prosecution.

To allege a *Bivens* action for retaliatory prosecution for the exercise of free speech rights a plaintiff must demonstrate that he was prosecuted for engaging in constitutionally protected conduct. *E.g., Gates v. City of Dallas*, 729 F.2d 343, 346 (5th Cir. 1984). However, true threats of intimidation or physical violence fall outside the ambit of constitutional protection. *See Watts v. United States*, 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969). The Ninth Circuit has established an objective test for determining whether a threat is unprotected by the First Amendment: a statement is unprotected if "a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *See Lovell v. Poway Unified School Dist.*, 90 F.3d 367, 371-72 (9th Cir.1996). *Lovell* instructs that "[a]lleged threats should be considered in light of their entire factual context, including the surrounding events and the reaction of the listeners." 90 F.3d at 372 (citing *United States v. Gilbert*, 884 F.2d 454, 457 (9th Cir.1989)). Therefore, if a reasonable person would agree that the threats in his letters portended a serious intent to harm or assault, then Pangelinan is simply wrong that they were protected as "free speech."

Based on the undisputed facts giving rise to this case and the ruling of the Ninth Circuit that "Pangelinan's June 19, 2006, letter contain[ed] language which a rational trier of fact could find expressed a threat of physical harm to person or

AO 72
(Rev. 08/82)

property,"[15] Pangelinan's June 19 Letter was not a protected activity.  Because the

threats were not protected by the First Amendment, and because there is no credible

showing that Alexander was a "federal agent," the claim for retaliatory criminal

prosecution fails and it is Dismissed Without Leave to Amend.

<u>Validity of Sale.</u>

Pangelinan challenges the validity of the judicial sale because it did not take

place at the federal courthouse.  (*See* Compl. at 8, citing *Yazoo & M.V.R. v. City of

Clarksdale*, 257 U.S. 10, 23, 42 S. Ct. 27, 31 (1921)).[16]  He further claims that the taking

and delivery of possession of his property, "a non-existent procedure in public sale,"

likewise renders the sale void. (Compl. at 13.)  Finally, Pangelinan again claims that

the Papago sale was void because it was conducted to satisfy the allegedly void 1997

Judgment.  None of these arguments has merit.

Although Plaintiff contends that 28 U.S.C. § 2001 required the sale to take

place at the federal courthouse, that statute only applies to federal judicial sales and

not execution sales on court judgments, which must follow the practice and

procedure of the Commonwealth.  *See Weir v. United States*, 339 F.2d 82, 85-86 (8th

---

[15]  *United States v. Pangelinan*, 250 Fed.Appx. 826 (9th Cir. 2007).

[16]  Complaint at 8, citing *Yazoo & M.V.R.*, 257 U.S. at 23, 42 S.Ct. 27, 66
L.Ed. 104.  Plaintiff claims that "sale at place set by statute is absolutely mandatory
and if sale held at another place it is void."

AO 72
(Rev. 08/82)

Cir. 1964) (Rule 69(a) of the Fed.R.Civ.P., and not 28 U.S.C. § 2001, governs sales to execute on a judgment; Rule 69(a) provides that the "process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise" and "the procedure on execution...shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought"). Because 7 C.M.C. § 4203 does not require an auction of property to be performed at the courthouse, Pangelinan's challenge to the sale fails.

Retaliatory Denial of Due Process.

It is impossible to discern the basis for Plaintiff's claim. The procedures used to sell his property were permitted by Fed.R.Civ.P. 69 and Commonwealth law. Pangelinan had many opportunities to participate in the process. The Papago property was not sold in retaliation for the exercise of his First Amendment rights, but to satisfy the deficiency remaining from the 1997 Judgment. Pangelinan makes no allegation that Alexander did anything but carry out the Court's Order as directed. (Compl. ¶¶ 7, 10, 13, 19.)

As to Mafnas, Pangelinan has failed to plead any participation by him beyond that of being a good faith purchaser. He makes no showing of how Mafnas violated his rights or denied him due process.

All claims against these Defendants are Dismissed Without Leave to Amend.

The *Trinidad* "Respondents".

Pangelinan also names former employees Angelito Trinidad, Ronnie Palermo, Herman Tejada, Esperanza David, and Antonio Alovera (collectively, the "*Trinidad* Plaintiffs") as "respondents only, to respond to Pangelinan's claim that the judgment(s) rendered in their, or in its favor wherein they were, or it was, Plaintiff(s) are, or is void ab initio." (*sic*) *See* Compl. at 3. Pangelinan himself acknowledges that his prayer for declaratory relief against the *Trinidad* Plaintiffs "aris[es] out of the underlying civil case ... and all the inequities, injustices, and injuries that befallen Pangelinan, directly associated with the said underlying civil case." (Compl. at 15.)

As noted earlier, the underlying Judgment from the 1997 civil lawsuit has been affirmed on three separate occasions by the Ninth Circuit Court of Appeals. *See Trinidad v. Pangelinan*, No. 02-16013 (9th Cir. Jan. 15, 2003); *Trinidad v. Pangelinan*, Nos. 00-15697, 00-15705, 00-16630, 01-16622 (9th Cir. March.15, 2002); *see also* 120 Fed.Appx. 742 (9th Cir. Feb. 11, 2005).

The instant effort is plainly barred by principles of *res judicata* and collateral estoppel.[17] Under these circumstances, Rule 11 sanctions, as well as sanctions under 28 U.S.C. § 1927, are warranted against Pangelinan, and have been awarded above.

---

[17] *See* Footnote 1.

29

This litigation is repetitive, meritless, vexatious, abusive, and burdensome.[18]

The *Trinidad* Plaintiffs are dismissed with prejudice.

FOR THE FOREGOING REASONS, IT IS ORDERED THAT:

1. All claims against the Federal Defendants are Dismissed Without Leave to Amend;

2. All claims against the United States are Dismissed Without Leave to Amend;

---

[18] The letters are not the only example of Pangelinan's harassing tactics. The record in Civil Action No. 97-0073 graphically shows the tumultuous history traveled by the *Trinidad* Plaintiffs to collect their Judgment, a history exacerbated by Pangelinan's ongoing roadblocks to interfere with the transfer of property and threats of violence. The record is replete with orders to stop John Pangelinan from interfering with the *Trinidad* Plaintiffs' right to collect: **for sanctions** [*e.g.*, Submission of Attorney's Fees and Costs as to Rule 11 Sanctions (No. 386); Order Granting Plaintiffs' Motion for Sanctions (No. 387); Motion to Compel Attendance at Deposition and for Sanctions (No. 392); Order Granting Motion to Compel and for Sanctions (No. 411), **to show cause** [*e.g.*, Motion for Issuance of an Order to Show Cause and for Contempt (No. 303); Supplemental Filing Re Motion for Order to Show Cause for Contempt (No. 308); Motion for Issuance of Order to Show Cause re: Contempt against Marianas Seaside Development Corp. (No. 371)], **contempt citations** [*e.g.*, Order Finding John S. Pangelinan in Contempt of Court (No. 428-1)], and **restraining orders** [*e.g.*, Ex Parte Motion for Temporary Retraining Order (No. 294-1); Motion for Temporary Restraining Order and For Preliminary and Permanent Injunction and Supporting Affidavit (Nos. 295-1 and 296-1); Temporary Restraining Order (No. 305-1); Amended Temporary Restraining Order (No. 307); Order Granting Preliminary Injunction (No. 315-4); Notice of Motion and Motion for Temporary Restraining Order and Permanent Injunction with Memorandum and Declaration (Nos. 403-1, 404-1, 405-1); Motion for Ex Parte Temporary Restraining Order and Permanent Injunction (No. 415-1); Temporary Restraining Order (No. 419-1); Order Granting Motion for Permanent Injunction (No. 423-1).

AO 72
(Rev. 08/82)

3.  All claims against the Non-Federal Defendants are Dismissed Without Leave to Amend;

4.  Sanctions in the form of reasonable attorneys' fees and costs are awarded in favor of all Non-Federal Defendants and against Plaintiff;

5.  Plaintiff's Motion for Declaratory Judgment, filed April 30, 2008, would normally have been scheduled for hearing on May 29, 2008, but it has been mooted by this Order and is thus Dismissed with Prejudice; and,

6.  A separate Show Cause Order shall issue to address the question of whether or not Plaintiff should be declared a vexatious litigant and have a Pre-Filing Order entered against him.

DATED this 8th day of May, 2008.

FRANCIS TYDINGCO-GATEWOOD
Judge

AO 72
(Rev. 08/82)

31