**JOHN S. PANGELINAN**
P.O. Box 501721
Saipan, MP 96950

Telephone No. (670) 322-0322

Pro se

F I L E D
Clerk
District Court

MAY 1 4 2008

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

|  |  |  |
|---|---|---|
| **JOHN S. PANGELINAN** | ) | **Civil Action No. 08-0004** |
|  | ) |  |
| Plaintiff, | ) | **Consolidated Motion for Reconsi-** |
|  | ) | **deration and Withdrawal, Pur-** |
| v. | ) | **suant to Rules 59 or 60(b), All** |
|  | ) | **Orders of This Court Issued On** |
|  | ) | **May 07 & 08, 2008; Notice of** |
| **DAVID A. WISEMAN, et al.,** | ) | **Hearing; Memorandum In Sup-** |
|  | ) | **port of the Motion** |
| Defendants. | ) |  |
|  | ) | Date: Thursday, June 12, 2008 |
|  | ) | Time: 9:00 a.m. |
|  | ) | Judge: F. Tydingco-Gatewood |

### Notice of Hearing

To All Defendants, Respondents and All Parties of Record: Please take notice that

a hearing will be held on the above-captioned motion on Thursday, at 9:00 a.m., June 12,

2008, before Judge Tydingco-Gatewood in the court above-mentioned.

### Motion

**Comes now,** John S. Pangelinan, hereinafter referred as "Pangelinan", and moves

this court to reconsider and withdraw all its Orders of May 07 & 08, 2008, namely— **I)**

Order Denying "Objections" to Designation and Assignment of Judge and **II)** Order

Denying "Objections" to Late Filings, both issued and filed on May 7, 2008, and, **III)**

Order (1) Granting Motion to Dismiss Without Leave to Amend Filed by Federal

Defendants, (2) Granting Motion to Dismiss Without Leave to Amend Filed by United

States, and (3) Granting Motions to Dismiss, for Sanctions, and for Pre-Filing Injunction,

filed by Non-Federal Defendants, and **IV)** Order to Show Cause Why John S. Pangelinan

Should Not Be Declared a Vexatious Litigant and Be Subjected to a Pre-Filling Order as

to Any and All Future Filings Involved With, or Derived From in Any Way, Civil Action

No. 97-0073, latter two (III & IV) orders issued and filed on May 08, 2008, pursuant to

Rules 59 or 60(b), Fed.R.Civ.P., for reasons as shown below.

### Memorandum In Support of The Motion

### Table of Contents

**1.** Pangelinan Renews His Objection Regarding Judge Tydinco-Gatewood Presiding Over The Case – **Page 3.**

**2.** Individual Federal Defendants Are In Default and Court Abused Discretion to Apply Reversed Rule 60(b) Standards – **Page 6.**

**3.** Defendants' Involvement In the Investigation Aspect of the Retaliatory Criminal Prosecution Claim and Other Constitutional Torts Are Not Considered – **Page 11.**

**4.** Issuance of Orders and Action of Wiseman Were Very Much Arbitrary, Retaliatory, Abridgement and Deliberate – **Page 20.**

**5.** Federal Defendants Opened Discussion On Court's Clear Absence of All Jurisdiction By Their Assertion of Absolute Immunity In Civil Action No. 97-0073 – **Page 22.**

**6.** Respondents Do Not Have Standing to Make Rule 12(b) Motions and Court Has No Authority to Issue Vexatious Litigant Order *Sua Sponte*, Etc.– **Page 23.**

## Table of Authorities, Statutes and Rules

Bigio v. Coca-Cola Co., 235 F.3d 63 (2nd Cir. 2000)...........................................14

Brentwood Academy v. Tennessee Secondary School, 121 S.Ct. 924 (2001)..............22

Buckley v. Fitzsimmons, 113 S.Ct. 2606 (1993)...............................................17

Burn v. Reed, 111 S.Ct. 1934 (1991).............................…..........................16, 18

Collin v. City of Harker Heights, Tex., 112 S.Ct. 1061, (1992)...........................13, 20

FDIC v. Meyer, 114 S.Ct. 996 (1994)...........................................................9

Fiore v. White, 121 S.Ct. 712 (2001)......................................................13, 16-19

Gould v. Mut. Life Ins. Co. of New York, 790 F.2d 769 (9th Cir. 1986)....................23

Hartman v. Moore, 164 L.Ed.2d 441 (2006)..............................................16-20

*In Re: Amalgamated Meat Cutters & Butcher W. Etc.*, 402 F. Supp. 725

(1975)....................................................................................13, 16-19

Kalina v. Flecher, 118 S.Ct. 502 (1997)....................................................12, 16, 18-19

Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999)10, 24

Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 500 (1979).........12, 16-20

Malley v. Briggs, 106 S.Ct. 1092 (1986)......................................................18

Mireles v. Waco, 502 U.S. 9 (1991).........................................................16

Schowengerdt v. General Dynamics Corp., 823 F.2d 1328 (9th Cir. 1987)................22

Vaccaro v. Dobre, 81 F.3d 854, 855 (9th Cir. 1996)......................................7, 9


28 U.S.C. §292(b)..................................................................................3 -5

28 U.S.C. §1346(b)...............................................................................8, 9

28 U.S.C. §2679(b)(2)............................................................................8

28 U.S.C. §2679(d)(1)............................................................................8

42 U.S.C. §1983.................................................................................13, 20

48 U.S.C. §1821(b)(2)...........................................................................3-6


Rule 4(i)(3).........................................................................................7-9

Rule 12(a)(1)(A)(i)..............................................................................7-10

Rule 12(a)(3).......................................................................................7-9

## Pangelinan Renews His Objection Regarding
## Judge Tydinco-Gatewood Presiding Over The Case

The court said that the "undersigned was designated to sit as a Judge of this Court

by Ninth Circuit Chief Judge Alex Kozinski, pursuant to the express language of 28

U.S.C. §292(b) ...designation was dated December 28, 2007, and is effective for calendar

year 2008 ...[and that d]esignated Judges Wiseman and Lizama were designated that

same day, pursuant to the expressed language of 48 U.S.C. §1821(b)(2) ...[t]heir

designation are also effective for calendar year 2008." Nothing was mentioned that Judge Tydingco-Gatewood's appointment was made too under 48 U.S.C. §1821(b)(2) and the record confirms that her appointment was made only under 28 U.S.C. §292(b) and not under 48 U.S.C. §1821(b)(2).

Pangelinan contends that 28 U.S.C. §292(b) is an authority of the Chief Judge of the Ninth Circuit Court *only* on appointment of Article III district judges in respect to other Article III ordained and established district courts within the circuit, not over Article I district judges in respect to other Article I ordained and established district courts within the circuit. District judges of U.S. district courts of Guam and for the Northern Mariana Islands, and the said courts, are Article I judges and Article I courts. Because of tenure not being for life, Article I district judges cannot constitutionally sit as judges of Article III courts, and possibly so the other way around, too— unless it is specifically allowed by a specific statute as in 48 U.S.C. §1821(b)(2). And, because 28 U.S.C. §292(b) applies only to Article III district judges and Article III district courts, Judge Tydingco-Gatewood's appointment, as temporary judge to this court under the said statute, is in want of authority and jurisdiction in this court. Title 28 of the United States Code deals with Article III courts only and Title 48 of the Code deals with territories and insular possessions of the United States— each has no place in the other.

Pangelinan believes that it is a cannon of statutory application that where one statute speaks in general terms or language of a subject (such as subject of appointments of temporary judges to this court) and another statute speaks in specific and unequivocal terms or language on the same subject (again, such as subject of appointments of temporary judges to this court), the specific statute takes precedence. So, even if it can

4

be construed that 28 U.S.C. §292(b) applies to appointments of Article I judges in respect to Article I courts within the circuit, it does not take precedence over 48 U.S.C. §1821(b)(2) specific and "express" provision of the appointment authority in the appointment of every temporary judge to the U.S. District Court for the Northern Mariana Islands.  Likewise on statutory succession, that is, a subsequent statute on a subject, to the extent of the subject, supersedes a prior statute on the same subject— 48 U.S.C. §1821(b)(2) is a more recent enactment than, and therefore supersedes, 28 U.S.C. §292(b).

The authority under statute to appoint a temporary judge to the U.S. District Court for the Northern Mariana Islands is *exclusively* provided in 48 U.S.C. §1821(b)(2), even for appointment of a presidential-appointed judge of the U.S. District Court of Guam to this said court, as it is specifically provided there.  It is not there as merely a surplusage of 28 U.S.C. §292(b), because it is not and cannot be.  It is there because it is the *only* authority under statute that an appointment of the district judge of the U.S. District Court of Guam can be made as a temporary judge of this court.  Notice that there is a separate appointment provision there in regards to Article III district judges of this circuit to this court, which goes to support Pangelinan's point that 28 U.S.C. §292(b) is only for Article III district judges and Article III courts and not for Article I district judges and courts.  Since no appointment of Judge Tydingco-Gatewood was made under 48 U.S.C. §1821(b)(2) by the Chief Judge of the Ninth Circuit Court to act as a temporary judge of the U.S. District Court for the Northern Mariana Islands, she is not authorized to sit as a temporary judge in this here case, notwithstanding Judge Munson's appointment of her under the said section of February 20, 2008— filed, February 25, 2008.

Further, the court said in the order: "Because both Judge Munson and Judge Wiseman are named as Defendants in this matter, he requested Judge Lizama to try the case. After reflection, Judge Lizama recused himself. His Order was filed February 25, 2008, and the matter was assigned to me, the only remaining Designated Judge of this Court, by Order dated February 20, 2008, but not filed until after Judge Lizama's Order of Recusal was received and filed by the Clerk of Court." The record, however, discloses that Judge Lizama recused himself on **February 25, 2008**, the same date his recusal was filed with the Clerk of Court and five days after Judge Munson already assigned the case to Judge Tydingco-Gatewood. In addition, Judge Munson stated in the footnote of his assignment that Judge Tydingco-Gatewood has been "[d]esignated to serve as Judge in this court pursuant to 48 U.S.C. §1821(b)(2)." This only adds further that Munson's assignment of the case to Judge Tydingco-Gatewood is suspect of a possible cover-up on his part. It is indeed inescapable here that Judge Munson's assignment of the case to the said judge is extremely suspect, bias or partial. Again, as Munson faces huge liability, Pangelinan refers to the Supreme Court case: "Court... reached a similar conclusion and recognized that under the Due Process Clause no judge can be a judge in his case or be permitted to cases where he has an interest in the outcome." Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986).

Pangelinan, to the extent of his doubts above in regards to her authority to preside as a temporary judge over this case, objects to her appointment and assignment. Pangelinan further renews and restates all his original objections of her appointment to this court on other reasons for objection as they are related to the above.

### Individual Federal Defendants Are In Default and Court Abused Discretion to Apply Reversed Rule 60(b) Standards

6

Court erred in denying Pangelinan's *ex parte* motion for entry of default against individual federal defendants, and by implication in applying Rule 12(a)(3), Fed.R.Civ.P., as under which and as the time thereunder by which individual federal defendants have filed their Rule 12(b) motion (or must file their answer to the Complaint) in this here case. The applicable rule is Rule 12(a)(1)(A)(i), Fed.R.Civ.P., and individual federal defendants failed by at least nineteen days to timely file their Rule 12(b) motion or answer and are now all in default. Where, as in this here case, individual federal defendants are sued in their individual capacity on a strictly *Bivens* action where the United States of America cannot be made a party, they can file their answer or Rule 12(b) motion only under Rule 12(a)(1)(A)(i) and only within the time thereunder, notwithstanding that they are represented by U.S. Department of Justice attorneys as said attorneys are no different from any private attorneys.

Rule 12(a)(3) does not extend the time under, nor is it an exception to, Rule (a)(1)(A)(i), but rather a separate provision having to do *only* with those individual federal defendants sued in their individual capacity and in which the summons and the complaint were served accordingly under Rule 4(i)(3), Fed.R.Civ.P.. See, Rule 12(a)(3)(B), Fed.R.Civ.P, Advisory Committee Notes, 2000 Amendments. And, Rule 4(i)(3) does not overrule Vaccaro v. Dobre, 81 F.3d 854, 855 (9th Cir. 1996), but rather *implements* it in that individual federal defendants sued in their individual capacity, as in this case, *must* be served with the summons and complaint under Rule 4(e) in order for the court to acquire personal jurisdiction over them individually— that 9th Circuit Court's precedence requires that they be served individually like any other private individuals. In addition, the provision in Rule 4(i)(3) which says that the United States of America must

also be served is there to ensure that the suing party may make no mistake to serve it and, as well as, to include it as a party, as it might as well be an interested party. So, when one is not served with the summons and complaint under Rule 4(i)(3), or when the United States of America is not served with the summons and complaint under it, he cannot claim to file his responsive pleadings under Rule 12(a)(3), Fed.R.Civ.P., but instead must file under Rule 12(a)(1)(A)(i), Fed.R.Civ.P., and within the time thereunder.

Rule 4(i)(3), moreover, does not amend, modify and change the substantive law in respects to exclusiveness of remedy against federal government employees under 28 U.S.C.§2679(b)(2) regarding constitutional tort claims, or as in a strictly *Bivens* action against individual federal defendants, as United States of America has not waived its sovereign immunity under 28 U.S.C. §1346(b) pertaining to violations of constitutional rights, and therefore cannot be sued in regards to such violations of such rights, so as to require that United States of America be served when it cannot be made a party to the underlying lawsuit. United States of America and individual federal defendants in this case even concede that United States of America cannot be substituted for the individual federal defendants, and that no certification can be or has been made, under 28 U.S.C. §2679(d)(1). Further, the order of May 8, 2008, dismissing United States for sovereign immunity confirmed that it did not waive it and that it cannot be made a party to this suit.

Thus, the law still stands as it was regarding service on and non-suability of the United States of America. "By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of constitutional right. ... the United States simply has not rendered itself liable under [28 U.S.C.] §1346(b) for constitutional tort claims. Thus, because [plaintiff's] constitutional tort claim is not cognizable under

§1346(b), the FTCA [Federal Tort Claims Act] does not constitute his 'exclusive' remedy." FDIC v. Meyer, 114 S.Ct. 996, 1001, 510 U.S. 471, 478, 127 L.Ed.2d 308 (1994)(brackets mine). "Paragraph (1) does not extend or apply to a civil action against an employee of the Government— (A) which is brought for a violation of the Constitution of the United States". 28 U.S.C. §2679, Exclusiveness of Remedy, (b)(2). "Service upon the United States was not necessary in [a] *Bivens* action, which is action brought against federal officials in their individual capacities, not in their official capacities; *because [plaintiff] did not and could not have sued the United States or its officers in their official capacity* upon *Bivens* claim, it *necessarily* followed that he did not have to serve the United States." Vaccaro v. Dobre, 81 F.3d 854, 855 (9th Cir. 1996)(brackets and emphasis mine). That is, Pangelinan is not required to serve the United States of America, notwithstanding Rule 4(i)(3), Fed.R.Civ.P. implications, if any.

So, when an individual federal defendant is sued for constitutional torts only, or when a strictly *Bivens* action has been instituted against him, and no service of the summons and complaint is made under Rule 4(i)(3), Fed.R.Civ.P., on the United States of America, he is on notice that he must file his answer or Rule 12(b) motion under Rule 12(a)(1)(A)(i), Fed.R.Civ.P., no later than the twenty days period stated thereunder, and, when he is in doubt, he must include a Rule 12(b)(2) & (5) motions if he desires to have the issues addressed and not waive them, and not be in default, and be consistent with Rule 12(a)(3), Fed.R.Civ.P.. In this here case, individual federal defendants, failed to timely file such motions under Rule 12(b)(1)(A)(i), have waived or forfeited them and all defenses and affirmative defenses, are now in default, and Pangelinan is entitled to an entry of default under Rule 55(a) and to judgment of default against them.

9

The court denied Pangelinan's *ex parte* motion for entry of default against individual federal defendants without going into the merits of his motion. It reasoned that because an entry of default or default judgment may be set aside under Rule 60(b), Fed.R.Civ.P., on consideration of three standards: the culpable conduct of the defendant, whether defendants has a meritorious defense, and the prejudice to Pangelinan if entry of default is set aside, it denied Pangelinan's motion because of what appears to be his reversed failure to show individual federal defendants' culpable conduct and non-meritorious defense and failure to show that he was prejudiced. It is just impossible to reconcile all that with the *absence* of a *required* motion *from* the individual federal defendants under the said Rule 60(b), with their late filing of their Rule 12(b) motions (if the time required to file such motions under Rule 12(a)(1)(A)(i), Fed.R.Civ.P., is strictly followed) of thirty-nine days, with their failure to even at least request for an enlargement of time, and their continued mistaken insistence that the U.S. Attorney General be served. It should be noted that the court has not acted on their belated Rule 12(b)(5) motion. Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 350 (9th Cir. 1999)(court abused discretion granting Rule 60(b) relief without motion, written or oral, from the beneficiary of the rule's relief). This is because it would be error to rule on it in their favor. The simple fact is that the individual federal defendants could not file their Rule 12(b) motions, when filed and as filed, forfeited all waivable Rule 12(b) motions and defenses and affirmative defenses, no matter how meritorious— including all immunities, could not and cannot now challenge the averments of the Complaint, are in default and Pangelinan is entitled to a default judgment, and their pleadings stricken from the record.

Likewise for United States of America, it defaulted in submitting its Rule 12(b)

motion and further defaulted in its reply and request for enlargement of time— it

defaulted on every occasion, exacerbated by its failure to even note or notice Pangelinan

as to the hearing date of its motion and it appearing unexpectedly at the hearing

scheduled for other parties' motions, a very culpable conduct. This is certainly more than

prejudicial to Pangelinan, a burden *it* failed to show otherwise based on the standard used

by the court above. It defaulted and everything related to it should be stricken from the

record and its motion be denied. Id.

All of the above goes too to the adversely affected parties on Pangelinan's other ex

parte motions to strike— the onus is on them to bring a motion and overcome the Rule

60(b) standards used by the court above. Id. Pangelinan's motions must be granted.

### Defendants' Involvement In The Investigation Aspect of the Retaliatory Criminal Prosecution Claim and Other Constitutional Torts Are Not Considered

A.       The court inadvertently failed to consider federal and private defendants' involve-

ment in the investigation phase of Pangelinan's retaliatory criminal prosecution claim and

other constitutional torts. Pangelinan states events in the Complaint which gave rise to a

*Bivens* action for numerous violations of Pangelinan's constitutional rights. Pangelinan

states what the 9th Circuit Court said in its October 11, 2007, decision that: "First, the

evidence was insufficient to support Pangelinan's conviction under §1509 Count I.

Pangelinan's June 1, 2006, letter contains no language which any rational trier of fact

could reasonably find expressed or implied a threat of physical or unlawful harm to any

person or property. We therefore REVERSE Pangelinan's conviction as to Count I";

and, states and translates this as him not committing absolutely no offense indictable or

chargeable under 18 U.S.C. §1509 by publication of his June 1 letter to editor in the local

11

newspapers. ¶22 of Complaint. Pangelinan translates this too as showing that there was no probable cause and that there was completely "no evidence" for his indictment, arrest, prosecution, conviction and incarceration of Count 1 of his conviction. He further states that he was without probable cause indicted, arrested, prosecuted, convicted and incarcerated for the Count 1 charge. Pg. 11 of Complaint. Thus, his constitutional right to be free from unreasonable arrest under the Fourth Amendment was violated when he was arrested without probable cause. This is basically a *Bivens* action, or its genesis. In Kalina v. Flecher, 118 S.Ct. 502, 505, 522 U.S. 118, 139 L.Ed.2d 471 (1997), the Supreme Court acknowledged a *Bivens* claim for a "violation of [a] constitutional right to be free from unreasonable seizures" under the Fourth Amendment— it is about a person who was indicted, arrested and prosecuted without probable cause.

Further, Pangelinan's constitutional right to be free from arbitrary deprivation of liberty was violated when the was indicted, tried, convicted, and incarcerated when there was completely *no evidence* with which to charge and convict him for the Count I charge and conviction. In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 500 (1979), the Supreme Court said: "[W]e held in the *Thompson* [*v. Louisville*, 362 U.S.199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960)] case that a conviction based upon a record wholly devoid of any relevant evidence of a crucial element of the offense charged is constitutionally infirm. ...The 'no evidence' doctrine of *Thompson v. Louisville* thus secures to an accused the most elemental of due process rights: freedom from a wholly arbitrary deprivation of liberty." In other words, it is a constitutional violation of the due process clause to arbitrarily prosecute and imprison a person when there is a complete lack of evidence relevant to a crucial element of the offense charged.

12

Furthermore, another due process right was violated when Pangelinan was convicted and incarcerated for violation of a statute that do no apply to him as "party or privy" of the obstructed order. In Fiore v. White, 121 S.Ct. 712 (2001), the Supreme Court said: "State cannot, consistently with the Due Process Clause, convict a defendant for conduct that its criminal statute, as properly interpreted, does not prohibit." *In Re: Amalgamated Meat Cutters & Butcher W. Etc.*, 402 F. Supp. 725 (1975), it was interpreted by that court that 18 U.S.C. §1509 does apply to a "party or privy" of the obstructed court order. In other words, it does not proscribe acts and conduct of a "party or privy" which could be deemed a violation when committed by other persons.

In Collin v. City of Harker Heights, Tex., 503 U.S. 115, 112 S.Ct. 1061-62, 117 L.Ed.2d 261 (1992), the Supreme Court lumped together claims like Pangelinan's and said that: "First Amendment, equal protection and due process clauses of the Fourteenth Amendment [in this case, the Fifth Amendment] and other provisions of the Federal Constitution afford protection to [citizens...], and 42 U.S.C. §1983 provided cause of action for all citizens injured by *abridgement* of those protections." Everyone is directed to this case's n.10 at S.Ct. 1069, regarding *deliberate* conduct of government officials.

This is also true for Pangelinan's denial of due process right in the taking of his Papago land. Pangelinan states Wiseman arbitrarily issued non-existent, post-judgment retaliatory orders and ousting orders, approved Alexander's conduct of sale which took at a place contrary to federal statute, denied Pangelinan's right to be confronted in court by the purchaser of his property, and arbitrarily issued non-existent, already-enforced judgment orders to the U.S. Marshal to oust Pangelinan and his family and to deliver it to purchaser Mafnas— all this is about arbitrary conduct on the part of Wiseman and the

13

private defendants and abridgement of Pangelinan's protected property right, regardless whether or not they had any validity. See, ¶¶13-15, 19 & Page 12 of Complaint.

While all these legal theories or constitutional rights violations are not actually stated in the Complaint, events are stated that gave rise to all the above-stated causes of action actionable as a *Bivens* claim.  In <u>Bigio v. Coca-Cola Co.</u>, 235 F.3d 63 (2nd Cir. 2000), the court said that "generally a complaint that gives full notice of circumstances giving rise to plaintiff's claim for relief need *not* also correctly plead the legal theory or theories …supporting the claim."  Pangelinan sufficiently states for all the above causes of action and are actionable as a *Bivens* action in this case which the court must consider.

**B.**    Private defendants Roy E. Alexander and Rufo T. Mafnas (thereby implicating themselves and others in the process) stated in their moving papers that it was the <u>Trinidad</u> case (which is Civ.A. 97-0073) plaintiffs, and themselves and others by implication, that reported and turned to the federal authorities for criminal investigation and proceedings to be made against Pangelinan. They stated:  "Mr. Alexander and everyone connected with the sale took Pangelinan's June 1 letter very seriously; and the Trinidad Plaintiffs turned the matter over to the authorities for further investigation." See, Page 16 of their motion filed February 15, 2008. "Everyone connected with the sale" and "authorities for further investigation" phrases 1) corroborate Pangelinan's stated claims that Alexander and Tenorio (<u>Trinidad</u> plaintiffs' attorney) combined and colluded to do what is stated in ¶7 of the Complaint; 2) implicate federal defendants Auther, Moore, Munson and Wiseman as the authorities to whom the matter was turned over and corroborating Pangelinan's stated claim that "Munson, through intermediaries, demanded that criminal charges be brought against Pangelinan for what he stated in the

published letter", and, thereby implicating Auther and Moore as the intermediary investigating officers doing police work in the process— see ¶9 of the Complaint; 3) corroborate Pangelinan's stated claim that Moore made his administrative decision to have Auther and Alexander as his complaining witnesses in the procurement of the grand jury's indictment and warrant of arrest, and Auther's execution of his own procured warrant of arrest and Munson's issuance of it— see ¶10 & ¶12 of the Complaint, and, further corroborate Pangelinan's stated claim of Tenorio's and Alexander's employees' appearance in court as the testifying complaining witnesses at Pangelinan's trial in the procurement of his Count 1 conviction— see ¶16 of the Complaint.    In addition, "Everyone connected with the sale" and "authorities for further investigation" phrases, coupled with Pangelinan's stated claims in ¶7, ¶8, & ¶11 of the Complaint, especially implicate Wiseman as the one who the matter could have been turned over to and who in turn did the demand calling to Moore and Auther to do what is just-stated above.  It should be inferred here that Munson and Wiseman are complainants in combination, collusion and collaboration with Moore and complaining witnesses Auther, Alexander and Tenorio, who were also acting in combination, collusion and collaboration amongst and between themselves, in regards to Pangelinan's indictment, arrest, prosecution and conviction for his publication of his June 1 letter to editor.  These factual matters should at least proceed to the discovery phase of this case.

C.    Hence, Munson's demand, or Wiseman's, for Pangelinan to be criminally charged for his published June 1 letter is not an act or conduct of a judicial nature, but as the individual in that capacity making the demand.  No absolute judicial immunity attached to them for this act or conduct, nor did qualified immunity attach as such immunity

applies only to executive department personnel, and not to individuals acting in private capacity. Further, law was clearly established when the demand was made that to obtain criminal prosecution solely on the June 1 published letter to editor for a Count 1 charge was without probable cause, that evidence was completely insufficient for a conviction, that the statute does not apply to Pangelinan, and that it could only have a resultant chilling effect on Pangelinan's First Amendment right of free speech. See, Mireles v. Waco, 502 U.S. 9, 11 (1991)(absolute judicial immunity protects only acts or conduct that is of a judicial nature); Hartman v. Moore, 164 L.Ed.2d 441, 451 (2006)(without probable cause indictment, arrest, conviction, and imprisonment would be retaliatory to exercise of free speech); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 500 (1979)(no relevant evidence to convict is arbitrary prosecution and conviction); Fiore v. White, 121 S.Ct. 712 (2001)(conviction impossible for acts or conduct that statute, or as interpreted, does not prohibit); In Re: Amalgamated Meat Cutters & Butcher W. Etc., 402 F. Supp. 725 (1975)(§1509 does not apply to a "party or privy", therefore no probable cause too).

Moore's decision to have Auther further investigate the matter in the procurement of the indictment based solely on Pangelinan's published June 1 letter to editor (and his urging Auther and Alexander to testify before the grand jury) and arrest without probable cause and complete absence of evidence for a conviction of Count 1 of a charge was not an act or conduct in the capacity of a state advocate, but of a police doing police work. Thus, no absolute immunity attached. See, Kalina v. Fletcher, 118 S.Ct. 502, 505-506 (1997)(no absolute immunity attaches to a prosecutor doing police investigative work); Burn v. Reed, 111 S.Ct. 1934 (1991)(prosecutor giving legal advise to police on probable

cause is not, in the obtainment of a warrant of arrest, absolutely immune from lawsuit); Buckley v. Fitzsimmons, 113 S.Ct. 2606 (1993)("A prosecutor neither is, nor should consider himself to be, an advocate *before* he has probable cause to have anyone arrested"). Nor did qualified immunity attach as the law was clearly established when the decision was made by Moore that to obtain the indictment and arrest through Auther and Alexander as complaining witnesses solely on the basis of Pangelinan's June 1 published letter to editor, as he could reasonably have known that there was no probable cause and evidence completely lacking, that that was nothing more than a retaliatory conduct and an arbitrary act, that it would be contrary to the Fourth amendment and the due process clause of the Fifth amendment, and that it could only have a resultant chilling effect on Pangelinan's First Amendment free speech right. See, Hartman v. Moore, 164 L.Ed.2d 441, 451 (2006)(without probable cause indictment, arrest, conviction, and imprisonment would be retaliatory to exercise of free speech); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 500 (1979)(no relevant evidence to convict is arbitrary prosecution and conviction); Fiore v. White, 121 S.Ct. 712 (2001)(conviction impossible for acts or conduct that statute, or as interpreted, does not prohibit); *In Re: Amalgamated Meat Cutters & Butcher W. Etc.*, 402 F. Supp. 725 (1975)(§1509 does not apply to a "party or privy", therefore no probable cause too ).

Auther's investigative work and decision to procure the indictment, arrest, prosecution, conviction and imprisonment of Pangelinan solely on the basis of Pangelinan's June 1 letter to editor was without probable cause, and in complete absence of evidence for a conviction of Count 1 of a criminal charge, were not acts or conduct of prosecutorial nature, but as a police doing police work and decision. Thus, no absolute immunity

attached. <u>Malley v. Briggs</u>, 106 S.Ct. 1092 (1986)("a *police officer* who secures an arrest warrant without probable cause cannot assert an absolute immunity"); <u>Burn v. Reed</u>, 111 S.Ct. 1934 (1991)(police officer securing a warrant of arrest based on prosecutor's legal advise on probable cause is not absolutely immune). Nor did qualified immunity attach as the law at the time was clearly established that he could have reasonably known that he was without probable cause for the indictment and arrest and completely without any evidence for a Count 1 conviction solely on the basis of the June 1 letter to editor, that statute did not apply to Pangelinan, and that such act or conduct could only have a resultant chilling effect on Pangelinan's freedom of speech right. See, <u>Hartman v. Moore</u>, 164 L.Ed.2d 441, 451 (2006)(without probable cause indictment, arrest, conviction, and imprisonment would be retaliatory to exercise of free speech); <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 500 (1979)(no relevant evidence to convict is arbitrary prosecution and conviction); <u>Fiore v. White</u>, 121 S.Ct. 712 (2001)(conviction impossible for acts or conduct that the statute, or as interpreted, does not prohibit); <u>*In Re: Amalgamated Meat Cutters & Butcher W. Etc.*</u>, 402 F. Supp. 725 (1975)(§1509 does not apply to a "party or privy", therefore no probable cause too).

Auther's and Alexander's appearance and them testifying before the grand jury as complaining witnesses in the obtainment of the indictment, arrest, prosecution, and incarceration of Pangelinan, and Tenorio's and Alexander's employees' appearance and them testifying in court during the criminal trial of Pangelinan as complaining witnesses have no absolute immunity from this retaliatory criminal prosecution suit and from suit for violation of Pangelinan's right to be free from unreasonable arrest and arbitrary prosecution and conviction, against them. See, <u>Kalina v. Fletcher</u> 502,505-506, (1997)

(complaining witnesses testifying before grant jury are not absolutely immune)— See also, Justice Scalia's concurring opinion that in lawsuits for "malicious prosecution", as opposed to slander and libel, against complaining witnesses is that they have no absolute immunity).   Private defendants Alexander and Tenorio are not entitled to qualified immunity.   And Auther, again, is not entitled to this immunity as the law was clearly established that Pangelinan was entitled to his right to be free from unreasonable arrest and arbitrary conviction, which Auther could have reasonably known that he was without probable cause and was completely without evidence for Count 1 criminal charge and conviction on the sole basis of his June 1 letter to editor, and that that could only have a resultant chilling effect on Pangelinan's right to free speech. <u>Hartman v. Moore</u>, 164 L.Ed.2d 441, 451 (2006)(without probable cause indictment, arrest, conviction, and imprisonment would be retaliatory to exercise of free speech); <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 500 (1979)(no relevant evidence to convict is arbitrary prosecution and conviction); <u>Fiore v. White</u>, 121 S.Ct. 712 (2001)(conviction impossible for acts or conduct  that statute, or as interpreted, does not prohibit); <u>*In Re: Amalgamated Meat Cutters & Butcher W. Etc.*</u>, 402 F. Supp. 725 (1975)(§1509 does not apply to a "party or privy", therefore no probable cause too).

All of the above apply to federal defendant Brunson when, as a complaining witness, she petitioned, accompanied by a declaration, the court for Pangelinan's arrest and imprisonment for allegations of Pangelinan's violation of his supervised release. <u>See especially</u>, <u>Kalina v. Fletcher</u>, 118 S.Ct. 502, 505-506 (1997)(no absolute immunity for signed declaration or certification in support of a petition for indictment and arrest from a prosecutor filed as a complaining witness).

## Issuance of Orders and Actions of Wiseman Were Very Much
## Arbitrary, Retaliatory, Abridgement and Deliberate

As noted above, on the retaliatory denial of due process of law claim in the taking of Pangelinan's Papago land, the court inadvertently failed to consider the retaliatory arbitrariness of Wiseman's actions, procured and carried out by Torres, Alexander and Tenorio, and with Mafnas as the collaborator in the receiving end of the arbitrary taking of the property. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 500 (1979), is a good analog in terms of "property": the Supreme Court said, "...the most elemental of due process rights [is] freedom from a wholly arbitrary deprivation of liberty [and property]." In Collin v. City of Harker Heights, Tex., 503 U.S. 115, 112 S.Ct. 1061-62, 117 L.Ed.2d 261 (1992), the Supreme Court lumped together claims like Pangelinan's and said that: "First Amendment, equal protection and due process clauses of the Fourteenth Amendment [in this case, the Fifth Amendment] and other provisions of the Federal Constitution afford protection to [citizens...], and 42 U.S.C. §1983 provided cause of action for all citizens injured by *abridgement* of those protections." Everyone is directed to this case's n.10 at S.Ct. 1069, regarding *deliberate* conduct of government officials. In Hartman v. Moore, 164 L.Ed.2d 441, 451 (2006), the Supreme Court said retaliatory improper conduct having a chilling effect on free speech is actionable on authority of *Bivens*. Thus, retaliatory, arbitrary, abridgment and deliberate, etc., federal and state agents conduct are bases for a *Bivens* action.

Pangelinan, whether expressly or impliedly, states Wiseman, in abridgement of Pangelinan's due process rights, arbitrarily and deliberately issued retaliatory non-existent, post-judgment orders and ousting orders, approved Alexander's conduct of sale

which took at a place contrary to federal statute, denied Pangelinan's right to be confronted in court by Mafnas who is the purchaser of his property, and arbitrarily issued non-existent, already-enforced judgment orders to the U.S. Marshal to oust Pangelinan and his family and to deliver it to purchaser Mafnas, with the U.S. Marshals successful taking of Pangelinan's Papago land.   See, Page 12, Complaint and Page 10-11 of Pangelinan's Opposition to Alexander's, Tenorio, Torres and Mafnas Rule12(b) Motion, Filed February 26, 2008 (all incorporated here by reference).   As stated elsewhere, procurement of the orders by Tenorio and Torres were prompted by Pangelinan's publication of his June 1 letter to editor making it retaliatory, all which were not procedural processes in execution of writs of execution— albeit, non-existent processes. The correct procedure is: the buyer *tenders* his money, obtains his deed subject to all the defects in the conduct of the sale, deed, title and possession of the land, and proceeds in superior court and apply for a writ of ejectment against the possessor of the land— none of these were undertaken in the process of depriving Pangelinan of his Papago land.   In fact, Mafnas tendered his money five months later after the sale after all arbitrary orders were secured from Wiseman.  And, on the orders, they were issued by Wiseman to show the whole world that nothing would stand in his way in depriving Pangelinan his land, that what Pangelinan said in his letter meant nothing to him. In other word, the taking of Pangelinan's Papago land was all done in the most outrageously arbitrary manner.

Individual private defendants Alexander, Mafnas, Tenorio and Torres were individually involved in all this as stated in the Complaint and are state actors in the procurement of the orders and in the arbitrary deprivation of Pangelinan's Papago land. When state actions are procured by private individuals, such as the private individual

defendants in this case, those actions are deemed theirs as state actors, as the Supreme Court said: "We have [ ] held that a challenged activity may be state action when it results from the State's exercise of 'coercive power,' …when the State provides 'significant encouragement, either overt or covert,' …or when a private actor operates as a 'willful participant in joint activity with the State or its agents." <u>Brentwood Academy v. Tennessee Secondary School</u>, 121 S.Ct. 924, 930 (2001). This is true even if individual state actors are not employees of the government: "The 'private' defendants [ ] argue that a *Bivens* remedy is not available against them since they are not government employees even though they may be 'state actors.' We disagree that the private status of a federal actor is a 'special factor' that would preclude a *Bivens* action." <u>Schowengerdt v. General Dynamics Corp.</u>, 823 F.2d 1328 (9th Cir. 1987). Pangelinan sufficiently states in the Complaint individual private defendants their individual involvement as state actors in the retaliatory criminal prosecution claim and in the retaliatory denial of due process right of Pangelinan in relation to his property claim.

Further, the court inadvertently overlooked that Mafnas's name is actually stated in the retaliatory denial due process of law (of property) at page 12 of the Complaint.

### Federal Defendants Opened Discussion On Court's Clear Absence of All Jurisdiction By Their Assertion of Absolute Immunity In Civil Action No. 97-0073

The court inadvertently overlooked the fact that it is the individual federal defendants who opened discussion on the court's clear absence of all jurisdiction in all the cases, civil and criminal, by their assertion of absolute judicial immunity defense. Pangelinan in anticipation of them asserting such a defense includes in the Complaint an action for declaratory judgment that the court in all the stated cases was without threshold Article

22

III jurisdiction— the broadest as it can be of federal court jurisdiction, and that in the process, in order to comply with compulsory claims requirements of the rules of civil procedure, includes the respondents as parties to participate in the discussion on the subject and prayed for relief which the court has no discretion to deny.    As such Pangelinan is entitled to a hearing on and entertainment of his declaratory judgment motion he filed and served on April 30, 2008— individual federal defendants cannot be allowed to "have their cake and eat it too", as the court truly was without subject matter jurisdiction in the Article III sense of the Constitution.

### Respondents Do Not Have Standing To Make Rule 12(b) Motions and Court Has No Authority To Issue Vexatious Litigant Order *Sua Sponte*, Etc.

Respondents United States of America and Trinidad, Palermo, Tejada, David and Alovera did not have standing to make such Rule 12(b) motions as they did because they are not defendants in this case— again, they are just called in this case to join in the discussion of whether the court in the civil and criminal cases was completely without subject matter jurisdiction in the Article III sense of the U.S. Constitution in Pangelinan's declaratory judgment action, and for Pangelinan to rid the judgment of this court that is the root of all the inequities, injustices and injuries that have been felled upon him and to remove all civil disabilities and collateral legal consequences that arose from the criminal convictions.    The case and controversy is not against them, and therefore they have no standing to move for dismissal of the action, and, too, even on the relief Pangelinan seeks because the court has no discretion to deny the relief when the court was completely without subject matter jurisdiction in the civil and criminal cases.    "A court considering a motion to vacate a judgment, which it finds void for lack of jurisdiction, has *no* discretion to hold that the judgment should not be set aside." <u>Gould v. Mut. Life Ins. Co. of New</u>

York, 790 F.2d 769, 742 (9th Cir. 1986).  Because of this, the court cannot grant them their Rule 12(b) motion and whatever sanctions they requested, and dismiss this action.

In addition, the court has no authority to *sua sponte* issue the order *for* the defendants (and respondents) against Pangelinan to show cause why he should not be held a vexatious litigant absent a motion from them.  This is a matter for the defendants to move the court and it certainly is not a question of subject matter jurisdiction which the court may *sua sponte* raise.  In this here case, no defendant moved the court for such order, and therefore the court should withdraw its order.  And, if the court has authority to *sua sponte* move for such an order, Pangelinan was not noticed about it to appropriately respond to it at the hearing and therefore is prejudiced by the court's issuance of the order.  Kingvision Pay-Per-View Ltd. v. Lake Alice Bar, 168 F.3d 347, 352 (9th Cir. 1999)(due process requires notice of court's intended action).

Furthermore, respondents and defendants, even if all the above could be granted and set aside in their favor and even if they had properly moved the court, came forward nevertheless with "unclean hands" to invoke this court's equitable powers of enjoining Pangelinan from further bringing up the civil and criminal cases.  The revelation by Alexander and Mafnas that the Trinidad plaintiffs turned over matters to authorities, and their attorneys' procurement of the non-existent orders and all the arbitrary, deliberate abridgement of Pangelinan due process rights from unreasonable arrest, arbitrary deprivation of liberty and property, and retaliatory actions for Pangelinan's exercise of his free speech right, dirtied their hands and may not now invoke this court equitable powers— they (or privies) caused the chain of events that gave rise to this *Bivens* action. United States of America and all the defendants dirtied their hands by causing injury or

wrong to Pangelinan for arbitrary, retaliatory criminal prosecution of Pangelinan by his arrest and imprisonment for the Count I conviction and for the arbitrary deprivation of Pangelinan's property rights, too.  It is a maxim in equity that the complainant must not come to court with "unclean hands" and invoke the court's aid and its equitable powers, for if their hands are dirtied by their own conduct then the court cannot extent its aid and grant the relief sought by the "unclean hands".  27A Am Jur, Equity §§ 126-139.  "A complainant will not be permitted to take advantage of his or her own wrong or claim the benefit of his or her own fraud or that of his or her privies."  Id. at §126.  "Relief will be denied where it appears that the right on which the complainant relies has grown out of the wrong, a breach of duty, or a violation of law. Id. at §129.

### Conclusion

Court must and should grant Pangelinan this motion, withdraw all orders of May 07 & 08, 2008, and grant all *ex parte* motions filed by Pangelinan.


Dated this 14th day of May, 2008.


John S. Pangelinan
Plaintiff, *pro se*